UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT JOHANNES; MICHAEL
WORONIECKI; PHILLIP TURNER;
JOE EVANS; ROGER STEPHENSON;
MAX ROGERS, individually, and on
behalf of all other similarly situated
prisoners,

          Plaintiffs,

vs.

DANIEL H. HEYNS, Director of the
Michigan Department of Corrections
(MDOC), Michigan Department of
Corrections, and DALTON SANDERS,
Dentist, sued in their official capacities,

          Defendants

_____/

Case No. 14-11691-LJM-MKM
Hon. Laurie J. Michelson
Mag. Judge Mona K. Majzoub

**FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

**Parties**

1.    Plaintiff, ROBERT JOHANNES, 689879, at all times relevant is/was
a prisoner of the Michigan Department of Corrections, and is a resident of the State
of Michigan.

2.    Plaintiff Michael Woroniecki (hereafter "Woroniecki") is/was at all times
relevant a prisoner confined with MDOC.

1

3.     Plaintiff Phillip Turner (hereafter "Turner") is/was at all times relevant a prisoner confined with the MDOC.

4.     Plaintiff Joe Evans (hereafter "Evans") is/was at all times relevant a prisoner confined with the MDOC.

5.     Plaintiff Roger Stephenson (hereafter "Stephenson") is/was at all times relevant a prisoner confined with the MDOC.

6.     Plaintiff Max Rogers (hereafter "Rogers") is/was at all times relevant a prisoner confined with the MDOC.

7.     Defendant, DANIEL H. HEYNS, is/was at all times relevant Director of the Michigan Department of Corrections (MDOC). He is being sued in his official capacity. He is responsible for the overall operation of the MDOC. In the last few years, Defendant Heyns has reduced the dental staffing at all prisons, which has decreased the number of dentists that are assigned to provide dental care at each facility. Most prisons are providing only emergency dental care and do not have the time or resources to provide routine care now to prevent present dental issues from turning into emergencies and subjecting Plaintiffs and the class members to severe and prolonged dental pain and loss of teeth that can never be effectively replaced. This decrease in staffing has resulted in increased wait lists for dental care, such as: dentures, replacement of dentures that have broken, filling

of cavities, restoration of teeth, and cleaning of teeth.  He is directly responsible for imposing such lack of dental care that the named Plaintiffs and the proposed class members have been subjected to deliberate indifference.  Defendant Heyns is directly responsible for the care the named Plaintiff and all class members, and the proposed class members have suffered, and will suffer, as a result of the failures enumerated below.  He is responsible for the implementation of the waiting lists and waiting time periods.

8.   Defendant Dr. Dalton Sanders is the general dentist in charge of the dental care for the plaintiff representative at all material times herein and is an independent contractor and/or employee, agent and/or designated representative of the Michigan Department of Corrections (MDOC).

9.   Defendant Heyns is responsible for the operation of the State of Michigan prisons and directs its policies and procedures.

**Exhaustion of Administrative Remedies**

10.   The named Plaintiffs have exhausted the grievances process as required by MDOC.

**Jurisdiction**

11.     This Court has jurisdiction over this case pursuant to 42 U.S.C. Sec. 1331 and 1343; and Federal Rules of Civil Procedure 57 and 65.  This action is brought pursuant to 42 U.S. Sec. 1983 and 1988.

### Class Allegations

12.     Plaintiffs intend to proceed, pursuant to Fed. R. Civ. P. 23, on behalf of all other persons similarly situated in obtaining an injunction against Defendant Director Heyns and the MDOC's present policies and/or practices of denying and delaying dental care, including failure to ensure timeliness and completed required dental treatment to maintain proper occlusion, ability to masticate food and eat, prevent general health problems from malnutrition, prevent loss of teeth, prevent periodontal disease, prevent loss of multiple teeth destroying healthy dentition, provide timely competent restorative treatment, maintain timely prophylaxes schedules to maintain healthy oral cavity health, prevent unnecessary teeth loss by timely restorative and periodontal treatment, prevent pathologic changes in the jaw joints by timely competent general restorative dentistry, and to replace dentures and partials within a timely manner.

13.     All of these systemic deficiencies have resulted in the named Plaintiffs and the proposed class members needlessly suffering severe and prolonged pain.

14.     Defendant Heyns has reduced the dental staffing at all prisons, which has decreased the number of dentists that are assigned to provide dental care at each facility.  This decrease in staffing has resulted in increased waiting lists for care, such as dentures, filling of cavities, restoration of teeth, replacement of dentures and partials, and cleaning of teeth.  These delays have significantly impacted the dental care provided to the Plaintiffs and the proposed class members, such that the named Plaintiffs and the proposed class members have been subjected to deliberate indifference to their dental needs.

15.     Through the policy of Defendant Heyns, most prisons are providing only emergency dental care due to the reduction in the number of dentists. Most prisons do not have the time or resources to provide routine care now to prevent present dental issues turning into emergencies and subjecting Plaintiffs and the class members to severe and prolonged pain and loss of teeth that can never be effectively replaced.

16.     Through the policy of Defendant Heyns, most prisons are refusing to replace dentures and partials even after dentists have pulled most, if not all, of the teeth because the inmate does not meet the two or five years time limits on obtaining dentures or partials.

17.    There are systemic deficiencies in how the defendants choose to deliver dental care, due to the reduction in the number of dentists hired, and the issuance of a modified policy directive requiring a minimum two years wait once you enter a prison to even be placed on a waiting list and requiring a prisoner to wait five years for replacement of dentures. The lack of time and resources used to provide dental care to prevent present dental issues from turning into emergencies is subjecting Plaintiffs and the class members to severe and prolonged pain and loss of teeth that can never be effectively replaced. These systemic deficiencies have affected:

a. Plaintiff Woroniecki because his teeth were extracted and then he was placed on a waiting list to get denture impressions. He was subsequently taken off the waiting list due to a change in MDOC policy that stated he had to wait 2 years from the date of intake at the prison to be placed on the waiting list.

b. Plaintiff Rogers was also told that he had to wait two years to receive routine dental treatment and five years to be placed on a waiting list for new dentures.

c. Plaintiff Turner was also affected because his dentures were misplaced during a shake down of his cell and due to the new policy

he had to wait over a year to meet the new five year requirement to

get on a waiting list for replacement dentures.

These systemic deficiencies have caused the named Plaintiffs, and class members,

to needlessly suffer severe and prolonged pain and mental anguish.

18.    Defendant Heyns is directly responsible for designating what dental

care is provided to prisoners confined with the MDOC, and is directly responsible

for the care of the named Plaintiffs and the proposed class members, who have all

suffered, and will suffer, as a result of the failures enumerated in this complaint.

19.    The proposed class is composed of all past, present and future

prisoners who have been members who have required/require, and/or will require

appropriate dental care, such as dentures and replacement of dentures, pulling of

teeth, restoration of teeth, filling of cavities, cleaning of teeth, such that Plaintiffs

and the proposed class members are subjected to severe and prolong pain in

violation of the Eighth Amendment..

20.    Through the policy of Defendant Heyns, most, if not all, prisons have

a policy to pull teeth that could be repaired because the costs of pulling teeth is less

expensive than repairing such teeth.

21.    Through the actions of Defendant Heyns, when most of the teeth are

extracted, the named Plaintiffs and the proposed class members are not provided a

soft diet to allow these prisoners to chew/masticate food and maintain a minimum safe dentition with proper occlusion, which results in these prisoners not being able to consume the minimum required caloric intake.

22.   The proposed class of prisoners similarly situated to the named Plaintiffs is so numerous, it is impractical to list or bring all members before the court.   On information and belief, there are at least a thousand, if not more, prisoners of the MDOC who are class members similarly situated to the named Plaintiffs, in that, they have been denied access to dental care such that they have been subjected to severe and prolonged pain, and have been able to consume very little food because of not having dentures or teeth to properly chew.

23.   The named Plaintiffs and their counsel will fully and adequately represent the interests of all the members of the proposed class.   Counsel Manville specialized in the area of prisoners' rights and has litigated other class action lawsuit.   Members of the Gittleman's Law Firm have litigated numerous cases involving dental issues.

24.   The nature of the rights sought to be enforced by the named Plaintiffs are typical of all of the members of the proposed class, because there are common questions of law and fact that predominate over questions affecting only members, and common relief is sought.

25.   Plaintiffs seek certification of subclasses of prisoners as to dental care
not being provided and/or delayed.  These subclasses are:

a.   <u>Two Year Requirement for Routine Dental Care</u>: All those prisoners
who are initially confined and denied access to routine dental care, such as
dentures, denture replacement, teeth repair or cleaning, for at least two years
before they can be even placed on the long waiting lists, which then results
in not receiving routine dental care for three or four years. Plaintiffs Rogers,
Evans and Woroniecki were all denied access to routine dental treatment for
the two-year waiting period.   In November of 2012 Rogers told prison
Health Services that he was in severe and prolonged pain within his mouth,
had problems with his stomach and with digesting food because he could not
chew his food properly due to having only eight teeth in his mouth. He was
placed on a waiting list and told that he should get to see a dentist in
December of that year. This never happened so he filed a grievance. In
August of 2013 he received a response to the grievance that stated because
he recently returned to prison he had to wait two years in order to be eligible
for routine dental treatment. He has not received any treatment yet and as a
result has suffered severe and prolonged pain in his mouth, and lost 25
pounds because he has not been able to eat right.

b.    <u>Five Year Requirement for Replacement/New Dentures</u>: All those prisoners seeking dentures who are delayed or denied such by being placed on a waiting list for months if not years to receive dentures after teeth have been pulled by agents of Defendants or for replacement of dentures, which is limited to one every five years regardless of the condition of such denture. Plaintiff Woroniecki was placed on a waiting list to have full denture impressions made after his teeth were pulled. However, a month later he was informed that he was not eligible for new dentures as per the new dental policy requiring a five year waiting period even though his teeth were pulled approximately two months before the new policy was implemented. This delay in new dentures subjected Woroniecki to severe and prolonged pain and not being able to properly consume food. Woroniecki has still not received his dentures. In addition, Plaintiff Turner's dentures were misplaced or stolen during a shakedown of his cell. He filed a grievance and was told that he would have to wait to his dentures replaced due to the new 5-year policy.  Plaintiff Turner is presently suffering severe and prolonged pain and the inability to consume the caloric intake required so that he does not suffer hunger pain.

c.    <u>Lengthy Waiting Period for Production of Dentures</u>: Even when prisoners have been approved for dentures it can takes months if not years for production of these dentures.  The Dental Association recommendation for completion of dentures is eight to twelve weeks. In October 2012, Plaintiff Stephenson informed medical staff at MCF that his upper denture had broken in half. He was placed on a waiting list for denture replacement. After submitting numerous kites seeking dental care he finally got an impression made in July 2013. Then Stephenson filed more kites to address the delay in receiving his dentures. Finally, one year and eight months after he requested a new denture, he received his dentures. The delay in production of his dentures caused Stephenson severe and prolonged pain, he had trouble speaking, and he had problems chewing food so he had to be placed on a soft diet.

d.    <u>Teeth Extraction instead of Teeth Restoration</u>: Dentists routinely pull teeth of prisoners instead of repairing teeth that are in good condition. In November 2013, Woroniecki had all his remaining teeth pulled while imprisoned at the Muskegon Correctional Facility by defendant Sanders. These good teeth were pull pursuant to the policy of defendant Heyns not to engage in restoration of teeth. Furthermore, from 2009 through 2013,

Plaintiff Johannes, suffered numerous unnecessary teeth extractions. For example: Johannes teeth were examined several times by defendant Sanders, on May 6, 2009, October 6, 2009 and November 23, 2009, however on all three occasions defendant Sanders did not work on restoring Johannes teeth. Finally, on December 7, 2009, defendant Sanders extracted two teeth. This could have been avoided if the defendant Sanders had repaired the teeth several months prior instead of waiting for the condition of the teeth to deteriorate to the point that they needed extraction. Subsequently, Johannes had other teeth extracted instead of restored after a lengthy delay in treatment.

e.    <u>Denial of Dental Repairs</u>: Numerous prisoners have sought to obtain repair of broken, cracked teeth, with or without cavities and were refused or delayed in obtaining such repairs. Plaintiff Evans sought dental care to repair fillings that had broken off and the edges were cutting his tongue. Even though he was told that his broken teeth would be fixed prior to his transfer to MCF, he was denied treatment upon his arrival. It has been over three years since he requested dental repairs, and he is still on the waiting list to have his broken teeth repaired.

26.     The maintenance of the instant action as a class action will be superior to individual litigation by promoting convenient and efficient administration of justice.

27.     The named Plaintiffs and the proposed class members have been subjected to deliberate indifference to serious dental needs and have been subjected needlessly to severe and prolonged pain.

**Factual Allegations**

**Plaintiff Johannes's Factual Allegations**

28.     On or about May 6, 2009, defendant Sanders examined Johannes' tooth #31 and determined there was no restoration of the tooth.

29.     On or about August 25, 2009 tooth #12 was examined and rescheduled for a different time.

30.     On or about September 9, 2009 a temporary filling on tooth #12 was placed and the filling fell out on September 12, 2009.

31.     On or about September 14, 2009 an Amalgam restoration was performed on tooth #12, and tooth #12 broke off while tightening the metal band and then tooth #12 fell out on or about December 14, 2009.

32.     On or about October 6, 2009 defendant Sanders examined #31 and determined more time is needed.

33.     On or about November 23, 2009, an x-ray was taken and defendant examined tooth #27, 28 and 31 and determined more time is needed.

34.     On or about December 4, 2009, defendant Sanders examined plaintiff and did not do any procedures.

35.     On or about December 7, 2009, defendant Sanders extracted tooth #28 and tooth #31.

36.     On or about March 1, 2010, defendant Sanders extracted tooth #12.

37.     On or about April 19, 2010 Defendant Sanders placed a temporary filling on tooth #15.

38.     On or about June 16, 2010, defendant Sanders consulted but did not perform any treatment.

39.     On or about July 22, 2010, defendant Sanders consulted regarding tooth #13 and #14 treatment but no work was done.

40.     On or about July 26, 2010, defendant Sanders placed a permanent filling in tooth #15.

41.     On or about October 6, 2010, defendant Sanders made a treatment plan but dental staff have not followed through with it.

42.     On or about December 10, 2009, defendant Sanders examined Johannes and found advanced periodontal disease, and extracted tooth #13.

43.    On or about August 23, 2011, Johannes requested fillings and partial.

44.    On or about April 24, 2012, Johannes requested his teeth be cleaned.

45.    On or about January 31, 2013, Johannes complained of severe and prolonged pain in a tooth that broke.

46.    On or about February 11, 2013, defendant Sanders examined Johannes, Defendant Sanders diagnosed a broken tooth and pain when eating, and a periapical abscess and scheduled both teeth for extraction.

47.    On or about March 1, 2013, defendant Sanders diagnosed un-restorable caries, un-restorable fracture and extracted tooth #19.

48.    On or about March 5, 2013, defendant Sanders consulted for treatment with Johannes.

49.    On or about March 27, 2013, Johannes requested an exam and teeth cleaning.

50.    On or about June 17, 2013, Johannes requested to have partial and bridges.

51.    Johannes, during his entire treatment with defendant Sanders, has continually requested through verbal requests to defendant Sanders, Mary Baker, and/or Sheryl Bild for partial bridges and/or dentures due to his loss of teeth and inability to eat/chew hard foods.

52.     Defendants or their agents had knowledge of loss of Johannes' teeth due to periodontal disease and/or extractions and/or other reasons; and knew the missing teeth required replacement by bridges and/or dentures, but failed to do any replacement of natural lost teeth at any time and/or failed to do so timely by providing dentures and/or bridges.

53.     Johannes has been incarcerated since 2008 and from his date of incarceration up to present day, he has had teeth extracted, lost several teeth, and thus, requires dentures/partials so that he is able to eat hard foods and chew hard foods, but defendants have failed to fashion any bridges and/or dentures for him.

54.     From 2009 through 2013, Johannes, and his similarly situated class members, have suffered numerous unnecessary teeth extractions and currently, do not have a viable dentition to support eating and/or chewing, including inability to eat hard and/or chewy foods.

55.     Johannes has filed numerous Kites complaining about the inability to eat, because he has had numerous teeth extractions and requested dentures or some restorative device so that he can eat food.

56.     Recently, Johannes received a set of dentures for the lower right side of his mouth.  However, the dentures do not fit right and are cutting into his gum and causing bleeding.  Thus, he is not able to chew using these dentures.

57.     Johannes has still not received the denture for the upper left side of his mouth and is not able to chew on that side of this mouth.

58.     Defendants have failed to and/or timely failed to supply, fashion, make or otherwise provide any dental device, including dentures, partial dentures, and/or bridges, so Johannes, and proposed similarly situated class members, can engage in the normal activity of eating.

59.     Johannes, and the proposed similarly situated class members, have suffered deliberate indifference to their continual serious dental needs, by defendants failing to provide at all, and/or timely dentures, partial dentures, and/or bridge(s), i.e., restorations being made, fashioned and delivered to the patient-prisoner timely, including plaintiff, and the proposed class members, thereby seriously inhibiting the ability to eat and chew chewy and/or hard foods, inability and/or loss of ability to masticate, causing severe and prolonged pain and suffering, debilitated general health, deterioration of the teeth and inability  to engage in normal life activities, including chewing, eating, swallowing, unnecessary loss of bone, cosmetic deformities, facial deformities, loss of weight, deficiencies to general health, including nutrition deficiencies from inability to eat and chew.

60.   Johannes, and the proposed similarly situated class members, have suffered deliberate indifference to their serious dental needs by defendants' serial failure to provide timely and/or no restorations, timely and/or no extractions of painful decayed teeth, and /or the making of dentures, partial dentures or bridges for patients lacking teeth to allow eating properly, which are serious life needs.

61.   Johannes, and the proposed similarly situated class members, have suffered deliberate indifference to their serious dental needs by defendants failing to provide and/or timely provide replacement teeth in the form of bridges and/or dentures where defendants knew or should have known teeth were pulled, lost due to periodontal disease or other reasons, extracted, and/or fell out; and by failing to provide bridges and/or dentures, thereby worsening Johannes's and proposed similarly situated class members, dental condition and health by denying the ability to eat/chew hard foods, causing inability to engage in normal life activities, including chewing, eating, swallowing, loss of bone, cosmetic deformities, facial deformities, loss of weight, deficiencies to general health, nutrition deficiencies due to inability to eat and chew.

62.   Johannes, and the proposed similarly situated class members, have suffered deliberate indifference to their serious dental pathologies, by defendants failing to provide reasonable, and reasonably prompt dental treatment for the

pathological conditions and, failing to provide remedial or follow-up care, including but not limited to preventing teeth loss, providing dentures/partial dentures/bridges/restorations/ periodontal treatment to provide for proper eating and mastication.

63.     Due to prison policy and practice, Johannes, and th proposed similarly situated class members, are forced to eat only soft foods because of their inability to eat hard and/or chewy foods and/or are deprived of the ability to eat normally or at all causing inability to engage in normal life activities as stated in the above and below paragraphs, including chewing, eating, swallowing, loss of bone, cosmetic deformities, facial deformities, loss of weight, deficiencies to general health, nutrition deficiencies due to inability to eat and chew.

64.     Johannes, and the proposed similarly situated class members, have suffered deliberate indifference to their serious dental needs, by defendants causing plaintiff, and his class members, to the present time to suffer with few teeth and/or no teeth or untreated pathological teeth or gums, because defendants failed to provide remedial dental care or deliver, fashion, make dentures, partial dentures, bridges, and/or restorations or periodontal treatment to enable Johannes and the class members to maintain reasonable general health, eat, chew hard and/or chewy foods, and bite into foods.

**Plaintiff Woroniecki's Factual Allegations**

65.     In November of 2013, Woroniecki had all of his remaining teeth pulled while confined at the Muskegon Correctional Facility (MCF) by Defendant Sanders pursuant to the policy of Defendant Heyns not to engage in restoration of teeth.

66.     He was then placed on a waiting list to have full denture impressions made.

67.     After waiting a few months for an appointment to have a denture impression taken, he sent kites to the dentist inquiring about when the impressions would be taken.

68.     On December 23, 2013, dental staff informed Woroniecki that per the new dental policy he was not eligible for routine treatment until at least June 2014, and was told to send another kite at that time.

69.     At the time of the implementation of the changes in the dental policy, Woroniecki was on a waiting list so the dental impression could be taken, but he was removed from the waiting list due to a change in policy.

70.     This change in policy by Defendant Heyns not only delayed the receipt of dentures by Woroniecki, but also delayed new or replacement dentures by the proposed class members, and subjecting them to severe and prolonged pain and not being able to properly consume food.

71.     Woroniecki filed a first step grievance and he was denied any relief because the new policy had been followed.

> Policy Directive (PD) 04.06.150 Dental services was revised on 9/30/13. As a result of the revision, prisoners are only eligible for routine dental services after 24 months from the first day of intake. The grievant arrived at the reception center on 6/19/12 and therefore would not be eligible for routine dental services until 6/19/14.
>
> The grievant has been removed from all Dental waiting list as a result of the PD revision and is encouraged to submit a health care request form inquiring about services after 6/19/14.

72.     Woroniecki was told that based on the new policy he had to wait to receive dentures even though his teeth were pulled approximately two months before the new policy was implemented.

73.     On information and belief, it seems MDOC staff will claim that it must follow policy when it is convenient for them and then ignore policy when they want.

74.     Woroniecki filed a second step grievance and in affirming the first step response, staff stated:

> Routine dental services include things like exams, cleanings, filings minor oral surgery and dentures.  The dental treatment requested by the grievant is considered routine.  *** The fact that grievant's teeth were extracted prior to the date of policy revision does not void this new eligibility requirement.

The third step grievance response denied the appeal.

75.   On June 9, 2014, Woroniecki sent a kite to prison health care requesting to be placed back on a waiting list.  He was told he was put on the list but the "list is not short."

76.   On June 28, 2014, Woroniecki sent a second kite to dental but the response stated he was on the list.

77.   On July 1, 2014, Woroniecki sent a letter to the warden at MCF asking for her help to get dentures that he had been waiting for since 2013.  He explained to the warden the problems he was having eating some meals at the prison mess hall.  The warden's response was to refer his letter to the health unit manager.

78.   On August 1, 2014, Woroniecki sent another kite to health care inquiring into how much longer he had to wait and he was informed he was on the waiting list.

79.   As of the filing of this amended complaint, Woroniecki is still on the waiting list waiting for his dentures.

80.     Woroniecki, and his proposed similarly situated class members, have sought to obtain dentures but were refused or delayed in obtaining such.

81.     Woroniecki, and his proposed similarly situated class members, have suffered severe and prolonged pain while waiting for dentures, and have not been able to consume food in a proper manner.

**Plaintiff Turner's Factual Allegations:**

82.     Prior to a shakedown of the prison-housing unit, Turner had his dentures in his cell.

83.     After the shakedown, Turner could not find his dentures and believed that either staff discarded them during the shakedown or they were stolen.

84.     On January 1, 2014, Turner submitted a kite informing staff that he had lost his denture during a shakedown.

85.     Dental staff placed him on a waiting list to be evaluated as to his dentures.

86.     Turner was evaluated on January 27, 2014 and stated that his dentures were stolen.  The person responding to the grievance states that "[t]he body of this grievance indicates that he [sic] dentures were lost during a shakedown."

87.     The grievance person determined that "[t]here is no evidence that any Michigan Department of Corrections staff were responsible for the loss of the

grievant's dentures and as a result he is only provided dentures every 5 years and will have to wait in [sic] December of 2016 to have them replaced."

88.     Turner appealed the first step grievance denial to the second step and was informed that "[i]t appears that the currently missing partial has not been determined to be the result of a custody action nor has its replacement been deemed mandatory from a medical standpoint."

89.     The third step grievance response found no violation of policy.

90.     Turner, and the proposed similarly situated class members, have sought to obtain dentures but were refused or delayed in obtaining such.

91.     Turner, and the similarly situated class members, has suffered severe and prolonged pain while waiting for dentures.

**Plaintiff Evans' Factual Allegations:**

92.     In 2013, Evans submitted two kites seeking dental care because fillings had broken off and the edges were cutting his tongue.

93.      Prior to being transferred to MCF, Evans was told that his broken teeth would be fixed.

94.     Upon his arrival at MCF, he sought to have these teeth fixed.

24

95.     In a dental kite dated February 14, 2013, Evans complained about the problems he was having with the broken teeth because it had been two years since the fillings had broken off.

96.     In a response dated February 15, 2013, to his dental kite, dental staff stated, "[y]our name will be added to the filling list.  We will see you as soon as we are able for your crown."

97.     A grievance was filed on January 16, 2014 and was denied through the three-step process.

98.     As of the filing of this lawsuit, Evans broken teeth have not been repaired.

99.     Evans, and the proposed similarly situated class members, have sought to obtain repair of broken, cracked teeth, with or without cavities, and were refused or delayed in obtaining such repairs.

100.    Evans, and the proposed similarly situated class members, have suffered severe and prolonged pain while waiting for repair of damaged teeth.

**<u>Plaintiff Stephenson's Factual Allegations</u>**:

101.    In June 2012, Stephenson upper denture plate split in half while he was confined at Chippewa prison.

102.    In October 2012, Stephenson was transferred to MCF.

103.   Upon his arrival at MCF Stephenson informed medical staff that his upper denture had broken in half and he was placed on a waiting list for denture replacement.

104.   Throughout the rest of 2012, Stephenson submitted numerous kites seeking dental care but was constantly informed he was on the waiting list.

105.   In March 2013, Stephenson was issued a detail for a soft diet because he could not chew food with his broken upper denture.

106.   In July 2013, Dentist Melson made an impression and agreed to send it to the lab.

107.   Stephenson made inquires in October and November as to the status of his denture but only received one response.

108.   In January 2014, Stephenson filed a grievance as to his dentures not being replaced even though his denture impression had been taken in July 2013.

109.   On January 17, 2014, in response to the grievance, Stephenson was told that his "denture have not returned from the lab."

110.   On February 13, 2014, the second step response stated, "it appears that there has been an inadvertent delay in the processing of grievant's dentures.  With apologies for that delay, grievant's case has now been assigned priority status.  Every effort will be made to complete grievant's dentures as swiftly as possible."

111.   Stephenson suffered severe and prolonged pain, was not able to speak, and had problems speaking while not having replacement denture.

112.   In June 2014, Stephenson received his dentures and has been going through an adjustment stage.

113.   Stephenson, and the proposed similarly situated class members, have sought to obtain replacement dentures but were refused or delayed in obtaining such.

114.   Stephenson, and the proposed similarly situated class members, have suffered severe and prolonged pain while waiting for replacement dentures.

**Plaintiff Rogers' Factual Allegations**:

115.    Prior to November 18, 2012, Rogers was screened by prison Health Services and he told the nurse that he was in severe, prolonged pain within his mouth, and had problems with his stomach and with digesting food because he could not masticate his food properly due to having only eight teeth in his month.

116.   In November 2012, Nurse David told Rogers he was placed near the top of the waiting list and he should be called out in December of that year.

117.   In February 2013, Nurse Davis told Rogers that by the end of the month or in March he should be called out to see the dentist.

118.   In March 2013 Nurse Davis told Rogers that due to loss of staff and reduction in hours that he was still at the top of the list and would be called out.

119.   In August 2013, in response to a grievance filed by Rogers, Nurse Davis told Rogers that he had an upper and lower partial made by the MDOC in December of 2008 and by policy he was not eligible for another one until December 2013 and he had to have more than 12 months left before his earliest release date.

120.   Rogers was also told in the grievance that because he recently returned to prison he had to wait two years in order to be eligible for routine dental treatment.

121.  The grievance response went on to state "[t]he fact that grievant has already met the 5 year requirement for consideration of partial dentures does not void or take precedence over this basic treatment of eligibility requirement."

122.   In December 2013, Rogers sought dental care twice and in one response he was told by policy he was not eligible and he never received a response to his second request.

123.   In January 2014, Nurse Kritz told Rogers he would be placed on the waiting list.

124.   In February 2014, Nurse Kritz told Rogers he would be evaluated for a broken tooth.

125.   In April 2014, Rogers had not been evaluated.

126.   Rogers has suffered severe and prolonged pain while waiting for dental care.

127.   Rogers, and the proposed class members, had submitted many kites for urgent dental care but never received it even though he explained to dental staff the pain he was suffering.

128.   Rogers, and many of the proposed class members, have lost weight.  In fact, Rogers estimated that he lost approximately 25 pounds due to not being able to eat right.

129.   In response to step II of the grievance filed by Rogers, prison staff stated:

> It appear there has been discussion re: whether or not grievant will remain in prison long enough for the process to be completed as he is eligible for parole in the near future. As far as can be determined by this writer, there is no confirmed parole action as of this date. OCF Dental has been advised of this and, per the instruction of the Dental Director, has been instructed to proceed with treatment as outlined per PD 04.06.150. Dental Services.  Grievant is advised that he will not be given preferential treatment re: timing of treatment but will be seen in turn as prioritized by policy.  Grievant is reminded that there is no guarantee that the process will be completed at any particular time.
>
> * * *
>
> No further resolution can be offered at this time.

130.   The third step response states "there is no time frame for when an inmate is to begin the process of dentures and/or when they will be completed and issued.  No violation has been found."

131.   In response to a dental kite, Rogers was told "it takes almost a year to complete denture/ partial cases with a minimum of 4 steps.   You have had only the 1st step & it is too soon for its next step."

132.   Rogers has still not received his dentures as of the filing of this amended complaint.

133.   Rogers, and the proposed similarly situated class members, have sought to obtain dentures but were refused or delayed in obtaining such due to Defendant Heyns imposing waiting time limits.

134.   Rogers, and the proposed similarly situated class members, have suffered severe and prolonged pain while waiting for dentures.

**EIGHTH AMENDMENT VIOLATION**

135.   Plaintiffs reallege and incorporate by reference all prior paragraphs.

136.   Dental/health needs are serious medical necessities, because dental care is one of the most important needs of inmates to preserve and maintain general health, including the ability to eat and chew foods, and the ability to engage in a normal activity of eating, necessary for maintaining nutritional health, physical health, and dental health. Normal eating and chewing is a basic bodily function to sustain life, and deprivation of the ability to eat and chew constitutes cruel and unusual punishment.

137.    Deliberate indifference to serious dental needs is evidenced by systemic deficiencies in dental care policies and practices in Michigan prisons that have produced longstanding instances of inadequate care. It is unconstitutional and constitutes cruel and unusual punishment, thereby violating the Eighth Amendment of the United States Constitution when these serious dental needs of the Plaintiff and proposed class members were/are not met.

138.    Defendants have created and engaged in systemic deficiencies in the delaying and denying needed dental care to the Plaintiffs and proposed class members, such that they have demonstrated deliberate indifference to serious dental needs.

## Relief

WHEREFORE, for the reasons stated above, this Court should:

A.    Accept jurisdiction of this matter;

B.    Certify this matter as a class action and design sub-classes;

C.    Declare that the rights of Plaintiffs and class members were violated by the actions of the Defendants;

D.    Find that the actions of the Defendants, as to the providing of dental care, subjected the Plaintiffs and the class members to a violation of their Eighth Amendment rights against cruel and unusual punishment;

E.    Issue an injunction against the Defendants to:

1.   Require that Defendant Heyns hire sufficient staff to ensure that the requirements of the Eighth Amendment are met in the providing of dental care;

2.   Eliminate the time requirement that from the time of incarceration the inmates must wait two years to be placed on a dental list to receive routine dental services, which then can require another year or more to be provided it;

3.   Eliminate the time requirement that once an inmate receives a denture they must wait five years before they are eligible for denture replacement when the dentures breaks or some other issue arises when the denture does not serve it purpose;

4.   Require that denture replacements be completed within 4 months of the first impression taken;

5.   Require Defendants to implement a plan to first seek restoration of teeth before consideration of extraction of these teeth, and to provide written documentation as to steps taken to determine whether restoration or extraction; and

6.   Provide soft food diet to those inmates whose teeth have been extracted until they are provided with dentures.

F.      To award attorneys' fees and costs;

G.      To grant any other relief that is just and equitable.

Respectfully submitted, by:

Counsel for Plaintiffs

/s/ Daniel E. Manville
Daniel Manville (P39731)
Director, Civil Rights Clinic

Krystal Myge
Cadence Custin
Clinical Law Students

Michigan State University College of Law
610 Abbott Road
East Lansing, Michigan 48823
(517) 336-8088, Ext. 1137
daniel.manville@law.msu.edu


Robert Gittleman
Tracie R. Gittleman, (P 45176)
31731 Northwestern Hwy., Ste. 101E
Farmington Hills, Michigan  48334
(248) 737-3600

### PROOF OF SERVICE

I, Daniel E. Manville certify, under penalty of perjury, that on February 2, 2015, I caused a copy of the above document to be served by the ECF system on Defendants' counsel.

/s/ Daniel E. Manville
Daniel E. Manville