**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**ROBERT JOHANNES,**
et al.,

      Plaintiffs,                                   **CIVIL ACTION NO. 14-CV-11691**

vs.                                           **DISTRICT JUDGE LAURIE J. MICHELSON**

                                            **MAGISTRATE JUDGE MONA K. MAJZOUB**

**DANIEL HEYNS, and
DALTON SANDERS, D.D.S.,**

      **Defendants.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Robert Johannes, currently a prisoner at the Gus Harrison Correctional Facility in Adrian, Michigan, filed this proposed class action under 42 U.S.C. §§ 1983 and 1988, on behalf of himself and all other similarly situated prisoners, against Defendants Daniel Heyns (Director of the Michigan Department of Corrections (MDOC))[1] and Dr. Dalton Sanders (a general dentist in charge of Plaintiff's dental care). Plaintiff Johannes filed an Amended Complaint adding five additional Plaintiffs as proposed class representatives: Michael Woroniecki (incarcerated at the Muskegon Correctional Facility), Phillip Turner (incarcerated at the Chippewa Correctional Facility), Joe Evans (on parole as of June 30, 2015), Roger Stephenson (incarcerated at the Muskegon Correctional Facility), and Max Rogers (on parole as of July 8, 2014, but currently in custody in Benton Harbor, Michigan). (Docket no. 37.) Plaintiffs allege that the MDOC has a

---

[1] Plaintiff has recently filed a Notice of Substitution of Party indicating that Heidi Washington has replaced Daniel Heyns as Director of the MDOC as of May 2015. (Docket no. 58.) Pursuant to Fed. R. Civ. P. 25(d), the Court will substitute Ms. Washington as a Defendant in place of Mr. Heyns in this matter.

1

policy or practice of

> denying dental care, including failure to ensure timeliness and completed required dental treatment to maintain proper occlusion, ability to masticate food and eat, prevent general health problems from malnutrition, prevent loss of teeth, prevent periodontal disease, prevent loss of multiple teeth destroying healthy dentition, provide timely competent restorative treatment, maintain timely prophylaxes schedules to maintain healthy oral cavity heath, prevent unnecessary teeth loss by timely restorative and periodontal treatment, prevent pathologic changes in the jaw joints by timely competent general restorative dentistry.

(Docket no. 1 at 2-3.) Plaintiffs seek injunctive relief requiring Defendants to provide adequate dental care. (*Id.* at 31-32.)

Before the Court is Plaintiff's Motion to Certify Class. (Docket nos. 38 and 39.) Defendants filed a Response (docket no. 42) and Plaintiff filed a Reply (docket no. 45).[2] All pretrial matters have been referred to the undersigned for consideration. (Docket no. 15.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

**I. Recommendation**

The undersigned recommends granting Plaintiffs' Motion to Certify Class [38]. Accordingly, the Court should also grant Plaintiffs' Motion to Modify Schedule Order [40], in part, and permit Plaintiffs to serve Defendants with a total of 30 Requests for Admission. If the Court rejects this recommendation, the Court should still grant Plaintiffs' Motion to Modify

---

[2] Also pending are Plaintiff's Motion to Modify the Court's Scheduling Order (docket no. 40), Plaintiff's Motion for Protective Order for Production of Dental and Medical Records (docket no. 55), Plaintiff's Second Motion to Compel Responses to 5th Discovery Requests (docket no. 57), Plaintiff's Motion for Order to Modify Scheduling Order (docket no. 60), and Defendants' Motion for Leave to File More than One Summary Judgment Motion (docket no. 61). Because the resolution of Plaintiff's Motion for Modification of the Scheduling Order (docket no. 40) turns, in part, on whether the Court accepts the recommendation herein, the undersigned will address the same in this Report and Recommendation. The additional outstanding Motions (docket nos. 55, 57, 60, and 61) will be addressed in a separate Opinion and Order entered at a later date.

Scheduling Order [40], in part, but should limit Plaintiffs' Requests for Admission to 24.

## II.     Report

### A.     Factual Background

Through their amended Complaint, each Plaintiff sets forth the factual allegations related to their allegedly unconstitutional dental care. Each Plaintiff alleges that Defendants' failure to provide adequate care was a result of deliberate indifference in violation of the Eighth Amendment and that the violation stems from MDOC policy and practice. And they further allege that they each represent a class of similarly situated individuals that have been harmed by these polices.

Plaintiff Johannes alleges that from 2008 through the time of the Complaint, he lost several teeth "due to periodontal disease and/or extractions and/or other reasons," that these conditions were caused primarily due to substandard dental care, and that Defendants failed to provide any dentures or bridges (until recently) that would allow him to eat properly; he adds that the dentures he received recently only fill a portion of his mouth and that they fit improperly, so they cut into his gums when he chews. (Docket no. 37 at 13-19.)

Plaintiff Woroniecki alleges that in December of 2013, six months after he arrived at the Muskegon Correctional Facility, he had "all of his remaining teeth pulled . . . pursuant to the policy of Defendant Heyns not to engage in restoration of teeth." (*Id.* at 20.) He was placed on a waiting list for dentures, but before he received them, the MDOC changed its policy so that "prisoners are only eligible for routine dental services after 24 months from the first day of intake." (*Id.* at 21.) Thus, Plaintiff Woroniecki was removed from the waiting list and was told to reapply in June of 2014. Plaintiff went nearly 18 months without his dentures before he could ask for them, and when he did apply, he was told that the "list is not short." (*Id.* at 21-22.) As of

3

February 2, 2015, the date Plaintiffs filed their Amended Complaint, Plaintiff Woroniecki had not received any dentures. (*Id.* at 22.)

Plaintiff Turner alleges that his dentures disappeared during a shakedown of his cell on January 1, 2014. He asked to be placed on the waiting list for dentures, but when prison staff determined that "there [was] no evidence that any [MDOC] staff were responsible for the loss of the . . . dentures," the prison enforced MDOC policy and told him that he would have to wait five years from the time he originally received them (until December of 2016) to have his dentures replaced. He alleges that he has endured prolonged pain while waiting for the dentures. (*Id.* at 23-24.)

Plaintiff Evans alleges that in 2011, his fillings broke, and by February of 2013, the edges were cutting his tongue. On February 15, 2013, dental staff told him that he would be added to the list for fillings. As of February 2, 2015, the date of the Amended Complaint, Plaintiff's fillings had not been repaired. (*Id.* at 24-25.)

Plaintiff Stephenson alleges that in June of 2012, his upper dental plate split in half. He was placed on a waiting list for dentures, and in March of 2013, he was "issued a detail for a soft diet because he could not chew food with his broken upper denture." (*Id.* at 25-26.) In July of 2013, the prison dentist took impressions for a replacement dental plate, but seven months later, in February of 2014, Plaintiff was told that there was an "inadvertent delay in the processing of [his] dentures . . . [, so his] case ha[d] . . . been assigned priority status." (*Id.* at 26.) Plaintiff received his dentures in June of 2014—two years after his dental plate split. (*Id.* at 27.)

Plaintiff Rogers alleges that in November of 2012, he told a prison nurse that he was "in severe, prolonged pain within his mouth, and [that he] had problems with his stomach and with

4

digesting food because he could not masticate his food properly due to having only eight teeth in his mouth." (*Id.* at 27.) He claims that the nurse placed him "near the top of the waiting list" and told him to expect to be called out the next month. (*Id.*) In August of 2013, Plaintiff Rogers learned that he was not eligible for another partial plate for his mouth because he had received one in December of 2008 and because he had less than 12 months left before his earliest possible release date. (*Id.* at 28.) As of April 2014, Plaintiff had not been evaluated, so he filed a grievance. (*See id.* at 28-29.) In response to Step II of his grievance, Plaintiff Rogers was told that he would be provided with treatment because he had no clear parole date but that he would not be given any priority on the treatment list. (*See id.* at 29.) As of February 2015, Plaintiff still had not received his dentures. (*Id.* at 30.)

### B. Governing Law

Rule 23 of the Federal Rules of Civil Procedure governs class certification and sets out the following requirements:

> **(a) Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
>> (1) the class is so numerous that joinder of all members is impracticable;
>>
>> (2) there are questions of law or fact common to the class;
>>
>> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>>
>> (4) the representative parties will fairly and adequately protect the interests of the class.
>
> **(b) Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:
>
>> (1) prosecuting separate actions by or against individual class members would create a risk of:

5

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy....

Fed. R. Civ. P. 23. "The party seeking the class certification bears the burden of proof." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). The moving party must show that he meets all of the criteria of Rule 23(a), as well as at least one condition set forth in Rule 23(b).[3] *Id.* The Court has broad discretion in deciding whether to certify a class but must exercise that discretion within the bounds of Rule 23. *Id*.

    **C.    Analysis**

        **1.    Plaintiff's Motion to Certify Class [38]**

Through their Motion, Plaintiffs seek certification of one general class and five subclasses, set forth as follows:

> General Class: All prisoners sentenced to the MDOC, and those prisoners confined to the MDOC but are presently located at local jails, denied and/or delayed dental care and treatment due to a lack of dental staffing that result in these class members needlessly having teeth extracted and are subjected to severe and prolonged pain

---

[3] These five factors are commonly known as (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, and (5) superiority. *See, eg.*, *Telephone Company of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982).

and/or inability to eat or chew.

. . .

Subclass 1: All prisoners sentences to the MDOC, and those prisoners so confined to the MDOC but are presently located at local jails, denied and/or delayed dental care due to Defendant Heyns' written policy of not providing for at least two years after arrival at the prison routine dental care, including providing needed placement of dentures and/or bridge(s), and/or repair of teeth, that result in needlessly having teeth extracted and/or subject these prisoners to severe and prolonged pain, and/or inability to each and/or chew foods.

. . .

Subclass 2: All prisoners sentences to the MDOC, and those prisoners so confined to the MDOC but are presently located at local jails, who are within one-year of their released dated (sic) and are denied dental care due to Defendant Heyns' written policy of not providing routine dental care, including providing needed placement of dentures and/or bridge(s), and/or repair of teeth, that result in needlessly subjecting these prisoners to severe and prolonged pain, and/or inability to eat and/or chew foods.

. . .

Subclass 3: All prisoners sentenced to the MDOC, and those prisoners so confined to the MDOC but are presently located at local jails, whose teeth are in the need of repairs but are only provided the option of extraction of teeth, which subject these prisoners needlessly severe and prolonged pain, and inability to eat and/or chew foods.

. . .

Subclass 4: All prisoners sentenced to the MDOC, and those prisoners so confined to the MDOC but are presently located at local jails, who had received dentures or bridge(s) in the base from MDOC's dental staff and such dentures and/or bridge(s) have worn out, broken or were lost and replacement of such dentures were denied based on a written policy of Defendant Heyns, which result (sic) in needlessly subjecting these prisoners to severe and prolonged pain and the failure to consume the meals provided to these prisoners, resulting in weight loss, and/or inability to chew foods and/or eat.

. . .

Subclass 5: All prisoners sentenced to the MDOC, and those prisoners still confined to the MDOC, but are presently located a local jails, that have been

> incarcerated more than two years and are not within one-year of release, who have lost natural teeth and require placement and delivery of dentures and/or bridge(s) to provide for maintaining dietary health, maintaining proper occlusion of the prisoners' jaws, and allowing the prisoners to chew foods and/or eat.

(Docket no. 39 at 6-10.) As discussed below, Plaintiffs assert that they meet all four requirement of Rule 23(a) and that this matter meets the requirements of Rule 23(b)(2). Defendants assert that "all six Plaintiffs present with factually different claims" because they "received dental treatment for different dental issues from different dentists, at different times, and at different prisons." (Docket no. 42 at 7.) They contend that Plaintiffs have not met their burden of demonstrating that they have met any of the five class-action factors. (*Id.* at 8.)

### a. Numerosity

To support a finding of numerosity, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). But the number of plaintiffs is not the only consideration; instead, the Court must examine the specific facts of each case.

> The "impracticability" of Rule 23(a)(1) does not require impossibility, but only difficulty or inconvenience in joining all members of the class. *Jordan v. Global Natural Resources, Inc.*, 102 F.R.D. 45, 51 (S.D.Ohio 1984) ("[s]atisfaction of the numerosity requirement does not require that joinder is impossible, but only that plaintiffs will suffer a strong litigational hardship or inconvenience if joinder is required."); 4 H. Newberg, *Newberg on Class Actions* ("Newberg"), § 18.03 (3d ed. 1992). The numerosity requirement is met when plaintiffs demonstrate that the number of potential class members is large, even if plaintiffs do not know the exact figure. *See Peil v. National Semiconductor Corp.*, 86 F.R.D. 357, 365 (E.D.Pa.1980).

*Little Caesar Enterprises, Inc. v. Smith*, 172 F.R.D. 236, 242 (E.D. Mich. 1997). Plaintiffs contend that the class members in this matter include over 1,000 prisoners spread throughout the State of Michigan. (*See* docket no. 45 at 2.) In support of this contention, Plaintiffs have provided a list of prisoners waiting for dental care as of February 18, 2015, which shows

8

appointment requests for 1,761 prisoners at 15 facilities across the State.[4] The number of potential class members, coupled with their disbursement across the state and their status as prisoners, satisfies Plaintiff's burden of showing that joinder of the claims would be impracticable.

Defendants assert that even though the number of prisoners on the waiting list may be large, Plaintiffs "have not demonstrated that a sufficient number of class members have been actually injured and therefore have standing." (Docket no. 42 at 9.) But "[t]he numerosity requirement is met when plaintiffs demonstrate that the number of potential class members is large, even if plaintiffs do not know the exact figure." *Little Caesar Enterprises, Inc. v. Smith*, 172 F.R.D. 236, 242 (E.D. Mich. 1997) (citing *Peil v. National Semiconductor Corp.,* 86 F.R.D. 357, 365 (E.D.Pa.1980)). That is, "[w]here the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes–Hernandez v. Smith*, 541 F.Supp. 351, 370 (C.D.Cal.1982). Here, Plaintiffs' allegations center around a lack of constitutionally adequate dental care based primarily on inadequate staffing, leading to long delays in appointments and prolonged pain. (*See* docket no. 39 at 6.)

---

[4] At the time Plaintiffs filed their Motion to Certify Class, their discovery request for this waiting list was outstanding, as was their Motion to Compel the same. (*See* docket no. 19.) On January 29, 2015, the Court granted Plaintiffs' Motion to Compel, and Plaintiffs attached Defendants' responsive document to their Reply related to the instant Motion. (Docket no. 45-1.) The list itself, however, appeared to be a list of appointments actually held through February 18, 2015, rather than a list of appointment requests. Thus, the undersigned reached out to the Parties for clarification and, if necessary, a proper waiting list in accordance with the Court's January 29, 2015 Order. Defendants responded by providing an updated list via email but, more importantly, by clarifying that the column in the original list titled "Appt Dt." refers to the date on which the prisoner requested the appointment by kite or the date the prisoner was added to the appointment list by referral, not the date on which the appointment was actually held. (Docket no. 75 at 3.) Plaintiffs confirm this understanding through their Status Report filed the same day Defendants provided the updated list. (Docket no. 76 at 2.) Thus, for purposes of this Motion, the undersigned has considered only the list provided at docket no. 45-1 in the context of the explanation provided by Defendants.

Even assuming, *arguendo*, that not all of the prisoners on the waiting list provided to the Court are suffering pain or other symptoms as alleged by Plaintiffs, common sense indicates that the lists include a sufficiently large number of prisoners suffering from such problems to meet the numerosity requirement.

### b. Commonality

Commonality simply means that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This inquiry is "qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." *In re Am. Sys.*, 75 F.3d at 1080 (internal quotes and citation omitted). Defendants assert that Plaintiffs cannot meet their burden of showing commonality because "proofs would be necessary for each individual class member's dental presentation, each class member's treatment options, and each dentist's decisions regarding those treatment options for each class member." (Docket no. 42 at 11.) That is, Defendants contend that each potential class member suffered from a different dental problem and each dentist exercised his own discretion in determining the proper course of treatment. (*Id.* at 12-14.)

Defendants' argument would be persuasive if Plaintiffs' claims arose out of the individual conduct of the dentists or challenged the treatment decisions by those dentists. But Plaintiffs claim, instead, that the policy under which those dentists made their decisions is unconstitutional. And "[i]n cases involving the question of whether a defendant has acted through an illegal policy or procedure, commonality is readily shown because the common question becomes whether the defendant in fact acted through the illegal policy or procedure." *Van Vels v. Premier Athletic Ctr. of Plainfield, Inc.*, 182 F.R.D. 500, 507 (W.D. Mich. 1998). Thus, contrary to Defendants' position, if the representative Plaintiffs can show that the MDOC's policies are unconstitutional,

10

individual proofs related to the other class members' dental care would be unnecessary because injunctive relief would resolve all the plaintiffs' claims. Therefore, the commonality requirement is satisfied.

### c. Typicality

Typicality requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "'[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *In re Am. Med. Sys.*, 75 F.3d at 1082 (quoting 1 *Newberg on Class Actions*, § 3–13, at 3–76 (footnote omitted)).

The commonality and typicality requirements often tend to merge because "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Thus, Defendants argue that Plaintiffs' claims are not typical of the class at large for the same reasons articulated with regard to commonality. (*See* docket no. 42 at 14.) That is, Defendants contend that the circumstances of Plaintiffs' claims are "too varied to satisfy typicality." (*Id.* at 15.) The undersigned disagrees.

As discussed, Plaintiffs' legal theory is that Defendants' violated the Eighth Amendment by providing constitutionally inadequate dental care, primarily through a failure to hire sufficient staff and through implementation of an unconstitutional policy. This legal theory applies to all of the Plaintiffs' claims and all of the potential class members' claims. Moreover, while the events

11

leading to Plaintiffs' alleged physical injuries are dissimilar, they all arise out of the MDOC's allegedly unconstitutional policy. Therefore, for the same reasons Plaintiffs' claims satisfy the commonality requirement, they also satisfy the typicality requirement.

### d. Adequacy

There are two separate considerations with regard to the whether the named plaintiffs adequately represent the proposed class. Fed. R. Civ. P. 23(a)(4). The first consideration tests the experience and qualifications of class counsel; the second consideration asks whether the class representatives have common interests with the proposed class members. *See American Medical Sys.*, 75 F.3d 1069, 1083 (6th Cir. 1996). The Court must consider "the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *Cross v. Nat. Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir.1977). Notably, '[t]he adequacy of representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *American Medical Sys.*, 75 F.3d at 1083.

Defendants do not challenge the adequacy of class counsel. Plaintiffs are represented by Professor Daniel Manville of the Civil Rights Clinic at the Michigan State University College of Law and attorneys Robert and Tracie Gittleman of the Robert Gittleman Law Firm. Professor Manville regularly represents prisoners in civil rights matters and has served as counsel in another class action involving over 1,000 prisoners. (Docket no. 38-7.) Attorney Robert Gittleman has been practicing for over 40 years and specializes in dental malpractice law. (Docket no. 38-2.) Plaintiffs' counsel satisfies the first consideration in the adequacy analysis.

Defendants do, however, challenge the adequacy of the representative Plaintiffs in this matter. (Docket no. 42 at 15.) They assert that the "class representatives may themselves [have] not suffered the same deprivations as the class" and that "they could not adequately represent those with different dental problems and dental treatment options." (*Id.*) Again, however, Defendants' contention rests on the premise that Plaintiffs' claims revolve around the injuries they suffered at the hands of the various dentists rather than the allegedly unconstitutional MDOC policy. The undersigned finds that Plaintiffs have common interests with the class members they intend to represent as they seek injunctive relief in the form of an improved dental policy throughout the MDOC system.

          **e.**      **Superiority**

Plaintiffs assert that this matter should be certified as a class action under Rule 23(b)(2) because: "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiff is correct. As discussed, Plaintiffs claims all arise out of Defendants' allegedly unconstitutional dental-care policy, which applies generally to the entire proposed class. And because Plaintiffs seek only injunctive and declaratory relief, such relief would apply to the class as a whole.

Defendants contend that the superiority requirement is not met because of the individual inquiry needed with regard to the class members' injuries, but as discussed above, the individual harm suffered by each Plaintiff is not central to Plaintiffs' claims. Moreover, to the extent that Defendants ask the Court to consider the "non-exhaustive list of factors" set forth in Rule 23, such as inconsistent adjudication, individual claims, the supportability of separate actions, and the

13

expense of maintaining the class action, such considerations do not apply to Rule 23(b)(2). Indeed, the factors set forth by Plaintiff are enumerated, in part, under Rules 23(b)(1) and (b)(3). Thus, Defendants' argument is unpersuasive.

## 2. Plaintiff's Motion to Modify Scheduling Order [40]

Through the Court's July 14, 2014 Scheduling Order, Plaintiff Johannes and Defendants were each limited to 15 Requests for Admission. (Docket no. 18 at 1.) Since that time, five additional Plaintiffs have been added to this matter. Thus, through their Motion to Modify Scheduling Order, Plaintiffs ask that the Court permit each Plaintiff to serve Defendants with 15 Requests for Admission, for a total of 90 Requests. In support of this request, Plaintiffs note that while some of their discovery will overlap, these requests are necessary to limit the issues that need to be litigated. (Docket no. 40 at 2.) Additionally, Plaintiffs note that their Motion to Certify Class is outstanding. Defendants contend that Plaintiffs' additional Requests for Admission would be meant for no purpose other than to harass because "presumably all Plaintiffs in this action would be submitting the same uniform admissions to the [MDOC] Director regarding MDOC policy and its implementation." (Docket no. 44 at 6.) Further, Defendants argue, Dr. Sanders, the only other Defendant in this matter, would be unable to respond to any questions with regard to prisoners he did not treat. (*Id.*)

Defendants' argument is persuasive, to an extent, but the necessity of additional Requests for Admission changes significantly based on the outcome of Plaintiff's Motion to Certify Class. If the Court accepts the recommendation herein and certifies this matter as a class action, limiting Plaintiff to 15 Request for Admission is unduly restrictive. Thus, Plaintiffs' Motion should be granted in part and Plaintiffs should be permitted to serve Defendant with 30 Requests for

14

Admission if the Court also grants their Motion to Certify Class.

Nevertheless, even if Plaintiffs' Motion to Certify Class is denied, Plaintiffs should be permitted to serve Defendants with four Requests for Admission each, or a total of 24 Requests. Such a limitation should permit Plaintiffs to narrow the remaining litigation issues and account for any overlap between the Plaintiffs' Requests.

### D. Conclusion

For the reasons stated above, the Court should grant Plaintiffs' Motion to Certify Class [38]. Accordingly, the Court should also grant Plaintiffs' Motion to Modify Schedule Order [40], in part, and permit Plaintiff to serve Defendants with a total of 30 Requests for Admission. If the Court rejects this recommendation, the Court should still grant Plaintiff's Motion to Modify Scheduling Order [40], in part, but should limit Plaintiffs' Requests for Admission to 24.

### III. Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

15

Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: August 11, 2015           s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served on counsel of record on this date.

Dated: August 11, 2015           s/ Lisa C. Bartlett
                                 Case Manager

16