UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT JOHANNES,
MICHAEL WORONIECKI,
PHILLIP TURNER,
JOE EVANS,
ROGER STEPHENSON, and
MAX ROGERS,
individually, and on behalf of all other
similarly situated prisoners,

      Plaintiffs,

v.

HEIDI WASHINGTON and
DALTON SANDERS,

      Defendants.

Case No. 14-cv-11691
Honorable Laurie J. Michelson
Magistrate Judge Mona K. Majzoub

---

**OPINION AND ORDER DENYING WITHOUT PREJUDICE PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION [38]**

---

Four current and two former Michigan Department of Corrections ("MDOC") prisoners, Robert Johannes, Michael Woroniecki, Phillip Turner, Roger Stephenson, Joe Evans, and Max Rogers, filed this lawsuit asserting that inadequate dental care in MDOC facilities has subjected them to "cruel and unusual" punishment prohibited by the Eighth Amendment. For example, Rogers says that despite difficulty breaking down and digesting food with only eight teeth, MDOC has not provided dentures for years. As another example, Plaintiffs believe that, as happened to Woroniecki who had all his remaining teeth pulled, MDOC has a policy of extracting teeth instead of repairing them.

Plaintiffs also say they are not unique: they ask the Court to certify a class of MDOC prisoners (and five subclasses) who have been exposed to a risk of serious harm because of the

dental-care policies of former MDOC Director Daniel Heyns and current MDOC Director Heidi Washington. (Dkt. 38, Pls.' Mot. for Class Cert.) The Court referred the motion to Magistrate Judge Mona K. Majzoub and she recommends granting it. (Dkt. 83, August 11, 2015 Report and Recommendation.) Because Defendants have objected to all aspects of her recommendation (Dkt. 94, Defs.' Objs.), the Court has taken a fresh look at Plaintiffs' motion. Seeing things somewhat differently than the magistrate judge, the Court will deny Plaintiffs' motion for class certification without prejudice.

## I.

### A.

Since at least September 2013, the Michigan Department of Corrections has divided dental services into three priority levels.

"Emergency Dental Services" are at the highest priority level. Those are "[d]ental services for those conditions for which delay in treatment may result in death or permanent impairment." (Dkt. 61-2, MDOC Policy Directive 04.06.150 ¶ C (eff. Sept. 30, 2013).) According to MDOC's dental protocol, "Emergency Dental Services shall be available to all prisoners in all [Correctional Facility Administration] institutions, at all times. Emergency Dental Services shall be immediately provided upon receiving knowledge, in any manner, of a patient's need for Emergency Dental Services." (Dkt. 61-4, MDOC Protocol BHCS Dental P1 at 2 ¶ C.1. (eff. Jan. 5, 2015); *see also id.* ¶ A ("Emergency Dental Services are available 24 hours a day.").)

"Urgent Dental Services" are the second most important. These are "[d]ental services determined by a Dentist to be medically necessary and generally applies to prisoners with facial swelling, oral facial trauma, profuse bleeding, or pain that cannot be controlled by mild pain

medication (e.g., Tylenol). These conditions are not likely to cause death or irreparable harm, if not treated immediately." (PD 04.06.150 ¶ B.) The dental protocol further expands on this definition: "Not included under Urgent Dental Services are: fractured restorations, broken dentures, asymptomatic fractured or chipped teeth, and toothaches that are controllable with [over-the-counter] pain medications and analgesics." (BHCS Dental P1 at 2 ¶ C.2.) Prisoner's seeking "Urgent Dental Services" are to file a healthcare request form and "[u]pon receiving knowledge in any manner of a patient's need for Urgent Dental Services, the Urgent Dental needs shall be determined and treatment will be provided as quickly as possible." (*Id.*)

The lowest priority dental services are "Routine Dental Services." (*See* BHCS Dental P1 at 2 ¶ C.2.) Routine Dental Services are "[d]iagnostic, endodontic, restorative, periodontal, prosthetic, and non-urgent oral surgical procedures." (PD 04.06.150 ¶ A.) The dental protocol further explains, "Routine Dental Services include Dental Examinations and Diagnostic processes, non-urgent Oral Surgery procedures, Restorative procedures, Periodontal procedures (including Hygiene procedures), Prosthetic fabrication and related procedures, Endodontic procedures, Dental/Oral health education, and any condition which requires non-Urgent or non-Emergency health care contact with a prisoner (including screening, evaluation, consultation, chronic disease follow-up, and requests for elective treatment arid surgeries)." (BHCS Dental P1 at 2 ¶ C.3.)

**B.**

The first of Plaintiffs' five proposed subclasses is comprised of prisoners affected by a two-year wait to become eligible for Routine Dental Services. In particular, under MDOC's dental operating procedure, "Prisoners are eligible for routine dental services following the completion of twenty-four (24) months of uninterrupted incarceration within a CFA correctional

3

facility. That starting date for the required twenty-four (24) month eligibility period beings on the prisoners [*sic*] first day at the CFA Reception center." (Dkt. 61-3, MDOC Operating Procedure 04.06.150 ¶ I (eff. Nov. 30, 2013); *see also* PD 04.06.150 ¶ L.)

Plaintiff Rogers asserts that he was harmed by MDOC's no-routine-care-within-two-years-of-intake policy. According to the Amended Complaint, in November 2012, Rogers told prison health services that he "was in severe and prolonged pain" and that, having only eight teeth, he was having difficulty breaking down and digesting food. (Am. Compl. ¶ 25.a.) Rogers was told he would see a dentist in December 2012 but that did not happen. (*Id.*) Rogers filed a grievance, and, in its August 2013 response, MDOC told Rogers that he had to wait two years for routine dental treatment because he had recently returned to prison. (*Id.*) As of the filing of the Amended Complaint (February 2015), Rogers had not received any dental treatment. (*Id.*)

Plaintiffs believe that other prisoners have been treated like Rogers as a result of the no-routine-care-within-two-years-of-intake rule. So they seek to certify this subclass of prisoners:

> All prisoners sentenced to the MDOC, and those prisoners so confined to the MDOC but are presently located at local jails, denied and/or delayed dental care due to Defendant Heyns' *written policy of not providing for at least two years after arrival at the prison routine dental care*, including providing needed placement of dentures and/or bridge(s), and/or repair of teeth, that result in needlessly having teeth extracted and/or subject these prisoners to severe and prolonged pain, and/or inability to eat and/or chew foods.

(Dkt. 39, Pls.' Br. in Supp. of Class Cert. at 7 (emphasis added).)

## C.

The second of Plaintiffs' proposed subclasses is based on an MDOC policy pertaining to the provision of Routine Dental Services as a prisoner approaches his or her release date.

MDOC's dental policy directive provides: "routine dental services . . . may be denied to any prisoner who may be released from incarceration (e.g., parole or discharge) within one year."

4

(PD 04.06.150 ¶ L.) Similarly, the operating procedure says, "Prisoners who will be paroled or discharged within one calendar year may be denied routine dental services." (OP 04.06.150 ¶ I.)

Although, at one point, Rogers was informed that he was not eligible for partial dentures unless he had more than 12 months left before his earliest release date (Am. Compl. ¶ 119), it appears that his request for dentures was ultimately denied for a different reason (*see id.* ¶ 129).

Even so, Plaintiffs maintain that there is a large group of prisoners who have been harmed by the maybe-no-routine-care-for-prisoners-who-might-be-released-in-a-year rule and thus seek to certify this subclass:

> All prisoners sentenced to the MDOC, and those prisoners so confined to the MDOC but are presently located at local jails, *who are within one-year of their release[] date[] and are denied dental care due to Defendant Heyns' written policy of not providing routine dental care*, including providing needed placement of dentures and/or bridge(s), and/or repair of teeth, that result in needlessly subjecting these prisoners to severe and prolonged pain, and/or inability to eat and/or chew foods.

(Pls.' Br. in Supp. of Class Cert. at 7–8 (emphasis added).)

### D.

Plaintiffs' third proposed subclass is premised on MDOC's alleged policy of extracting teeth instead of repairing them.

This policy, unlike the two just discussed, is unwritten. The dental protocol does describe the procedures for extraction, but it does not say that extractions should be, as a matter of course, favored over repairs. Instead the protocol for "Routine Extractions" assigns the following duties to a dentist:

> Determines that the tooth is non-restorable or non-treatable under the BHCS Endodontic procedures found on pages 22-23 in this document and based on radiographic evidence and clinical examination. Documents diagnosis and treatment rationale. Performs a Dental extraction or completes the appropriate referral process if:

a. It is determined that a restoration cannot withstand occlusal forces and masticatory lateral forces or the tooth can not be conservatively restored.

b. The pulpal integrity and pulpal health cannot be maintained successfully and comfortably.

c. The tooth is determined to be non-restorable, for any other clinical reason.

d. The tooth is determined to be irreparably compromised by Periodontal disease processes or from traumatic injury.

e. Angular, horizontal, or vertical tooth fractures extending subgingivally or involving the pulp chamber.

(BHCS Dental P1 at 11–12.)

Despite what this protocol says, Plaintiffs have produced a number of affidavits from prisoners in support of their claim of an unwritten policy favoring extraction. For example, a prisoner in MDOC's Lakeland Correctional Facility avers, "In rejecting my request to have my cavity filled, MDOC dental staff informed me they only pull teeth and they do not perform cavity fillings." (Dkt. 38, Amos Aff. at Pg ID 421.) An inmate at MDOC's Baraga Correctional Facility says that a dentist told him "that it would be cheaper to pull [his] teeth than to repair them," and, when he expressed "shock that instead of repairing [his] teeth the dentist wanted to pull them," the dentist said to re-kite for an appointment if he wanted his teeth pulled. (Dkt. 38, Jones Aff. at Pg ID 426.) A prisoner at the Cooper Street Correctional Facility avers, "MDOC dental staff refuses to fill teeth, stating they will only pull them." (Dkt. 38, Moffit Aff. at Pg ID 432.) And one at the G. Robert Cotton Correctional Facility says that a visiting dentist "informed [him] that MDOC dental staff would only pull teeth, not fill them." (Dkt. 38, Ferris Aff. at Pg ID 424.) Moreover, Plaintiff Woroniecki pleads that he "had all of his remaining teeth pulled while confined at the Muskegon Correctional Facility (MCF) by Defendant Sanders pursuant to the

6

policy of Defendant Heyns not to engage in restoration of teeth," and, as of the filing of the Amended Complaint, he is still waiting for dentures. (Am. Compl. ¶¶ 65, 79.)

Plaintiffs believe that the extraction preference conveyed to these prisoners is widespread, and so they seek to represent "all sentenced prisoners who cannot receive repair of teeth and are forced to have these teeth extracted with the promise of dentures, which then takes months if not years to receive these dentures after the teeth have been extracted." (Pls.' Br. in Supp. of Class Cert. at 8.) Plaintiffs propose this subclass:

> All prisoners sentenced to the MDOC, and those prisoners so confined to the MDOC but are presently located at local jails, *whose teeth are in the need of repairs but are only provided the option of extraction of teeth*, which subject these prisoners needlessly [to] severe and prolonged pain, and inability to eat and/or chew foods.

(Pls.' Br. in Supp. of Class Cert. at 8 (emphasis added).)

## E.

The fourth of Plaintiffs' five proposed subclasses centers on MDOC's provision of dentures.

In addition to classifying "Dental Prosthetic Services" (which includes the provision of dentures) as a Routine Dental Service, the dental protocol provides that "Removable Prosthetics are provided no more than once within a five-year period; unless a patient's Dental Prosthetics are damaged or lost as a result of a documented custody action. After a five-year period, Dental Prosthetics may be evaluated for adequacy, at the prisoner's request, but are not automatically replaced." (BHCS Dental P1 at 18 at ¶ D.) Regarding "damaged or lost" prosthetics, the next paragraph of the protocol states, "When a patient's Dental Prosthetics are damaged or lost and the Dental Prosthetics are determined to be medically necessary for a patient, the Prosthetic

appliances may be replaced or repaired per the professional clinical judgment of the Dentist." (BHCS Dental P1 at 18 at ¶ E.)

Plaintiffs Woroniecki and Turner say they have been harmed by these policies on dental prosthetics. Woroniecki says he was put on a wait list for denture impressions after having his teeth pulled. (Am. Compl. ¶ 25.b.) But, say Plaintiffs, "a month later he was informed that he was not eligible for new dentures as per the new dental policy requiring a five year waiting period even though his teeth were pulled approximately two months before the new policy was implemented." (*Id.*) The delay allegedly "subjected Woroniecki to severe and prolonged pain and not being able to properly consume food." (*Id.*) Plaintiff Turner says that his dentures were lost or stolen during a shakedown, and when he filed a grievance, he was informed that he would have to wait five years for new dentures. (*Id.*) According to the Amended Complaint, "Turner is presently suffering severe and prolonged pain and the inability to consume the caloric intake required so that he does not suffer hunger pain." (*Id.*)

Plaintiffs maintain that other prisoners are harmed by the wait-five-years-for-new-dentures rule. So they seek to certify the following subclass:

> All prisoners sentenced to the MDOC, and those prisoners so confined to the MDOC but are presently located at local jails, *who had received dentures or bridge(s) in the past from MDOC's dental staff and such dentures and/or bridge(s) have worn out, broken or were lost and replacement of such dentures were denied based on a written policy of Defendant Heyns*, which result in needlessly subjecting these prisoners to severe and prolonged pain and the failure to consume the meals provided to these prisoners, resulting in weight loss, and/or inability to chew foods and/or eat.

(Pls.' Br. in Supp. of Class Cert. at 9 (emphasis added).)

## F.

Like the alleged tooth-extraction policy, Plaintiffs fifth proposed subclass is based on an unwritten MDOC policy. In particular, Plaintiffs maintain that MDOC has a practice of "delayed

making of and delivery of dentures and/or bridge(s)." (*See* Pls.' Br. in Supp. of Class Cert. at 9.) Plaintiffs aver that "[e]ven when prisoners have been approved for dentures it can take[] months if not years for [their] production" despite that "The Dental Association" recommends completion of dentures in eight to twelve weeks. (Am. Compl. ¶ 25 c.)

Plaintiff Stephenson believes that he was subjected to this unwritten policy of delayed delivery of dentures. He asserts that an impression for a replacement denture was taken in July 2013, but despite kites to address the delay in receiving his dentures, he did not receive them until June 2014. (Am. Compl. ¶¶ 106–112.)

Plaintiffs believe that others have been subjected to unreasonable delays in the making and delivery of dentures and so they seek to certify this subclass:

> All prisoners sentenced to the MDOC, and those prisoners still confined to the MDOC, but are presently located at local jails, *that have been incarcerated more than two years and are not within one-year of release, who have lost natural teeth and require placement and delivery of dentures and/or bridge(s)* to provide for maintaining dietary health, maintaining proper occlusion of the prisoners' jaws, and allowing the prisoners to chew foods and/or eat.

(Pls.' Br. in Supp. of Class Cert. at 10 (emphasis added).)

## G.

Plaintiffs additionally seek certification of one general class covering their five proposed subclasses. Their proposed over-arching class is defined this way:

> All prisoners sentenced to the MDOC, and those prisoners confined to the MDOC but are presently located at local jails, denied and/or delayed dental care and treatment due to a lack of dental staffing that result in these class members needlessly having teeth extracted and are subjected to severe and prolonged pain, and/or inability to eat or chew.

(Pls.' Br. in Supp. of Class Cert. at 6.)

## II.

As mentioned, Defendants have comprehensively objected to Magistrate Judge Majzoub's report and recommendation to  grant Plaintiffs' motion for class certification. (*See* Dkt. 94, Defs.' Objs.; Dkt. 83, Aug. 11, 2015 Report and Recommendation.) Thus, the Court reviews the report *de novo* and accords no deference to the recommendation. *See* 28 U.S.C. § 636(b)(1)(A), (B) (listing "dismiss or to permit maintenance of a class action" as one of the motions requiring "proposed findings of fact and recommendations for the disposition"); Fed. R. Civ. P. 72(b)(3); *Thomas v. Arn*, 474 U.S. 140, 144 (1985).

## III.

### A.

Plaintiffs have the burden of showing that class certification is proper. *Wal-Mart Stores, Inc. v. Dukes*, — U.S. —, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011). To do so, they must convince the Court that their proposed class meets each of the requirements of Federal Rule of Civil Procedure 23(a) and fits one of the types set out in Rule 23(b). The former demands that the class be "so numerous that joinder of all members is impracticable" (numerosity); that there be "questions of law or fact common to the class" (commonality); that Plaintiffs' "claims or defenses" be "typical of the claims or defenses of the class" (typicality); and that Plaintiffs will "fairly and adequately protect the interests of the class" (adequacy). Fed. R. Civ. P. 23(a). Regarding Rule 23(b), Plaintiffs claim their proposed class is of the injunction variety. As such, they must also show that Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

**B.**

Precisely characterizing the legal claims at issue in this case goes a long way to resolving the parties' dispute over commonality and typicality.

If Plaintiffs' claims are characterized as asserting that MDOC's dental policies are unconstitutional on their face, Plaintiffs would be asserting, as one example, that MDOC's policy of denying "Routine Dental Care" to prisoners during their first two years in the Department's system violates the Eighth Amendment even if implemented exactly as written. And, assuming Plaintiffs are adequate representatives (more on this below), the claims would be likely suitable for class adjudication. This is because MDOC's dental policies (the written ones at least) apply to all 43,000 prisoners in MDOC's system such that numerosity would be easily satisfied. As for typicality and commonality, if the legal claims in this case are merely challenges to the constitutionality of MDOC's dental policies in the abstract, there would be *no* difference between any class member's claims and thus a victory or defeat for any member would at once dispose of all others' claims in the same way. This is the essence of commonality and typicality. *See Wal-Mart*, 131 S. Ct. at 2551 & n.5. Thus, if Plaintiffs' claims are characterized as asserting that MDOC's dental policies are unconstitutional on their face, the only Rule 23 requirement warranting substantial analysis would be whether Plaintiffs and class counsel would adequately represent the class.

But if Plaintiffs' legal claims are that each of the 43,000 prisoners in MDOC's system has received discretionary dental care so inadequate that his or her Eighth Amendment rights were violated, it would be difficult to imagine that class adjudication would be proper. The class would undoubtedly represent a plethora of dental needs, the treatment of which would have turned on various assessments of those needs. In other words, the claims would amount to 43,000

11

factually-distinct lawsuits with the only common link being discretionary decisions allegedly amounting to Eighth Amendment violations. The Supreme Court has advised that bundling such suits together neither forwards the efficiency aims of a class action nor meets the requirements of Rule 23. *See Wal-Mart*, 131 S. Ct. at 2551, 2253 ("Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury . . . gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. . . . The whole point of permitting discretionary decisionmaking is to avoid evaluating employees under a common standard.").

Defendants' position is that this second characterization applies. Throughout their objections, Defendants repeatedly stress that the claims of the Amended Complaint require the Court resolve innumerable individualized disputes. (*See* Defs.' Objs. at 5–7, 9, 10–13, 19, 21–22.) For example, Defendants assert, "In proving the objective component of deliberate indifference, Plaintiffs will have to show the care that was or was not delivered in each instance, the seriousness of the condition, Defendants' knowledge, how the policy was applied, and the discretionary decisions made by individual dentists." (Defs.' Objs. at 5.) Similarly: "because the policies and procedures are designed to ferret out and give immediate or expedited consideration to serious dental needs, this Court will necessarily have to look at each plan, review each prisoner's dental records, evaluate each dentist's course of action, review relevant medical records based on allegations of inability to obtain proper caloric intake, review administrative records to determine whether a soft diet was sought and denied, and determine whether the policy's triage is systemically inadequate." (Defs.' Objs. at 22.)

12

The Court disagrees with Defendants: the claims at issue fall closer to the first characterization. The Amended Complaint states, "Plaintiffs intend to proceed, pursuant to Fed. R. Civ. P. 23, on behalf of all other persons similarly situated in obtaining an injunction against Defendant Director Heyns and the MDOC's present policies and/or practices of denying and delaying dental care." (Am. Compl. ¶ 12.) Plaintiffs' brief in support of class certification is equally explicit about challenging MDOC's dental-care policies: "Defendant Heyns, sued in his official capacity, violated the plaintiffs' Eighth Amendment rights by implementing practices and/or policies that create a substantial risk of serious harm to Plaintiffs and failing to act reasonably to address that risk." (Pls.' Br. in Supp. of Class Cert. at 1.) And in responding to Defendants' objections, Plaintiffs again emphasize policies: "Each of the Plaintiffs' asserted subclasses corresponds with a system-wide policy, promulgated by Defendant Washington, preventing inmates from obtaining adequate dental care. In a motion for class certification, the Plaintiffs do not seek to prove, nor are they required to, the merits of any particular inmate's individual claim for unconstitutional denial of dental care." (Dkt. 100, Pls.' Resp. to Defs.' Objs. at 9.)

Because, at least to some extent, Plaintiffs intend to challenge MDOC's generally-applicable dental-care policies, Plaintiffs' proposed class and subclasses fall closer to a facial challenge to MDOC's dental policies and procedures than to a series of individualized Eighth Amendment claims.

## C.

But how close? In support of their objections to the report and recommendation, Defendants argue that if MDOC's dental "policies are being uniformly applied, they are not

facially violative of the deliberate indifference standard . . . . These policies are unconstitutional only if they are *not* being uniformly applied." (Defs.' Reply to Pls.' Resp. to Objs. at 1.)

This is a fair point. For example, on its face the no-routine-care-within-two-years-of-intake rule excludes all Urgent Dental Services (and Emergency Dental Services). And as explained, although Urgent Dental Services are only those deemed by a dentist "to be medically necessary," "generally" that includes "pain that cannot be controlled by mild pain medication (e.g., Tylenol)." (PD  04.06.150  ¶ B.) Further, MDOC promises that "[u]pon receiving knowledge in any manner of a patient's need for Urgent Dental Services, the Urgent Dental needs shall be determined and treatment will be provided as quickly as possible." (BHCS Dental P1 at 2 ¶ C.2.) It is far from apparent that these rules, if carried out in the manner written, expose MDOC prisoners to a substantial risk of serious harm.

So it must be that Plaintiffs seek to challenge not only MDOC's dental policies in the abstract, but also how they are being implemented in MDOC's prisons. Indeed, in their brief in support of class certification, Plaintiffs argued, "[t]he main class claim is the failure to hire sufficient dental staff that results in . . . systemic deficiencies in providing of dental care to the prison population." (Pls.' Br. in Supp. of Class Cert. at 21.)[1]

Yet for Plaintiffs to assert as-applied claims that stay far enough away from the second characterization set out above, Plaintiffs must offer sufficient *proof* of something *systemic*. As to proof, the Sixth Circuit has said that district courts are not to simply accept as true allegations made in support of satisfying of Rule 23: "[T]he district court took plaintiff's allegations 'as

---

[1]  If Plaintiffs seek only to challenge MDOC's polices in the abstract, the Court questions why *Defendants* would not want class certification. Defendants have taken the position that, as written, the dental polices are plainly not unconstitutional. Yet, without class certification, success on that assertion would presumably not preclude any other prisoner from later making an identical challenge.

true' and resolved doubts 'in the plaintiff's favor' while conducting what it called '[a] limited factual inquiry into the class allegations, including the deposition of the named plaintiff.' This standard is clearly wrong. A 'limited factual inquiry' assuming plaintiff's allegations to be true does not constitute the required 'rigorous analysis' we have repeatedly emphasized." *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 417 (6th Cir. 2012) (internal citation omitted); *see also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012) ("Meeting the requirements of Rule 23(a) requires something more than mere repetition of the rule's language; there must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled. Ordinarily, this means the class determination should be predicated on evidence the parties present concerning the maintainability of the class action. *Dukes* verified that the district court should not merely presume that the plaintiffs' allegations in the complaint are true for the purposes of class motion without resolving factual and legal issues." (internal quotation marks and citation omitted)).

As to systemic, the case need not devolve into thousands of individual law suits. Plaintiffs might, for example, produce expert reports, showing that across the MDOC system dentists regularly fail to care for prisoners' urgent dental needs during the first two years following the prisoners' intake. *Cf. Parsons v. Ryan*, 754 F.3d 657, 683 (9th Cir. 2014) (finding that "materials that [the plaintiffs] submitted to the district court—which included four thorough and unrebutted expert reports, the detailed allegations in the 74-page complaint, hundreds of internal [Arizona Department of Corrections] documents, and declarations by the named plaintiffs—constituted more than sufficient evidence at this stage in the litigation of the existence of the statewide ADC policies and practices that allegedly expose all members of the putative class to a substantial risk of serious harm.").

With regard to proof of something systemic, the Court finds that the magistrate judge relied too heavily on the allegations of the Amended Complaint. (*See* Aug. 11, 2015 Report and Recommendation at 2–5.) Plaintiffs attached to their motion for class certification affidavits from a number of prisoners as well as a number of grievance responses suggesting an unconstitutional implementation of MDOC's written dental polices or unconstitutional unwritten policies (*see* Dkt. 38, Pls.' Mot. for Class Cert. Exs. 3, 4), but this evidence (much of which appears to be inadmissible hearsay) is nowhere mentioned in the report and recommendation.

More importantly, Plaintiffs' brief in support of class certification merely references their affidavits and grievances in a single sentence. (*See* Br. in Supp. of Mot. for Class Cert. at 5–6.) Indeed, even in responding to Defendants' objections to the report and recommendation, Plaintiffs seem to misunderstand their burden of proof: "a prospective class action plaintiff must provide facts *showing that the complaint is plausible on its face* and based on more than mere speculation." (Pls.' Resp. to Defs.' Objs. at 4 (emphasis added).) Given Plaintiffs' failure to marshal sufficient evidence in support of their as-applied claims, the Court finds that Plaintiffs have not yet carried their burden in showing that MDOC has, for example, systemically failed to provide care for serious dental needs during the first two years of incarceration or, as another example, regularly fails to manufacture and deliver dentures in a constitutionally reasonable amount of time.[2]

---

[2] The Court recognizes that there are many pending disputes over discovery in this case. These motions are entrusted to the sound judgment of the magistrate judge. This Court simply notes that Plaintiffs are entitled to discovery that would enable them to obtain the evidence they need to satisfy Rule 23's requirements, i.e., Plaintiffs should have some leeway to gather evidence showing, for example, that despite what MDOC's written policies say, they are systemically applied in an unconstitutional manner. *See* Manual for Complex Litigation § 21.14, 2004 WL 258787, at *1 (4th ed.) ("Discovery may not be necessary when claims for relief rest on readily available and undisputed facts or raise only issues of law (such as a challenge to the legality of a statute or regulation). Some discovery may be necessary, however, when the facts

**D.**

The Court declines to now certify Plaintiffs' proposed class and subclasses for a second reason: Plaintiffs may not be adequate class representatives and their claims may be atypical of those they seek to represent.

As noted in Defendants' objections, it is far from clear that Plaintiffs have exhausted the legal claims they seek to pursue, which, under the Prison Litigation Reform Act, is a bar to federal court relief. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). True, Plaintiffs have no burden to plead exhaustion, but, in this case, Defendants have raised the issue. In particular, they have filed a motion seeking leave to file more than one summary-judgment motion, *see* E.D. Mich. LR 7.1(b)(2), and attached to their request a brief arguing that each of the named Plaintiffs' claims are unexhausted. (Dkt. 61, Defs.' Mot. for Leave Ex. 4, Defs.' Proposed Mot. for Summ. J.) Although the Court does not yet opine on whether Defendants will be able to carry their considerable summary-judgment burden of showing non-exhaustion, *see Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012), it will say that Defendants have raised non-trivial concerns about exhaustion. As such, it is preferable to

---

relevant to any of the certification requirements are disputed (see sections 21.141 and 21.142), or when the opposing party contends that proof of the claims or defenses unavoidably raises individual issues."). Plaintiffs may be able to obtain some of the information they need outside of the formal discovery process.

Additionally, the Court also takes this opportunity to remind counsel that the District's civility principles are found here: https://www.mied.uscourts.gov/PDFFIles/08-AO-009.pdf. (*Compare* Dkt. 46 at PgID 621 ("[Plaintiffs'] counsel Manville has litigated hundreds of cases over twenty years against prison staff. In all of these litigations, not once has an attorney from the Corrections Division of the Attorney General's Office filed a motion accusing Counsel Manville of engaging in abusive discovery"); *with* Dkt. 67 at PgID 1332 ("Plaintiffs' counsel . . . seems inclined to cast serious aspersions without factual basis, such as the accusation that Defendants destroyed evidence because MDOC's software/procedures do not gather, report or retain information in the form that Plaintiffs' counsel demands should be compiled, reported or retained."). The tone and tenor of the briefing on both sides is not helpful or productive.

deal with those concerns before certifying a class. Otherwise the Court risks certifying a class only to later find that the claims of all six of the class representatives must be dismissed, and, therefore, their claims are atypical and they are inadequate class representatives.

Relatedly, Defendants have filed a motion to dismiss asserting that two proposed class representatives, Evans and Rogers, are no longer in prison and, therefore, their claims are moot. (*See generally* Dkt. 77, Defs.' Mot. to Dismiss Evans and Rogers.) In response, "Plaintiffs concede that if the complaint contained only allegations relating to the named plaintiffs, and did not contain a request for class certification, the parole or discharge of any of the named Plaintiffs would likely moot those claims." (Dkt. 82, Pls.' Resp. to Mot. to Dismiss at 8.) But they argue that in deciding their motion for class certification, the proper inquiry is whether this Court can still "consider the factual allegations of Plaintiffs Evans and Rogers" as set out in the Amended Complaint. (*See id.* at 9.) The Court disagrees that the inquiry is so narrow. If Evans' and Rogers' claims are moot, they may have no interest in serving as class representatives. *See Pettrey v. Enter. Title Agency, Inc.*, 584 F.3d 701, 707 (6th Cir. 2009) ("Due to the fact that the plaintiffs have settled and released all of their claims, it appears that they have little, if any, incentive to advocate on behalf of the putative class."); *Reed v. Bowen*, 849 F.2d 1307, 1311 n.4 (10th Cir. 1988) ("A named plaintiff with a mooted claim may be able to satisfy Rule 23 representational requirements. But, there is no guarantee in the absence of intervention, previous certification, or a plaintiff with a live claim that the Fed. R. Civ. P. 23 requirements of adequate representation and economy will be satisfied."). Evans and Rogers should not be appointed as

class representatives if they have no interest in challenging policies that no longer apply to them.[3]

Accordingly, this Court will not decide whether certification is proper until threshold disputes, such as exhaustion and mootness, are resolved. *See* Newberg on Class Actions § 7:8 (5th ed.) ("[T]he emerging trend in the courts appears to be to decide dispositive motions prior to the certification motion. . . . Most courts agree, and Rule 23(c)(1)(A) reflects, that such precertification rulings on threshold dispositive motions are proper, and one study found a substantial rate of precertification rulings on motions to dismiss or for summary judgment.").

**E.**

Lastly, because Defendants have raised the issue in their objections (Defs.' Objs. at 13), the Court comments briefly on one of Rule 23's two implicit requirements, definiteness. *See* Newberg on Class Actions § 3:1 ("Despite the specificity of Rule 23, courts have grafted on to it two additional criteria, often referred to as the 'implicit requirements' of class certification: that the class be 'definite' or 'ascertainable' and that the class representative be a member of the class.").

---

[3] This is a good point to address Defendants' objection that "[t]he R&R sets forth but never analyzes Plaintiffs' five subclasses. . . . Yet analysis of each subclass is necessary as to each requirement and Plaintiffs' asserted 23(b) superiority factor." (Defs.' Objs. at 8.) Defendants' unsupported assertion overstates the law. There are two types of subclasses—conflict and case-management—and Rule 23's certification requirements only apply to subclasses of the conflict variety. *See Casale v. Kelly*, 257 F.R.D. 396, 408–09 (S.D.N.Y. 2009); Newberg on Class Actions § 7:31. Yet Defendants make no developed argument that "two parts of a single class have significantly conflicting interests and cannot be adequately represented by a single representative or counsel," Newberg on Class Actions § 7:31, such that Plaintiffs' proposed subclasses are of the conflict variety. That being said, it may be desirable for Plaintiffs to have at least one representative for each subclass as, for example, a prisoner adversely affected by the wait-five-years-for-new-dentures rule may not have claims typical of those adversely affected by no-routine-care-within-two-years-of-intake rule.

The definiteness requirement protects both plaintiffs and defendants. Plaintiffs "by enabling notice to be provided where necessary and by defining who is entitled to relief" and defendants by "enabling a final judgment that clearly identifies who is bound by it." Newberg on Class Actions § 3:1. "'For a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538–39 (6th Cir. 2012) (quoting Moore's Federal Practice § 23.21[3][a])); *see also Schilling v. Kenton Cnty., Ky.*, No. 10-143-DLB, 2011 WL 293759, at *5 (E.D. Ky. Jan. 27, 2011) ("The class definition should avoid subjective standards such as the plaintiff's state of mind or terms that depend on a merits adjudication. A class definition is therefore too general where it requires the Court to determine whether an individual's constitutional rights have been violated in order to ascertain membership in the class itself."). As Plaintiffs seek to certify a Rule 23(b)(2)-type class, the definiteness requirement is applied somewhat less stringently. *See* Newberg on Class Actions § 3:7 ("Rather than strictly apply, or simply ignore, the definiteness requirement [when dealing with a Rule 23(b)(2) class], some courts have taken a more flexible approach, holding that, as a general matter, less precision is required of class definitions under Rule 23(b)(2) than under Rule 23(b)[(3)], where mandatory notice is required by due process." (internal quotation marks omitted)).

Although the Court makes no final ruling on the definiteness of Plaintiffs' proposed classes, Plaintiffs are urged to reconsider *all* of their class definitions. For instance, Plaintiffs' third proposed subclass states:

> All prisoners sentenced to the MDOC, and those prisoners so confined to the MDOC but are presently located at local jails, whose teeth are in the need of repairs but are only provided the option of extraction of teeth, which subject these

prisoners needlessly [to] severe and prolonged pain, and inability to eat and/or chew foods.

(Dkt. 39, Pls.' Br. in Supp. of Class Cert. at 8.) To take just one part of this definition, it would appear that determining whether a prisoner was subjected to "needlessly severe and prolonged pain" such that he or she is a member of this subclass is the type of state-of-mind inquiry that the definiteness requirement seeks to avoid.[4]

## IV.

For reasons given, the Court DENIES WITHOUT PREJUDICE Plaintiffs' motion for class certification (Dkt. 38) and REJECTS the magistrate judge's Aug. 11, 2015 report and recommendation to grant that motion (Dkt. 83). As for the magistrate judge's related recommendation for Plaintiffs to be granted leave to serve 30 requests for admissions upon class certification (Aug. 11, 2015 Report and Recommendation at 14–15), the Court OVERRULES Plaintiffs' objections to serve 75 such requests (Dkt. 89), DENIES WITHOUT PREJUDICE Plaintiffs' motion for 90 such requests (Dkt. 40), and GRANTS Plaintiffs leave to serve 30 requests for admissions.

SO ORDERED.


s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE


Dated:  September 25, 2015

---

[4] The findings in this opinion and order may also require Plaintiffs to file a second amended complaint to alter both class allegations and definitions. To that end, there appears to be some inconsistency with the subclass defined in paragraph 25.e of the Amended Complaint (Dkt. 37) and the corresponding subclass 2 in Plaintiffs' Brief in Support of Class Certification (Dkt. 39).

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 25, 2015.

<u>s/Jane Johnson</u>
Case Manager to
Honorable Laurie J. Michelson