UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT JOHANNES,
et al.,

    Plaintiffs,                      CIVIL ACTION NO. 14-CV-11691

vs.                                DISTRICT JUDGE LAURIE J. MICHELSON

                                   MAGISTRATE JUDGE MONA K. MAJZOUB

HEIDI WASHINGTON, and
DALTON SANDERS, D.D.S.,

    Defendants.
_____/

**<u>OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR LEAVE TO FILE MORE THAN ONE SUMMARY JUDGMETN MOTION [61]; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR LEAVE TO FILE EXCESS PAGES IN ITS MOTION FOR SUMMARY JUDGMENT [114]; GRANTING PLAINTIFFS' MOTION FOR STATUS CONFERENCE [107]; AND GRANTING IN PART PLAINTIFFS' MOTION TO MODIFY SCHEDULING ORDER [60]</u>**

Plaintiff Robert Johannes, currently a prisoner at the Gus Harrison Correctional Facility in Adrian, Michigan, filed this proposed class action under 42 U.S.C. §§ 1983 and 1988, on behalf of himself and all other similarly situated prisoners, against Defendants Heidi Washington (Director of the Michigan Department of Corrections (MDOC))[1] and Dr. Dalton Sanders (a general dentist in charge of Plaintiff's dental care). Plaintiff Johannes filed an Amended Complaint adding five additional Plaintiffs as proposed class representatives: Michael Woroniecki (incarcerated at the Muskegon Correctional Facility), Phillip Turner (incarcerated at the Chippewa Correctional Facility), Joe Evans (on parole as of June 30, 2015), Roger Stephenson (incarcerated at the

---

[1] Plaintiff originally filed his Complaint against MDOC Director Daniel Heyns, but the Court has substituted Ms. Washington as a Defendant pursuant to Fed. R. Civ. P. 25(d).

1

Muskegon Correctional Facility), and Max Rogers (on parole as of July 8, 2014, but currently in custody in Porter County, Indiana).[2] (Docket no. 37; *see also* docket no. 112 at 2.) Plaintiffs allege that the MDOC has a policy or practice of

> denying dental care, including failure to ensure timeliness and completed required dental treatment to maintain proper occlusion, ability to masticate food and eat, prevent general health problems from malnutrition, prevent loss of teeth, prevent periodontal disease, prevent loss of multiple teeth destroying healthy dentition, provide timely competent restorative treatment, maintain timely prophylaxes schedules to maintain healthy oral cavity heath, prevent unnecessary teeth loss by timely restorative and periodontal treatment, prevent pathologic changes in the jaw joints by timely competent general restorative dentistry.

(Docket no. 1 at 2-3.) Plaintiffs seek injunctive relief requiring Defendants to provide adequate dental care. (*Id.* at 31-32.)

There is currently a litany of Motions pending in this matter:

- Plaintiff's Motion for a Qualified Protective Order to Allow Production of Dental and Medical Records of Class Members to Plaintiffs' Counsel (docket no. 55);

- Plaintiff's Second Motion to Compel (docket no. 57);

- Plaintiff's Motion to Modify Scheduling Order (docket no. 60);

- Defendants' Motion for Leave to File More Than One Summary Judgment Motion, Pursuant to E.D. Mich. L.R. 7.1(B) (docket no. 61);

- Defendants' Motion to Dismiss Plaintiffs Joseph Evans and Max Clinton Rogers and Their Asserted Claims as Moot as Neither Plaintiff is Currently Incarcerated in a MDOC Facility (docket no. 77);

- Defendants' Motion to Strike Plaintiffs' Expert Witnesses (docket no. 79);

- Plaintiffs' Motion to Extend Hours and Days for Depositions of Certain Prison Officials and their Motion for Immediate Consideration thereof (docket no. 86);

---

[2] The Parties have stipulated to the dismissal of Plaintiff Evans's claims, and the undersigned has entered a Report and Recommendation concurrent with this Opinion and Order recommending the dismissal of Plaintiff Rogers's claims.

2

- Plaintiffs' Third Motion to Require Production of Documents for Seventh Through Twelfth Discovery Requests (docket no. 96);

- Plaintiffs' Fourth Motion to Require Production of Documents for Fifteenth and Sixteenth Discovery Requests (docket no. 106);

- Plaintiffs' Motion for Status Conference (docket no. 107); and

- Defendants' Motion for Leave to File Excess Pages in Defendants' Summary Judgment Brief (docket no. 114).

The undersigned has addressed Defendants' Motion to Dismiss (docket no. 77) in a Report and Recommendation filed concurrently with this Opinion and Order. The Court will address Plaintiffs' Motion to Modify Scheduling Order (docket no. 60); Defendants' Motion for Leave to File More Than One Summary Judgment Motion (docket no. 61); Plaintiffs' Motion for Status Conference (docket no. 107); and Defendants' Motion for Leave to File Excess Pages (docket no. 114) herein. As discussed further, *infra*, the Court will reserve ruling on Plaintiffs' other outstanding motions (docket nos. 55, 57, 79, 86. 96, and 106) until the Court has ruled on Defendant's forthcoming Motion for Summary Judgment. The parties have fully briefed the motions decided herein. (*See* docket nos. 66, 67, 68, 73, 111, and 113.) All pretrial matters have been referred to the undersigned for consideration. (Docket no. 15.) The Court dispenses with oral argument pursuant to E.D. Mich. LR 7.1(e). The Motions are now ready for ruling.

## II. Factual Background[3]

Through their Amended Complaint, each Plaintiff sets forth the factual allegations related to his allegedly unconstitutional dental care. Each Plaintiff alleges that Defendants' failure to provide adequate care was a result of deliberate indifference in violation of the Eighth Amendment

---

[3] Although the undersigned has recommended dismissing Plaintiffs Evans and Rogers' claims, their allegations have been included herein because their claims have not yet been dismissed.

3

and that the violation stems from MDOC policy and practice. And they further allege that each Plaintiff represents a class of similarly situated individuals that have been harmed by these polices.

Plaintiff Johannes alleges that from 2008 through the time of the Complaint, he lost several teeth "due to periodontal disease and/or extractions and/or other reasons," that these conditions were caused primarily due to substandard dental care, and that Defendants failed to provide any dentures or bridges (until recently) that would allow him to eat properly; he adds that the dentures he received recently only fill a portion of his mouth and that they fit improperly, so they cut into his gums when he chews. (Docket no. 37 at 13-19.)

Plaintiff Woroniecki alleges that in December of 2013, six months after he arrived at the Muskegon Correctional Facility, he had "all of his remaining teeth pulled . . . pursuant to the policy of Defendant Heyns not to engage in restoration of teeth." (*Id.* at 20.) He was placed on a waiting list for dentures, but before he received them, the MDOC changed its policy so that "prisoners are only eligible for routine dental services after 24 months from the first day of intake." (*Id.* at 21.) Thus, Plaintiff Woroniecki was removed from the waiting list and was told to reapply in June of 2014. Plaintiff went nearly 18 months without his dentures before he could ask for them, and when he did apply, he was told that the "list is not short." (*Id.* at 21-22.) As of February 2, 2015, the date Plaintiffs filed their Amended Complaint, Plaintiff Woroniecki had not received any dentures. (*Id.* at 22.)

Plaintiff Turner alleges that his dentures disappeared during a shakedown of his cell on January 1, 2014. He asked to be placed on the waiting list for dentures, but when prison staff determined that "there [was] no evidence that any [MDOC] staff were responsible for the loss of the . . . dentures," the prison enforced MDOC policy and told him that he would have to wait five

4

years from the time he originally received them (until December of 2016) to have his dentures replaced. He alleges that he has endured prolonged pain while waiting for the dentures. (*Id.* at 23-24.)

Plaintiff Evans alleges that in 2011, his fillings broke, and by February of 2013, the edges were cutting his tongue. On February 15, 2013, dental staff told him that he would be added to the list for fillings. As of February 2, 2015, the date of the Amended Complaint, Plaintiff's fillings had not been repaired. (*Id.* at 24-25.)

Plaintiff Stephenson alleges that in June of 2012, his upper dental plate split in half. He was placed on a waiting list for dentures, and in March of 2013, he was "issued a detail for a soft diet because he could not chew food with his broken upper denture." (*Id.* at 25-26.) In July of 2013, the prison dentist took impressions for a replacement dental plate, but seven months later, in February of 2014, Plaintiff was told that there was an "inadvertent delay in the processing of [his] dentures . . . [, so his] case ha[d] . . . been assigned priority status." (*Id.* at 26.) Plaintiff received his dentures in June of 2014—two years after his dental plate split. (*Id.* at 27.)

Plaintiff Rogers alleges that in November of 2012, he told a prison nurse that he was "in severe, prolonged pain within his mouth, and [that he] had problems with his stomach and with digesting food because he could not masticate his food properly due to having only eight teeth in his mouth." (*Id.* at 27.) He claims that the nurse placed him "near the top of the waiting list" and told him to expect to be called out the next month. (*Id.*) In August of 2013, Plaintiff Rogers learned that he was not eligible for another partial plate for his mouth because he had received one in December of 2008 and because he had less than 12 months left before his earliest possible release date. (*Id.* at 28.) As of April 2014, Plaintiff had not been evaluated, so he filed a

5

n/a

grievance.  (*See id.* at 28-29.)  In response to Step II of his grievance, Plaintiff Rogers was told that he would be provided with treatment because he had no clear parole date but that he would not be given any priority on the treatment list.  (*See id.* at 29.)  As of February 2015, Plaintiff still had not received his dentures.  (*Id.* at 30.)

### III. Procedural History

Plaintiff Johannes filed his Complaint on April 28, 2014.  (Docket no. 1.)  The Court held a scheduling conference on July 10, 2014, and on July 14, 2014, the Court entered a Scheduling Order setting a discovery cutoff date of September 18, 2015 and a dispositive motion cutoff date of November 6, 2015.  (Docket no. 18.)  The Parties started discovery, and Plaintiffs filed their Amended Complaint on February 2, 2015.  (Docket no. 37.)  The next day, Plaintiffs filed their Motion to Certify Class.  (Docket no. 38.)

On August 6, 2015, while Plaintiffs' Motion was outstanding, Defendants filed their instant Motion to Dismiss, arguing that Plaintiffs Joseph Evans and Max Rogers' claims are moot because Evans was released on parole on June 30, 2015, and Rogers had been paroled on July 8, 2014.  (Docket no. 77.)  On August 11, 2015, five days after Defendants filed their instant Motion, the undersigned recommended that the Court grant Plaintiffs' Motion to Certify Class.  (Docket no. 83.)  Judge Laurie J. Michelson rejected the recommendation on Defendants' objections, denying Plaintiffs' Motion without prejudice because Plaintiffs had failed to meet their burden of "showing that the complaint is plausible on its face."  (Docket no. 105 at 16.)  Judge Michelson found that additional discovery may be necessary to determine whether class certification is proper and noted that "Plaintiffs should have some leeway" with regard to "discovery that would enable them to obtain the evidence they need to satisfy Rule 23's

6

requirements." (*Id.* at 16 n.2.) Judge Michelson also noted, though, that it would be prudent for the Court to address any outstanding dispositive issues before granting class certification. (*Id.* at 17-18.)

IV. **Analysis**

    A. **Defendants' Motions for Leave to File More than One Summary Judgment Motion [61] and for Leave to File Excess Pages in Defendants' Summary Judgment Brief [114]**

Defendants' Motions for Leave to File More than One Summary Judgment Motion (docket no. 61) and for Leave to File Excess Pages in Defendants' Summary Judgment Brief (docket no. 114) are interrelated in that they both assert that additional briefing and dispositive motions are necessary to properly adjudicate this matter. The Court agrees.

Through their Motion for Leave to File More than One Summary Judgment Motion, Defendants assert that Plaintiffs have failed to exhaust their administrative remedies and that their claims should be dismissed on these grounds. (Docket no. 61.) Defendants do not make any substantive arguments related to this contention; instead, Defendants ask the Court for leave to file such a Motion with the intention of filing a second motion for summary judgment at a later date. Plaintiffs argue that Defendants seek an advisory opinion because their request is not yet ripe. (Docket no. 66 at 2-3.) Plaintiffs contend that Defendants should file their first motion for summary judgment and then wait until the close of discovery to ask for permission to file a second motion. (*Id.*)

Defendants do not seek an advisory opinion; Defendants are specifically asking for leave to file two motions for summary judgment pursuant to E.D. Mich. L.R. 7.1(b): one now and one at the close of discovery. The Court acknowledges that if Defendants request were denied or if

7

Defendants were forced to move forward without an answer to their request, they would wait to file a single motion for summary judgment at the close of discovery. But determining Defendants' motion with regard to Plaintiffs' alleged failure to exhaust administrative remedies is prudent for both Parties and for the Court. If Defendants' motion is granted, the Parties can avoid unnecessary discovery costs and the Court can avoid wasting judicial resources deciding discovery matters. And if Defendants' motion is denied, the parties can proceed with that knowledge. Therefore, the Court will grant Defendants' Motion for Leave to File More Than One Summary Judgment Motion.

Likewise, the Court acknowledges the complex nature of this case, the outstanding issues regarding each Plaintiff, the outstanding discovery issues, and the outstanding nature of the class-action certification in this matter. Therefore, the Court will grant Defendants' Motion for Leave to File Excess Pages in its Motion for Summary Judgment.

Additionally, though, due to the current procedural posture of this case, the timing of Defendants' Motions are critical. Defendants attached a copy of their proposed Motion for Summary Judgment to their initial brief. (Docket no. 61-14.) Thus, the Court presumes that Defendants can file their Motion in a timely manner. Therefore, the Court will order Defendants to file their first Motion for Summary Judgment no later than November 13, 2015. The Parties are ordered to follow E.D. Mich. L.R. 7.1(e)(1) with regard to the timing of their Response and Reply briefs. No additional extensions will be given due to the current procedural posture of this matter.

**B.     Plaintiffs' Motions to Modify Scheduling Order [60] and for Status Conference [107] and the Remaining Outstanding Motions**

Plaintiffs' Motions to Modify Scheduling Order (docket no. 60) and for Status Conference (docket no. 107) are interrelated in that Plaintiffs seek to determine the status of this case and plan

accordingly with regard to discovery, motion work, and other schedule-related issues. Through their Motion to Modify Scheduling Order, Plaintiffs cite to the complexity of the outstanding discovery matters in this case and ask that the Court grant an additional nine months to conduct discovery. (Docket no. 60 at 24.) The current Scheduling Order in this matter was entered on July 14, 2014. (Docket no. 18.) In the Order, the Court set the close of discovery for September 18, 2015, and a dispositive-motion cutoff date of November 6, 2015. (*Id.*) The Court agrees with Plaintiff that in light of the outstanding discovery issues and the still-undetermined nature of Plaintiffs' desire for class certification, additional discovery time is necessary. The Court will, therefore, grant Plaintiffs' Motion to Modify Scheduling order in part.

In determining exactly how much time should be given for discovery in this matter, the Court must consider the current procedural posture of this case. Many of the outstanding discovery matters relate to Plaintiffs' desire to certify this matter as a class action. Because Plaintiffs' first attempt to do so was denied without prejudice, the parties are still (essentially) engaging in pre-certification discovery. And the undersigned agrees with Judge Michelson that Plaintiffs should be given leeway to conduct such discovery to determine whether certification is appropriate. On the other hand, any such discovery would be entirely unnecessary if Plaintiffs' claims were dismissed on substantive grounds through Defendants' First Motion for Summary Judgment. Therefore, the Court will reserve ruling on Plaintiffs outstanding discovery motions until the Court has made a determination with regard to Defendants' forthcoming Motion for Summary Judgment.

In light of the Court's determination that Defendants must file their Motion for Summary Judgment no later than November 13, 2015, briefing related to the motion should be completed no

later than December 11, 2015. Therefore, with consideration of the upcoming holiday season, the Court will attempt to address Defendants' motion before January of 2016. The Court will, therefore, also grant Plaintiffs' Motion for a Status Conference and will schedule the same for January 26, 2016, at 9:30 a.m., at which time the Court will meet with counsel to discuss the outstanding discovery motions and determine a mutually acceptable timeline for discovery and entry of a new scheduling order.

### C. The Current Discovery Posture

In her Opinion and Order Denying Without Prejudice Plaintiffs' Motion for Class Certification, Judge Michelson took the time to "remind counsel" of the District Court's civility principles. (Docket no. 105 at 17 n.2.) The undersigned echoes Judge Michelson's sentiment, but also notes the following:

> The discovery system depends absolutely on good faith and common sense from counsel. The courts, sorely pressed by demands to try cases promptly and to rule thoughtfully on potentially case dispositive motions, simply do not have the resources to police closely the operation of the discovery process. The whole system of civil adjudication would be ground to a virtual halt if the courts were forced to intervene in even a modest percentage of discovery transactions. That fact should impose on counsel an acute sense of responsibility about how they handle discovery matters. They should strive to be cooperative, practical and sensible, and should turn to the courts (or take positions that force others to turn to the courts) only in extraordinary situations that implicate truly significant interests.

*In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 330-331, 333 (N.D. Cal. 1985). Additionally, Rule 11 of the Federal Rules of Civil Procedure provides that every pleading and other paper must be signed by at least one attorney of record or by a party if that party is unrepresented. Fed. R. Civ. P. 11(a). Subsection (b) states that by presenting to the court such a pleading or paper, the attorney or pro se party certifies that to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the paper is

not being presented for any improper purpose, such as to harass. Fed. R. Civ. P. 11(b)(1). After reviewing the outstanding discovery motions in this matter, the Court cautions counsel to take care in avoiding unnecessary discovery disputes.

As Judge Michelson also noted, this is neither the first time Plaintiffs' counsel has litigated against the Attorney General's Office (docket no. 105 at 17 n.2), nor is it the first time discovery disputes in these matters have gotten out of hand. Many of the issues in this matter have even been discussed with Counsel in other matters, such as the cost of production for documents from the MDOC. Moreover, Counsel is keenly aware of the issues at hand in this matter. The Court will grant Plaintiffs some leeway in pre-class-certification discovery, but to-date, Plaintiffs' Motion for Class Certification has not been granted. The Parties should proceed under this direction. And while the Court will not address the outstanding discovery motions herein, the Court expects the Parties to discuss these outstanding motions and resolve some of their outstanding issues before the January 26, 2016 Status Conference. As Judge Michelson stated, "The tone and tenor of the briefing on both sides [in this matter] is not helpful or productive." (*Id.*) The Court expects this to change.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Leave to File More than One Motion for Summary Judgment [61] is **GRANTED.** Defendants must file their First Motion for Summary Judgment no later than November 13, 2015.

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to File Excess Pages in its Motion for Summary Judgment [114] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Status Conference [107] is **GRANTED**. Counsel is ordered to appear for a Status Conference at 9:30 a.m. on Tuesday,

January 26, 2016.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Modify Scheduling Order [60] is **GRANTED IN PART**. The Court will enter a new scheduling order following the January 26, 2016 Status Conference.

Pursuant to Fed. R. Civ. P. 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. 636(b)(1).

Dated: November 6, 2015          s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served on counsel of record on this date.

Dated: November 6, 2015          s/Jane Johnson for Lisa C. Bartlett
                                 Case Manager