UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT JOHANNES,
et al.,

    Plaintiffs,                  CIVIL ACTION NO. 14-CV-11691

vs.                              DISTRICT JUDGE LAURIE J. MICHELSON

                               MAGISTRATE JUDGE MONA K. MAJZOUB

HEIDI WASHINGTON, and
DALTON SANDERS, D.D.S.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Robert Johannes, currently a prisoner at the Gus Harrison Correctional Facility in Adrian, Michigan, filed this proposed class action under 42 U.S.C. §§ 1983 and 1988, on behalf of himself and all other similarly situated prisoners, against Defendants Heidi Washington (Director of the Michigan Department of Corrections (MDOC))[1] and Dr. Dalton Sanders (a general dentist in charge of Plaintiff's dental care). Plaintiff Johannes filed an Amended Complaint adding five additional Plaintiffs as proposed class representatives: Michael Woroniecki (incarcerated at the Muskegon Correctional Facility), Phillip Turner (incarcerated at the Chippewa Correctional Facility), Joe Evans (on parole as of June 30, 2015), Roger Stephenson (incarcerated at the Muskegon Correctional Facility), and Max Rogers (on parole as of July 8, 2014, but currently in custody in Porter County, Indiana). (Docket no. 37; *see also* docket no. 112 at 2.) Plaintiffs allege that the MDOC has a policy or practice of

---

[1] Plaintiff originally filed his Complaint against MDOC Director Daniel Heyns, but the Court has substituted Ms. Washington as a Defendant pursuant to Fed. R. Civ. P. 25(d).

1

denying dental care, including failure to ensure timeliness and completed required dental treatment to maintain proper occlusion, ability to masticate food and eat, prevent general health problems from malnutrition, prevent loss of teeth, prevent periodontal disease, prevent loss of multiple teeth destroying healthy dentition, provide timely competent restorative treatment, maintain timely prophylaxes schedules to maintain healthy oral cavity heath, prevent unnecessary teeth loss by timely restorative and periodontal treatment, prevent pathologic changes in the jaw joints by timely competent general restorative dentistry.

(Docket no. 1 at 2-3.) Plaintiffs seek injunctive relief requiring Defendants to provide adequate dental care. (*Id.* at 31-32.)

There is currently a litany of Motions pending in this matter:

- Plaintiff's Motion for a Qualified Protective Order to Allow Production of Dental and Medical Records of Class Members to Plaintiffs' Counsel (docket no. 55);

- Plaintiff's Second Motion to Compel (docket no. 57);

- Plaintiff's Motion to Modify Scheduling Order (docket no. 60);

- Defendants' Motion for Leave to File More Than One Summary Judgment Motion, Pursuant to E.D. Mich. L.R. 7.1(B) (docket no. 61);

- Defendants' Motion to Dismiss Plaintiffs Joseph Evans and Max Clinton Rogers and Their Asserted Claims as Moot as Neither Plaintiff is Currently Incarcerated in a MDOC Facility (docket no. 77);

- Defendants' Motion to Strike Plaintiffs' Expert Witnesses (docket no. 79);

- Plaintiffs' Motion to Extend Hours and Days for Depositions of Certain Prison Officials and their Motion for Immediate Consideration thereof (docket no. 86);

- Plaintiffs' Third Motion to Require Production of Documents for Seventh Through Twelfth Discovery Requests (docket no. 96);

- Plaintiffs' Fourth Motion to Require Production of Documents for Fifteenth and Sixteenth Discovery Requests (docket no. 106);

- Plaintiffs' Motion for Status Conference (docket no. 107); and

- Defendants' Motion for Leave to File Excess Pages in Defendants' Summary Judgment Brief (docket no. 114).

The undersigned will address Defendants' Motion to Dismiss Plaintiffs Joseph Evans and Max Clinton Rogers and Their Asserted Claims as Moot as Neither Plaintiff is Currently Incarcerated in a MDOC Facility (docket no. 77) through this Report and Recommendation.[2] Plaintiffs have filed a Response to Defendants' Motion. (Docket no. 82.) Defendants have filed a Reply (docket no. 87), a Supplemental Brief (docket no. 88), and a Second Supplemental Brief (docket no. 112) related to their Motion. Additionally, the Parties have stipulated to the dismissal of Plaintiff Joe Evans. (Docket no. 110). All pretrial matters have been referred to the undersigned for consideration. (Docket no. 15.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

## I. Recommendation

The undersigned recommends granting Defendants' Motion to Dismiss [77] with regard to Plaintiff Max Rogers's claims in this matter. Additionally, pursuant to the Parties' stipulation, the Court should dismiss Plaintiff Joe Evans's claims against Defendants.

## II. Report

### A. Factual Background

Through their Amended Complaint, each Plaintiff sets forth the factual allegations related to his allegedly unconstitutional dental care. Each Plaintiff alleges that Defendants' failure to provide adequate care was a result of deliberate indifference in violation of the Eighth Amendment and that the violation stems from MDOC policy and practice. And they further allege that each Plaintiff represents a class of similarly situated individuals that have been harmed by these polices.

Plaintiff Johannes alleges that from 2008 through the time of the Complaint, he lost several

---

[2] The Court will address (or reserve ruling on) the other outstanding motions through an Opinion and Order entered concurrently with this Report and Recommendation.

teeth "due to periodontal disease and/or extractions and/or other reasons," that these conditions were caused primarily due to substandard dental care, and that Defendants failed to provide any dentures or bridges (until recently) that would allow him to eat properly; he adds that the dentures he received recently only fill a portion of his mouth and that they fit improperly, so they cut into his gums when he chews. (Docket no. 37 at 13-19.)

Plaintiff Woroniecki alleges that in December of 2013, six months after he arrived at the Muskegon Correctional Facility, he had "all of his remaining teeth pulled . . . pursuant to the policy of Defendant Heyns not to engage in restoration of teeth." (*Id.* at 20.) He was placed on a waiting list for dentures, but before he received them, the MDOC changed its policy so that "prisoners are only eligible for routine dental services after 24 months from the first day of intake." (*Id.* at 21.) Thus, Plaintiff Woroniecki was removed from the waiting list and was told to reapply in June of 2014. Plaintiff went nearly 18 months without his dentures before he could ask for them, and when he did apply, he was told that the "list is not short." (*Id.* at 21-22.) As of February 2, 2015, the date Plaintiffs filed their Amended Complaint, Plaintiff Woroniecki had not received any dentures. (*Id.* at 22.)

Plaintiff Turner alleges that his dentures disappeared during a shakedown of his cell on January 1, 2014. He asked to be placed on the waiting list for dentures, but when prison staff determined that "there [was] no evidence that any [MDOC] staff were responsible for the loss of the . . . dentures," the prison enforced MDOC policy and told him that he would have to wait five years from the time he originally received them (until December of 2016) to have his dentures replaced. He alleges that he has endured prolonged pain while waiting for the dentures. (*Id.* at 23-24.)

4

Plaintiff Evans alleges that in 2011, his fillings broke, and by February of 2013, the edges were cutting his tongue. On February 15, 2013, dental staff told him that he would be added to the list for fillings. As of February 2, 2015, the date of the Amended Complaint, Plaintiff's fillings had not been repaired. (*Id.* at 24-25.)

Plaintiff Stephenson alleges that in June of 2012, his upper dental plate split in half. He was placed on a waiting list for dentures, and in March of 2013, he was "issued a detail for a soft diet because he could not chew food with his broken upper denture." (*Id.* at 25-26.) In July of 2013, the prison dentist took impressions for a replacement dental plate, but seven months later, in February of 2014, Plaintiff was told that there was an "inadvertent delay in the processing of [his] dentures . . . [, so his] case ha[d] . . . been assigned priority status." (*Id.* at 26.) Plaintiff received his dentures in June of 2014—two years after his dental plate split. (*Id.* at 27.)

Plaintiff Rogers alleges that in November of 2012, he told a prison nurse that he was "in severe, prolonged pain within his mouth, and [that he] had problems with his stomach and with digesting food because he could not masticate his food properly due to having only eight teeth in his mouth." (*Id.* at 27.) He claims that the nurse placed him "near the top of the waiting list" and told him to expect to be called out the next month. (*Id.*) In August of 2013, Plaintiff Rogers learned that he was not eligible for another partial plate for his mouth because he had received one in December of 2008 and because he had less than 12 months left before his earliest possible release date. (*Id.* at 28.) As of April 2014, Plaintiff had not been evaluated, so he filed a grievance. (*See id.* at 28-29.) In response to Step II of his grievance, Plaintiff Rogers was told that he would be provided with treatment because he had no clear parole date but that he would not be given any priority on the treatment list. (*See id.* at 29.) As of February 2015, Plaintiff still had

5

not received his dentures. (*Id.* at 30.)

### B. Procedural History

Plaintiff Johannes filed his Complaint on April 28, 2014. (Docket no. 1.) The Court held a scheduling conference on July 10, 2014, and on July 14, 2014, the Court entered a Scheduling Order setting a discovery cutoff date of September 18, 2015 and a dispositive motion cutoff date of November 6, 2015. (Docket no. 18.) The Parties started discovery, and Plaintiffs filed their Amended Complaint on February 2, 2015. (Docket no. 37.) The next day, Plaintiffs filed their Motion to Certify Class. (Docket no. 38.)

On August 6, 2015, while Plaintiffs' Motion was outstanding, Defendants filed their instant Motion to Dismiss, arguing that Plaintiffs Joseph Evans and Max Rogers' claims are moot because Evans was released on parole on June 30, 2015, and Rogers had been paroled on July 8, 2014. (Docket no. 77.) On August 11, 2015, five days after Defendants filed their instant Motion, the undersigned recommended that the Court grant Plaintiffs' Motion to Certify Class. (Docket no. 83.) Judge Laurie J. Michelson rejected the recommendation on Defendants' objections, denying Plaintiffs' Motion without prejudice because Plaintiffs had failed to meet their burden of "showing that the complaint is plausible on its face." (Docket no. 105 at 16.) Judge Michelson noted that additional discovery may be necessary to determine whether class certification is proper but also two substantive concerns raised by Defendants: (1) whether Plaintiffs had exhausted their administrative remedies under the Prison Litigation Reform Act; and (2) whether Defendants Evans and Rogers would be appropriate class representatives if their claims were moot. (*Id.* at 16 n.2, 17-18.) Thus, Judge Michelson found that it would be prudent for the Court to address these potentially dispositive issues before granting class certification.

6

This Report and Recommendation addresses the latter of these two issues on Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1), (b)(6), and (c).[3]  (Docket no. 77 at 2.)

## C. Governing Law

When a defendant challenges jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction to survive the motion. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). But "a plaintiff's burden to prove federal question subject matter jurisdiction is not onerous." *Metro Hydroelec. Co., LLC v. Metro Parks*, 541 F.3d 605, 610 (2008) (quoting *Kokkonen v. Guardian Life Ins. Co. Of Am.*, 511 U.S. 375, 377 (1994)). A plaintiff must "show that the complaint alleges a claim under federal law and that the claim is substantial." *Michigan Souther R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002) (internal quotation marks and citations omitted). "A federal claim is substantial unless prior decisions inescapably render [it] frivolous." *Metro Hydroelec.*, 541 F.3d at 610 (quotation marks and citation omitted, insertion in original.)  A plaintiff can survive the motion to dismiss by showing "any arguable basis in law for the claims set forth in the complaint." *Id.* (internal quotation marks and citations omitted). If the Court decides that it lacks subject matter jurisdiction, it must dismiss the case. Fed.R.Civ.P. 12(h)(3).

Rule 12(b)(1) motions fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

> A facial attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the [complaint] as true and construed in the light most favorable to the nonmoving party.

---

[3] In the Opinion and Order entered concurrently with this Report and Recommendation, the Court will grant Defendants' Motion for Leave to File More Than One Motion for Summary Judgment so that Defendants can promptly file their proposed Motion for Summary Judgment with regard to the former issue.

> A factual attack . . . is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.

*Id.* (emphases and citations removed).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. The court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); Inge v. Rock Fin. Corp., 281 F.3d 613, 619 (6th Cir. 2002). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted); *see also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

This acceptance of factual allegations as true, however, is inapplicable to legal conclusions: "Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotations and citations omitted). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

"Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* To make this determination, a court may apply the following two-part test: (1) "identify pleadings

8

that, because they are no more than conclusions, are not entitled to the assumption of truth;" and (2) "assume the veracity [of the remaining allegations] and determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

When a defendant challenges a plaintiff's complaint under Rule 12(b)(1) and Rule 12(b)(6), the court should first consider the 12(b)(1) motion because challenges brought pursuant to 12(b)(6) become moot if the court lacks subject matter jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.1990).

**D. Analysis**

Defendants argue that Plaintiff Rogers's claims should be dismissed because Rogers is no longer incarcerated with the MDOC.[4] (Docket no. 77 at 10-14.) Plaintiff implicitly (and rightfully) concedes that if Rogers's claim were filed in his capacity as an individual plaintiff, dismissal for mootness would be appropriate. A prisoner's claims for declaratory or prospective injunctive relief become moot once the prisoner is no longer incarcerated at the facility in question. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 510 n.1 (6th Cir. 2001). Thus, when a prisoner is no longer incarcerated with the MDOC, his claims for prospective injunctive relief against the MDOC are moot. *See Howard v. Whitbeck*, 212 F. App'x 421, 424 (6th Cir. 2007) (finding a paroled prisoner's claims moot where his requested injunction "would not make a difference to [his] current legal interests"). Rogers was released on parole from MDOC custody on July 8, 2014, nearly seven months before he was added as a Plaintiff in Plaintiffs' Amended Complaint. Therefore, as an individual plaintiff, his claims are moot.

Nevertheless, Plaintiff asserts that the Court should not consider Rogers's claims in such a

---

[4] As noted, the Parties have stipulated to the dismissal of Plaintiff Evans's claims. (*See* docket no. 110.)

straight-forward context. Plaintiff argues that the Court can still consider Rogers's claims under the *Sosna* exception to the mootness doctrine. Judge Michelson recently addressed this exception in great detail:

> . . . Some case law suggests that when the named plaintiffs' claims become moot prior to class certification, the entire action is moot: "[A putative class action] ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved." *Cruz v. Farquharson*, 252 F.3d 530, 533 (1st Cir.2001); accord *Tucker v. Phyfer*, 819 F.2d 1030, 1033 (11th Cir.1987) ("In a class action, the claim of the named plaintiff, who seeks to represent the class, must be live both at the time he brings suit and when the district court determines whether to certify the putative class."); *Inmates of Lincoln Intake & Det. Facility by Windes v. Boosalis*, 705 F.2d 1021, 1023 (8th Cir.1983) ("A named plaintiff must have a personal stake in the outcome of the case at the time the district court rules on class certification in order to prevent mootness of the action."). Indeed, in *Brunet v. City of Columbus*, 1 F.3d 390 (6th Cir.1993), our Court of Appeals stated:
>
>> Once a class is certified, the mooting of the named plaintiff's claim does not moot the action, the court continues to have jurisdiction to hear the merits of the action if a controversy between any class member and the defendant exists. Where, on the other hand, the named plaintiff's claim becomes moot before certification, dismissal of the action is required.
>
> *Brunet*, 1 F.3d at 399 (internal citation omitted). The logic behind this rule is that absent class certification, the proposed class is still only proposed, and, therefore, the mooting of all the named plaintiffs' claims is no different than the mooting of a plaintiff's claims in a non-classaction lawsuit. *See Cruz*, 252 F.3d at 534 ("Only when a class is certified does the class acquire a legal status independent of the interest asserted by the named plaintiffs. . . .").
>
> But in accepting this logic, the Sixth Circuit also recognized that "special mootness rules exist for class actions." *Brunet*, 1 F.3d at 399. Especially relevant here is the rule derived from the relevant case law that if a defendant has unilaterally mooted the named plaintiffs' claims while their motion for class certification is pending, and has mooted the claims of those that seek to intervene and serve as surrogate representatives, and there are still other proposed class members willing to serve as surrogates, the case is not moot.
>
> The seeds of this rule are found in *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Sosna had filed suit on behalf of herself and a class of individuals challenging as unconstitutional Iowa's oneyear residency requirement

10

for invoking the state's divorce jurisdiction. 419 U.S. at 396–97. The district court had certified the class, but, by the time the Supreme Court could decide Sosna's appeal, she had been an Iowa resident for over a year. *Id.* at 398–99. The Supreme Court observed that if Sosna had merely sued on her own behalf, the fact that she satisfied the one-year residency requirement and had obtained a divorce would require dismissal for mootness. *Id.* at 399. But, the Court explained, "[w]hen the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant." *Id.* Most significant for present purposes is that the Supreme Court noted a possible exception to the rule that there must be a live case or controversy "at the time the class action is certified by the District Court":

> There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review.

*Sosna*, 419 U.S. at 403 n. 11.

*Sosna's* hypothetical exception became a reality in *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Pugh and Henderson had sued Gerstein, the Florida State Attorney, on behalf of a class of pretrial detainees claiming that their detention without a judicial probable-cause determination was unconstitutional. *See* 420 U.S. at 106–07, 111. The record before the Supreme Court, however, did not clearly show that Pugh and Henderson were still pretrial detainees at the time the district court certified the class. *Id.* at 110 n. 11. Although "[s]uch a showing ordinarily would be required to avoid mootness," the Supreme Court applied the exception alluded to in *Sosna*: "The length of pretrial custody cannot be ascertained at the outset, and it may be ended at any time by release on recognizance, dismissal of the charges, or a guilty plea, as well as by acquittal or conviction after trial. It is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class." *Id.* at 110 n. 11.

The Sosna–Gerstein exception was extended in *Susman v. Lincoln Am. Corp*., 587 F.2d 866 (7th Cir.1978). There, the district court had dismissed as moot two suits (consolidated as *Susman* on appeal) because the defendants had offered the named plaintiffs in both cases all that they could have recovered. *Id.* at 868. The lower court's dismissals were despite that the plaintiffs had refused the offers and that there were pending motions for class certification at the time of dismissal. *Id.* The Seventh Circuit acknowledged that at the "critical moment" when the named

11

plaintiffs' claims became moot, the district court had not certified the proposed classes. *Id.* at 869. Nonetheless, said the Seventh Circuit, "Courts have consistently recognized that unnamed class members have an interest in a lawsuit even before a Rule 23 determination is made that a class action may be maintained on their behalf." *Id.* While recognizing that *Gerstein* had only applied the relation-back exception "where the underlying factual situation naturally changes so rapidly that the courts cannot keep up," the Seventh Circuit provided that "necessity compell[ed] a similar result" in the two consolidated cases before it:

> If the class action device is to work, the courts must have a reasonable opportunity to consider and decide a motion for certification. If a tender made to the individual plaintiff while the motion for certification is pending could prevent the courts from ever reaching the class action issues, that opportunity is at the mercy of a defendant, even in cases where a class action would be most clearly appropriate.

*Susman*, 587 F.2d at 870. The Court thus held, "when a motion for class certification has been pursued with reasonable diligence and is then pending before the district court, a case does not become moot merely because of the tender to the named plaintiffs of their individual money damages." *Id.* at 870; *see also Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091 (9th Cir.2011) ("[W]e see no reason to restrict application of the relation-back doctrine only to cases involving inherently transitory claims. Where, as here, a defendant seeks to 'buy off' the small individual claims of the named plaintiffs, the analogous claims of the class-though not inherently transitory—become no less transitory than inherently transitory claims."); *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1249 (10th Cir.2011) ("[W]e conclude that a nascent interest attaches to the proposed class upon the filing of a class complaint such that a rejected offer of judgment for statutory damages and costs made to a named plaintiff does not render the [class action] moot under Article III"); *Weiss v. Regal Collections*, 385 F.3d 337, 347 (3d Cir.2004) ("Although Weiss's claims here are not inherently transitory as a result of being time sensitive, they are acutely susceptible to mootness in light of defendants' tactic of picking off lead plaintiffs with a Rule 68 offer to avoid a class action." (citation omitted) (internal quotation marks omitted)); *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030 (5th Cir.1981) (reasoning that even though the named plaintiffs had not presented claims that by their very nature were so transitory that a court could not timely decide class certification, "the result should be no different when the defendants have the ability by tender to each named plaintiff effectively to prevent any plaintiff in the class from procuring a decision on class certification.").

The Sixth Circuit, although not explicitly saying so, has applied the relation-back exception while also clarifying its holding in *Brunet*. In *Carroll v. United Compucred Collections*, Inc., 399 F.3d 620 (6th Cir.2005), the defendants mooted

12

the named plaintiffs' claims through a Federal Rule of Civil Procedure 68 offer of judgment while a magistrate judge's recommendation to certify the class was pending review. *Id.* at 625. The Court held that the case was not moot despite that a class had not yet been certified by the district judge. *Id.* In so holding, the Sixth Circuit clarified the scope of its earlier decision in Brunet:

> Despite [stating that "where the named plaintiff's claim becomes moot before certification, dismissal of the action is required"], the *Brunet* court in fact distinguished between cases that are settled before a motion for class certification is filed and cases where a settlement offer is made to a named plaintiff while a motion for class certification is pending. . . . Although *Brunet* did not involve a Rule 68 offer of judgment or the [Fair Debt Collection Practices Act], the court suggested that it would be inappropriate to hold that a case was mooted by a settlement offer made to a named plaintiff when a motion for class certification was pending.

*Carroll*, 399 F.3d at 625.

And in *Blankenship v. Secretary of Health, Education and Welfare*, 587 F.2d 329 (6th Cir.1978), the Sixth Circuit applied similar reasoning in a case where, as here, the named plaintiffs did not seek relief that the defendant could satisfy via a monetary payment. In *Blankenship*, the named plaintiffs sought to represent a class of individuals who experienced delays in obtaining a Social Security disability hearing. *Id.* at 331. But prior to the district court's certification of the class, "[a]ll of the named plaintiffs [had] received disability hearings." *Id.* at 332–33. The Sixth Circuit acknowledged that "the named plaintiffs can no longer complain that they have failed to receive a hearing, and any court-ordered relief to accelerate hearing procedures would have no effect on them." *Id.* at 333. Still, their claims "epitomize[d] the type of claim which continually evades review if it is declared moot merely because the defendants have voluntarily ceased the illegal practice complained of in the particular instance." *Id.* The Sixth Circuit noted that the defendants had the ability to "expedite processing for any plaintiffs named in a suit while continuing to allow long delays with respect to all other applicants," and so the "refusal to consider a class-wide remedy merely because individual class members no longer need relief would mean that no remedy could ever be provided for continuing abuses." *Id.* As such, "the class members retain[ed] a live interest in this case so that the class action should not be declared moot," and the class certification related back to the date of the filing of the complaint. *Id.* (citing *Sosna*, 419 U.S. at 402 n. 11); *see also White v. Mathews*, 559 F.2d 852, 857 (2d Cir.1977) (finding that class action seeking hearings before an administrative law judge was not moot despite that named plaintiff had received such a hearing prior to class certification; reasoning that if the certification decision did not relate back to before the named plaintiff's claim became moot, "the [Social Security Administration] could avoid judicial scrutiny of its procedures by the simple expedient of granting

13

hearings to plaintiffs who seek, but have not yet obtained, class certification").

*Dozier v. Haveman*, No. 14-12455, 2014 WL 5483008, at *9-12 (E.D. Mich. Oct. 29, 2014).

Plaintiffs argue that "[b]ased on case law, at the time of the filing of the amended complaint, this Court was not precluded from consider (sic) the factual allegations of Plaintiffs Evans and Rogers' claims in deciding the class certification motion." (Docket no. 82 at 5.) But Plaintiffs' argument fails to account for one key distinction: the Sixth Circuit's extensions of the *Sosna* exception allows claims to proceed despite mootness where the plaintiff's claims become moot prior to filing of the class certification motion, but Rogers's claims were moot before Plaintiffs filed their Amended Complaint. This distinction is critical because the premise underlying the *Sosna* exception is the idea that a defendant should not be able to avoid a class-action claim by unilaterally rendering the individual plaintiffs' claims moot. But attempting to uphold this principle is futile where the plaintiff's claims are moot before the complaint is even filed. Therefore, the *Sosna* exception does not apply; Plaintiff Rogers's claims are moot.[5]

Plaintiffs attempt to cure this deficiency by arguing that Rogers is facing custody in Indiana and that as a parolee, he is "extremely likely to be returned to the MDOC as a parole violator" after being prosecuted in Indiana. (*See* docket no. 82 at 7-8, n.4.) In support of this argument, Plaintiffs rely on *Hernandez v. County of Monterey*:

> An exception to the general rules regarding standing pertains to past inmates under supervision. When a past inmate remains supervised by law enforcement and subject to unlawful conditions without engaging in illegal activity, that plaintiff maintains standing with regard to the unlawful policies or conditions he or she may confront. The question is whether plaintiffs have "demonstrate[d] a concrete injury and a realistic likelihood that the injury will be repeated." In *Armstrong v. Davis*,

---

[5] Plaintiffs' argument is more persuasive with regard to Plaintiff Evans, who was released on parole on June 30, 2015, but because the Parties have stipulated to the dismissal of Evans's claims, this question is not before the Court.

14

> the Ninth Circuit held California parolees with disabilities could challenge policies and practices in state parole revocation proceedings that violated the ADA and the Rehabilitation Act. The parolees could not be subjected to the discriminatory parole revocation proceedings unless they were arrested and charged with violating the terms and conditions of their parole. Because they could be arrested without a warrant and for violating parole terms that prohibited otherwise legal conduct, parolees did not need to "engage in unlawful conduct to become subject to the unlawful practices they s[ought] to enjoin."

70 F. Supp. 3d 963, 970 (N.D. Cal. 2014) (internal citations omitted). But the *Hernandez* is not Sixth Circuit law, and any such rule would fly squarely in the face of the Sixth Circuit's finding that a paroled prisoner's claims moot where his requested injunction "would not make a difference to [his] current legal interests. *Howard*, 212 F. App'x at 424. Therefore, the Court should not be persuaded by Plaintiffs' argument.

### E. Conclusion

For the reasons stated above, the Court should grant Defendants' Motion to Dismiss [77] with regard to Plaintiff Max Rogers's claims in this matter. Additionally, pursuant to the Parties' stipulation, the Court should dismiss Plaintiff Joe Evans's claims against Defendants.

### III. Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir.

15

1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: November 6, 2015          s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served on counsel of record on this date.

Dated: November 6, 2015          s/ Jane Johson for Lisa C. Bartlett
                                 Case Manager