UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ROBERT JOHANNES,**
**et al.,**

       **Plaintiffs,**                   **CIVIL ACTION NO. 14-CV-11691**

**vs.**                                **DISTRICT JUDGE LAURIE J. MICHELSON**

                                     **MAGISTRATE JUDGE MONA K. MAJZOUB**

**HEIDI WASHINGTON, and**
**DALTON SANDERS, D.D.S.,**

       **Defendants.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Robert Johannes, currently a prisoner at the Gus Harrison Correctional Facility in

Adrian, Michigan, filed this proposed class action under 42 U.S.C. §§ 1983 and 1988, on behalf of

himself and all other similarly situated prisoners, against Defendants Heidi Washington (Director

of the Michigan Department of Corrections (MDOC))[1] and Dr. Dalton Sanders (a general dentist

in charge of Plaintiff's dental care).   Plaintiff Johannes filed an Amended Complaint adding five

additional Plaintiffs as proposed class representatives: Michael Woroniecki (incarcerated at the

Muskegon Correctional Facility), Phillip Turner (incarcerated at the Chippewa Correctional

Facility), Joe Evans (on parole as of June 30, 2015), Roger Stephenson (incarcerated at the

Muskegon Correctional Facility), and Max Rogers (on parole as of July 8, 2014, but currently in

custody in Porter County, Indiana).[2]   (Docket no. 37.)   Plaintiffs allege that the MDOC has a

_____

[1] Plaintiff originally filed his Complaint against MDOC Director Daniel Heyns, but the
Court has substituted Ms. Washington as a Defendant pursuant to Fed. R. Civ. P. 25(d).

[2] The Parties have stipulated to the dismissal of Plaintiff Evans's claims (docket no. 110),

policy or practice of

> denying dental care, including failure to ensure timeliness and completed required dental treatment to maintain proper occlusion, ability to masticate food and eat, prevent general health problems from malnutrition, prevent loss of teeth, prevent periodontal disease, prevent loss of multiple teeth destroying healthy dentition, provide timely competent restorative treatment, maintain timely prophylaxes schedules to maintain healthy oral cavity heath, prevent unnecessary teeth loss by timely restorative and periodontal treatment, prevent pathologic changes in the jaw joints by timely competent general restorative dentistry.

(Docket no. 1 at 2-3.)     Plaintiffs seek injunctive relief requiring Defendants to provide adequate dental care.   (*Id.* at 31-32.)

Before the Court is Defendants' Motion for Summary Judgment.[3]   (Docket no. 116.) Plaintiffs filed a Response (docket nos. 120-21) and an Amended Response (docket nos. 123-24) as well as an Errata Sheet (docket no. 126).   Defendants filed a Reply.   (Docket no. 129.)   All pretrial matters have been referred to the undersigned for consideration.   (Docket no. 15.)   The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

## I.     Recommendation

---

and the undersigned has entered a Report and Recommendation recommending the dismissal of Plaintiff Rogers's claims (docket no. 117).

[3] Also pending in this matter are Plaintiff's Motion for a Qualified Protective Order to Allow Production of Dental and Medical Records of Class Members to Plaintiffs' Counsel (docket no. 55); Plaintiff's Second Motion to Compel (docket no. 57); Defendants' Motion to Strike Plaintiffs' Expert Witnesses (docket no. 79); Plaintiffs' Motion to Extend Hours and Days for Depositions of Certain Prison Officials and their Motion for Immediate Consideration thereof (docket no. 86); Plaintiffs' Third Motion to Require Production of Documents for Seventh Through Twelfth Discovery Requests (docket no. 96); Plaintiffs' Fourth Motion to Require Production of Documents for Fifteenth and Sixteenth Discovery Requests (docket no. 106); and Plaintiffs' Sixth Motion to Compel (docket no. 130).   Additionally, because the Court has not yet adopted or rejected the November 6, 2015 Report and Recommendation, Defendants' Motion to Dismiss (docket no. 77) remains pending.   As discussed herein, because the Court should grant Defendants' Motion for Summary Judgment, the outstanding Motion should be denied as moot.

The undersigned recommends granting Defendants' Motion for Summary Judgment [116]. Accordingly, the outstanding motions in this matter should be denied as moot. This matter should be dismissed in its entirety.

## II.  Report

### A.  Factual Background

Through their amended Complaint, each Plaintiffs set forth the factual allegations related to their allegedly unconstitutional dental care. Each Plaintiff individually alleges that Defendants' failure to provide adequate care was a result of deliberate indifference in violation of the Eighth Amendment and that the violation stems from MDOC policy and practice. Plaintiffs further allege that they each represent a class of similarly situated individuals who have been harmed by these polices.

Plaintiff Johannes alleges that from 2008 through the time of the Complaint, he lost several teeth "due to periodontal disease and/or extractions and/or other reasons," that these conditions were caused primarily due to substandard dental care, and that Defendants failed to provide any dentures or bridges (until recently) that would allow him to eat properly; he adds that the dentures he received recently only fill a portion of his mouth and that they fit improperly, so they cut into his gums when he chews. (Docket no. 37 at 13-19.)

Plaintiff Woroniecki alleges that in December of 2013, six months after he arrived at the Muskegon Correctional Facility, he had "all of his remaining teeth pulled . . . pursuant to the policy of Defendant Heyns not to engage in restoration of teeth." (*Id.* at 20.) He was placed on a waiting list for dentures, but before he received them, the MDOC changed its policy so that "prisoners are only eligible for routine dental services after 24 months from the first day of intake."

3

(*Id.* at 21.)   Thus, Plaintiff Woroniecki was removed from the waiting list and was told to reapply in June of 2014.   Plaintiff went nearly 18 months without his dentures before he could ask for them, and when he did apply, he was told that the "list is not short."   (*Id.* at 21-22.)   As of February 2, 2015, the date Plaintiffs filed their Amended Complaint, Plaintiff Woroniecki had not received any dentures.   (*Id.* at 22.)

Plaintiff Turner alleges that his dentures disappeared during a shakedown of his cell on January 1, 2014.   He asked to be placed on the waiting list for dentures, but when prison staff determined that "there [was] no evidence that any [MDOC] staff were responsible for the loss of the . . . dentures," the prison enforced MDOC policy and told him that he would have to wait five years from the time he originally received them (until December of 2016) to have his dentures replaced.   He alleges that he has endured prolonged pain while waiting for the dentures.   (*Id.* at 23-24.)

Plaintiff Stephenson alleges that in June of 2012, his upper dental plate split in half.   He was placed on a waiting list for dentures, and in March of 2013, he was "issued a detail for a soft diet because he could not chew food with his broken upper denture."   (*Id.* at 25-26.)   In July of 2013, the prison dentist took impressions for a replacement dental plate, but seven months later, in February of 2014, Plaintiff was told that there was an "inadvertent delay in the processing of [his] dentures . . . [, so his] case ha[d] . . . been assigned priority status."   (*Id.* at 26.)   Plaintiff received his dentures in June of 2014—two years after his dental plate split.   (*Id.* at 27.)

Plaintiff Rogers alleges that in November of 2012, he told a prison nurse that he was "in severe, prolonged pain within his mouth, and [that he] had problems with his stomach and with digesting food because he could not masticate his food properly due to having only eight teeth in

4

his mouth." (*Id.* at 27.)   He claims that the nurse placed him "near the top of the waiting list" and told him to expect to be called out the next month.   (*Id.*)   In August of 2013, Plaintiff Rogers learned that he was not eligible for another partial plate for his mouth because he had received one in December of 2008 and because he had less than 12 months left before his earliest possible release date.   (*Id.* at 28.)   As of April 2014, Plaintiff had not been evaluated, so he filed a grievance.   (*See id.* at 28-29.)   In response to Step II of his grievance, Plaintiff Rogers was told that he would be provided with treatment because he had no clear parole date but that he would not be given any priority on the treatment list.   (*See id.* at 29.)   As of February 2015, Plaintiff still had not received his dentures.   (*Id.* at 30.)

### B.   Procedural History

Plaintiff Johannes filed his Complaint on April 28, 2014.   (Docket no. 1.)   The Court held a scheduling conference on July 10, 2014, and on July 14, 2014, the Court entered a Scheduling Order setting a discovery cutoff date of September 18, 2015 and a dispositive motion cutoff date of November 6, 2015.   (Docket no. 18.)   The Parties started discovery, and Plaintiffs filed their Amended Complaint on February 2, 2015.   (Docket no. 37.)   The next day, Plaintiffs filed their Motion to Certify Class.   (Docket no. 38.)

On August 6, 2015, while Plaintiffs' Motion was outstanding, Defendants filed a Motion to Dismiss, arguing that Plaintiff Max Rogers' claims were moot because he had been paroled on July 8, 2014.   (Docket no. 77.)   On August 11, 2015, five days after Defendants filed their Motion to Dismiss, the undersigned recommended that the Court grant Plaintiffs' Motion to Certify Class.   (Docket no. 83.)   Judge Laurie J. Michelson rejected the recommendation on Defendants' objections, denying Plaintiffs' Motion without prejudice because Plaintiffs had failed

5

to meet their burden of "showing that the complaint is plausible on its face."   (Docket no. 105 at 16.)   Judge Michelson found that additional discovery may be necessary to determine whether class certification is proper but also noted two substantive concerns raised by Defendants: (1) whether Plaintiffs had exhausted their administrative remedies under the Prison Litigation Reform Act (PLRA); and (2) whether Plaintiffs Evans and Rogers would be appropriate class representatives if their claims were moot.   (*Id.* at 16 n.2, 17-18.)   Thus, Judge Michelson found that it would be prudent for the Court to address these potentially dispositive issues before granting class certification.

On November 6, 2015, pursuant to Defendants' Motion to Dismiss (docket no. 77), the Court addressed the latter of the two issues referred to by Judge Michelson through a Report and Recommendation.   (Docket no. 117.)   The undersigned recommended dismissing the claims filed by Plaintiff Rogers as moot.   (*Id.* at 14.)   The Court has not yet determined whether to adopt or reject the recommendation, but on the same day it was entered, Defendants filed their instant Motion for Summary Judgment, which, in part, addresses the question of exhaustion under the PLRA.   (Docket no. 116.)

### C.    Governing Law

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A moving party may meet that burden "by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   Rule 56 expressly provides that:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

6

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).   The Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).   "The court need consider only the cited materials, but it may consider other materials in the record."   Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."   *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

**D.   Analysis**

Through their Motion, Defendants assert that Plaintiffs' claims fail because (1) Plaintiffs

7

have each failed to exhaust their administrative remedies under the PLRA; (2) Plaintiff Johannes's claims based on events occurring before April 28, 2011, are barred by the applicable statute of limitations; (3) Plaintiffs have each failed to show that Defendants were deliberately indifferent to their serious dental or medical needs; (4) Defendant Sanders had no personal involvement in any of Plaintiff Johannes's care after March 13, 2013; and (5) the dental policy at issue did not apply to Plaintiff Johannes because it went into effect after the alleged treatment (or lack thereof) occurred. (*See* docket no. 116 at 14.)   Plaintiffs respond by asserting that (1) they did properly exhaust their claims under the PLRA; (2) the applicable statute of limitations does not apply because of the continuing-violation doctrine; (3) Plaintiffs have established (at minimum a question of fact) that their constitutional rights have been violated.   (*See* docket no. 123.)

In a matter such as this, it is typically more efficient to address threshold issues like exhaustion, the statute of limitations, and personal involvement of the defendants before addressing any substantive issues.  Here, though, it is necessary to put Plaintiffs' claims into context through a brief discussion the substantive issues at hand, because without doing so, it is nearly impossible to consider these threshold issues in the proper light.

As noted, Plaintiffs claim that Defendants violated the Eighth Amendment by showing deliberate indifference to their serious medical (i.e. dental) needs "[a]s evidenced by systemic deficiencies in dental care policies and practices in Michigan prisons that have produced longstanding instances of inadequate care."   (Docket no. 37 at 31.)   Plaintiffs bring their claim against Defendant Sanders in his role as the "general dentist in charge of the dental care for the plaintiff representative"[4] and against Defendant Washington in her role as Director of the MDOC.

---

[4] It is critical to note that Defendant Sanders only had contact with Plaintiff Johannes.

(*Id.* at 2-3.)   Plaintiffs allege that Defendant Washington "has reduced the dental staffing at all prisons, which has decreased the number of dentists that are assigned to provide dental care at each facility."   (*Id.* at 2.)   Thus, they contend,

> Most prisons are providing only emergency dental care and do not have the time or resources to provide routine care now to prevent present dental issues from turning into emergencies and subjecting Plaintiffs and the class members to severe and prolonged dental pain and loss of teeth that can never be effectively replaced.   This decrease in staffing has resulted in increased wait lists for dental care, such as: dentures, replacement of dentures that have broken, filling of cavities, restoration of teeth, and cleaning of teeth.

(*Id.* at 2-3.)   Although not set forth plainly in their Amended Complaint, Plaintiffs' claim centers around three key allegations:

- The MDOC policy requiring new prisoners to wait 24 months before receiving dental care is unconstitutional because the lack of routine care regularly causes non-emergent dental issues to become more serious, which in turn results in the extraction of teeth; that is, the 24-month waiting period for new prisoners amounts to a de-facto tooth-extraction policy, which causes unnecessary pain and results in an inability to properly chew food;

- The MDOC's characterization of dentures as part of "routine" dental care is unconstitutional where teeth are pulled during intake because prisoners are then subject to a two-year waiting period before they can request dentures, leading to unnecessary pain and an inability to chew food; and

- The MDOC's blanket limitation on dentures to one set every five years and the general length of time that it takes to receive dentures after impressions are made are both unconstitutional.

(*See* docket no. 123 at 49-50; 52-56; 57-59.)

It is axiomatic that the failure of a prison system to provide adequate dental care can be a violation of the Eighth Amendment.   *See McCarthy v. Place*, 313 Fed.Appx. 810, 814 (6th Cir. 2008) (noting that dental needs fall into the category "of serious medical needs" because "[d]ental

---

The other Plaintiffs were treated by other dentists in the MDOC system.

care is one of the most important needs of inmates"). And as Plaintiff notes, courts have found it improper to grant summary judgment in cases where the prisoners suffered from painful, decayed and cracked teeth; tooth deterioration and an inability to eat properly; and bleeding gums, broken teeth, and an inability to eat properly. (*See* docket no. 123 at 43-44 (citing cases from the Second, Seventh, Eighth, and Ninth Circuits).) Moreover, courts have held that prisoners have stated a claim for deliberate indifference where they have endured pain and an inability to eat while waiting for dentures. (*See id.* at 44-45 (citing cases from the Seventh, Ninth, and Eleventh Circuits).)

Plaintiffs here challenge the portion of MDOC Policy Directive 04.06.150 that states, "Prisoners are eligible for routine dental services after 24 months from the first day of intake." (Docket no. 123 at 53); PD 04.06.150 ¶L. The policy directive defines three types of dental care:

> A. <u>Routine Dental Services</u> - Diagnostic, endodontic, restorative, periodontal, prosthetic, and non-urgent oral surgical procedures.
>
> B. <u>Urgent Dental Services</u> – Dental services determined by a Dentist to be medically necessary and generally applies to prisoners with facial swelling, oral facial trauma, profuse bleeding, or pain that cannot be controlled by mild pain medication (e.g., Tylenol). These conditions are not likely to cause death or irreparable harm, if not treated immediately.
>
> C. <u>Emergency (Emergent) Dental Services</u> - Dental services for those conditions for which delay in treatment may result in death or permanent impairment.

PD 04.06.150. Additionally, the policy directive requires that every prisoner be subject to a dental intake examination:

> I. The dental intake examination shall be performed by a fully licensed Dentist. All findings shall be fully documented in the electronic medical record or, if not available, on authorized dental health forms. The dental examination shall include:

1.  Reviewing the prisoner's dental health history and documenting current level of care needed (i.e., urgent/emergent or routine).

2.  Taking appropriate radiographs for diagnostic review.

3.  Inspecting for obvious tooth decay, missing teeth, prostheses, teeth in obvious need of extraction, dental abnormalities, and signs of dental disease.   Instrumentation shall be used when appropriate.

4.  Providing information regarding the availability of dental services and instructions on proper oral hygiene.

*Id.*

Plaintiffs argue that—as applied—this policy regularly results in one of the two the following processes: either (1)(a) prisoners are screened at intake and found to require routine care, such as restorative or non-urgent surgical procedures; (b) this routine care is denied for two years at which time the prisoners' oral condition has deteriorated to a point where tooth-extraction is necessary; and (c) the prisoners' teeth are extracted; or (2)(a) prisoners are screened at intake and found to require urgent care, such as tooth extraction; (b) the prisoners' teeth are extracted; and (c) the prisoners are told they must wait two years before requesting dentures because dentures are considered routine.  Plaintiffs argue that these processes, resulting from the application of PD 04.06.150, cause needless pain, bleeding, loss of good teeth, loss of weight, and chewing difficulties.  (*See, generally*, docket no. 123 at 52-59.)   Defendants argue that under PD 04.06.150, the actual scheduling of dental services and the treatment provided are still left to the dental staff and dental professionals at each prison.  (Docket no. 116 at 33-34 (citing PD 04.06.150 ¶¶ F, P, G)); *see also*, *id.* ¶O.   Moreover, Defendants assert the Plaintiffs in this matter did not suffer any harm from the application of the policy.   (*Id.* at 35-41.)

It is in this context that the Court must consider whether the individual Plaintiffs in this

matter have met the procedural and statutory thresholds necessary to bring their claims against the named Defendants.   Notably, the undersigned will address the Plaintiffs' claims individually as class certification has not been granted in this matter.

### 1.   Plaintiffs' Claims Against Defendant Sanders

#### a.   Plaintiffs Woroniecki, Turner, Stephenson, and Rogers

To state a plausible claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that each defendant was personally involved in the alleged constitutional violation.   *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995).   It is undisputed that Plaintiffs' claims against Defendant Sanders derive from his role as the general dentist in charge of Plaintiff Johannes's care while he was incarcerated at the Gus Harrison Correctional Facility (ARF).   It is likewise undisputed that Plaintiffs Woroniecki, Turner, Stephenson, and Rogers had no contact with Defendant Sanders and that Defendant Sanders had no oversight regarding their dental care.   Thus, there is no basis for their claims; Defendants' Motion for Summary Judgment should be granted in this regard, and Plaintiffs' Woroniecki, Turner, Stephenson, and Rogers' claims against Defendant Sanders should be dismissed.

#### b.   Plaintiff Johannes

Plaintiff Johannes was incarcerated at ARF from 2008 through March 13, 2013, at which time he was transferred to West Shoreline Correctional Facility (MTF).   In Plaintiffs' Complaint, they set forth the factual allegations related to Plaintiff Johannes's claim, all of which occurred between May 6, 2009, and June 17, 2013.   (*See* docket no. 37 at 13-19.)   Defendant Sanders was the dentist in charge of Plaintiff Johannes's care while he was at ARF, but once he was transferred on March 13, 2013, his care was provided by Dr. Kevin Murphy, the dentist in charge at MTF.

12

(*See* docket no. 116 at 42.)

Although Plaintiffs set forth a detailed factual account of the care provided by Defendant Sanders (*see* docket no. 123 at 8-15), they make clear through their Amended Complaint and their Response to Defendants' Motion that their claims in this matter arise from the allegedly unconstitutional application of PD 04.06.150:

> Further, Defendant Sanders pursued this course of treatment based on an MDOC Policy Directive that Plaintiffs, in this suit, allege violates the Eighth Amendment as Applied. . . . This policy, since its adoption in 2013, has prohibited MDOC dentists from providing dental treatment without regard to how basic preventative work would, in cases like Plaintiff Johannes's, save the patient numerous teeth and prevent significant pain.   As a result, countless inmates have been subject to cruel and unusual punishment by having teeth extracted, pain ignored, and dentures denied for extended periods of time based on the MDOC PD 04.06.150.

(Docket no. 123 at 39-40; *see also id.* at 53 ("The primary Policy Directive that Plaintiffs are challenging is the manner Defendants have applied PD 04.06.150.").)   Plaintiffs further note that "[f]or the entire time MDOC's Policy Directive has been in effect and applied, it has been continually used to deny dental treatment to Plaintiff Johannes" and that "MDOC Policy Directive 04.06.150 remains in effect, and as long as Plaintiff Johannes's treatment was dictated by that policy, his constitutional rights were violated."   (*Id.* at 40, 41.)

Even assuming, *arguendo*, that these statements are correct, it is of critical import that PD 04.06.150 did not take effect until September 30, 2013, more than six months after Plaintiff transferred away from ARF and away from Defendant Sanders's care.   Thus, the care that Defendant Sanders provided to Plaintiff Johannes could not possibly have been provided under PD 04.06.150.   And because Plaintiffs' claims challenge the application of this Policy Directive, Plaintiff Johannes's claims against Defendant Sanders should be dismissed.

## 2.   Plaintiffs' Claims Against Defendant Washington

13

### a.      Supervisory Liability

Defendants argue that Plaintiffs have also failed to show that Defendant Washington (or more specifically, former-Defendant Heyns) was personally involved in any of the Plaintiffs' dental care.   (Docket no. 116 at 41.)   It is undisputed that Director Heyns had no direct involvement in Plaintiffs' dental care.   But Plaintiffs do not argue that Director Heyns was personally involved in their dental care; instead, they argue that, as Director of the MDOC, Henys (and now Defendant Washington) promulgated PD 04.06.160 and failed to hire sufficient dental staff, which resulted in their alleged injuries.   Thus, Defendant Washington is sued in a supervisory role.

As a matter of law, it is a well-established principle that § 1983 liability cannot be based on a mere failure to act or on a theory of respondeat superior.   *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206-07 (6th Cir. 1998).   Rather, a supervisor must have "'either encouraged the specific incident of misconduct or in some other way directly participated in it.   At a minimum a plaintiff must allege that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'"   *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)). Therefore, to the extent Plaintiffs can support a showing that Director Heyns implemented PD 04.06.150 and failed to hire sufficient staff to provide proper dental care under the policy, Director Heyns (and now Defendant Washington through Fed. R. Civ. P. 25(d)) is a proper defendant in this matter.[5]   Nevertheless, the Court need not determine whether Plaintiffs can do so because, as

---

[5] Defendants to not directly address this issue, instead merely stating that Plaintiffs' "complaints against Heyns stem from Plaintiffs misconstruing the meaning of the Policy and Procedures themselves, which on their face expressly prescribe a constitutionally adequate level of

discussed further below, they have failed to properly exhaust their administrative remedies under the PLRA with regard to Director Heyns.[6]

### b.    The PLRA Exhaustion Requirement

The PLRA requires that a prisoner exhaust all administrative remedies before filing a Section 1983 action.    Specifically, the statute provides, "no action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a).   But "while the preferred practice is for inmates to complete the grievance process prior to the filing of an action and to attach to their complaint documentation of that fact, 'because the exhaustion requirement is not jurisdictional, district courts have some discretion in determining compliance with the statute.'"   *Curry v. Scott*, 249 F.3d 493, 502 (6th Cir. 2001)(citations omitted).   Notably, the Sixth Circuit "requires an inmate to make 'affirmative efforts to comply with the administrative procedures,' and analyzes whether those 'efforts to exhaust were sufficient under the circumstances.'"   *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (citing *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 224 (6th Cir. 2011)(internal quotation marks and citation omitted)).

The MDOC Policy Directive regarding prisoner grievances requires a prisoner to file a Step I grievance within five days of attempting to resolve the grievable issue with prison staff.

---

dental care."   (Docket no. 116 at 41.)

[6] It is critical for purposes of further discussion that Plaintiffs do not challenge PD 04.06.150 on its face; instead, as noted, Plaintiffs challenge the Policy Directive as it was applied to them.   Notably, PD 03.02.130 provides that "[a] grievant may not grieve the content of a policy or procedure," but it specifically carves out an exception where a prisoner challenges that policy or procedure "as it was specifically applied to the grievant."   PD 03.02.130 ¶F.1.   Thus, Plaintiffs in this matter were required to exhaust the MDOC grievance procedure before filing their instant claims.

MDOC Policy Directive 03.02.130 ¶V.   The prisoner must then proceed through Steps II and III

of the grievance process and receive a Step III response to complete the process.   *See Muttscheler*

*v. Martin*, No. 12-1221, 2013 WL 3730095, at *3-5 (W.D. Mich. July 15, 2013).   The

requirements for a Step I grievance are set forth, in relevant part, as follows:

> The issues should be stated briefly but concisely.   Information provided is to be
> limited to the facts involving the issue being grieved (i.e., who, what, when, where,
> why, how).   Dates, times, places, and names of all those involved in the issue
> being grieved are to be included.

PD 03.02.130 ¶R.   Thus, compliance with the PLRA requires that prisoners file a grievance

against the person(s) they ultimately seek to sue.   *See Curry v. Scott*, 249 F.3d 493, 505 (6th Cir.

2001).   This is critical because "[t]he point of the PLRA exhaustion requirement is to allow prison

officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can

and should be corrected and to create an administrative record for those disputes that eventually

end up in court."   *Reed-Bey v. Pramstaller*, 603 F. 3d 322, 324 (6th Cir. 2010) (citation omitted).

A failure to include a future defendant in a grievance does not allow that defendant the ability to

properly address the grievance at the initial level.   Defendants argue that "Plaintiffs all failed to

exhaust against Director Heyns" because none of them included him in their grievances.   (Docket

no. 116 at 25.)   Additionally, Defendants argue, all of the Plaintiffs except Plaintiff Johannes

failed to complete the grievance process before bringing this case.   (*Id.* at 25-28.)

### c.        Plaintiffs Woroniecki and Turners' Grievances

Plaintiff Woroniecki was incarcerated at MCF in June 2012.   He filed his Step I grievance

related to this matter on December 30, 2013. (Docket no. 61-9 at 7.)   In this grievance, Plaintiff

Woroniecki explains that in September 2013, he was seen by the dentist at MCF and all of his

remaining teeth were pulled.   At that time, he was placed on a waiting list to receive full dentures.

16

(*Id.*)   At the end of September 2013, the current version of PD 04.05.150 took effect, under which Plaintiff Woroniecki was to be denied routine dental care for the first 24 months of his incarceration, through June 2014.   Plaintiff Woroniecki stated in his grievance that he was informed by dental staff that he would be removed from the current waiting list and that he could be added to the list again in June 2014.   He argued that PD 04.06.150 was not retroactive and that he should not be removed from the original waiting list.   He noted that he attempted to resolve the issue with "Health Care" at the prison.   (*Id.*)   Plaintiff Woroniecki's grievance was denied through Step 3 (with final determination on May 12, 2014), wherein officials informed him that under PD 04.06.150, "scheduling of prisoners for dental services will normally be determined by the attending dentist" and that "[t]reatment priority shall be based on the clinical and professional judgment of the dentist."

Similarly, Plaintiff Turner received a set of dentures from the MDOC on December 8, 2011.   (*See* docket no. 61-10 at 6.)   Through his Step I grievance, he alleges that his dentures were lost in a shakedown of his cell in February 2014.   When he attempted to get a replacement for his dentures, the dental staff at MCF informed him that pursuant to PD 04.06.150 ¶Y, he could not receive more than one set of dentures every five years; thus, he would be ineligible for dentures before December 2016.   Plaintiff's Turner's Step III grievance was completed and denied on June 12, 2014.   (*Id.* at 4.)

Defendants argue that Plaintiffs Woroniecki and Turner failed to name Director Heyns in their grievances.   Plaintiffs acknowledge this deficiency, but they argue that the Sixth Circuit has allowed prisoner claims to proceed where a named defendant was not included in the grievance if the MDOC processed the grievance on the merits rather than for lack of naming the individual

defendants.   (Docket no. 123 at 30 (citing *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir.

2010); *Hollins v. Curtin*, No. 13-008, 2015 WL 1458944, at *11 (W.D. Mich. Mar. 30, 2015)).)

At first glance, Plaintiffs' argument is persuasive; the MDOC did, indeed, process

Plaintiffs' grievances on the merits.   But the prison processed Plaintiff these grievances as an

alleged misapplication of PD 04.06.150 *by the prison medial department*; that is, *Reed-Bey* would

be controlling if Plaintiffs had filed a claim against the MCF dentist and Defendants had argued

that Plaintiffs failed to properly name the dentists in their grievances.   Put plainly, Plaintiffs

Woroniecki and Turner have effectively exhausted their administrative remedies under the PLRA

against the prison dentist or the prison health-care staff for an unconstitutional application of PD

04.06.150.   But Defendant Washington (standing in the shoes of Director Heyns) is not a proper

party to this "as-applied" action because (1) Director Heyns had no role in Plaintiffs' care; and (2)

the grievances did not give Director Heyns 'a fair opportunity' to address the issue on the merits.

To the contrary, because Director Heyns was not named in the grievances, it is clear from the

grievance responses that prison officials addressed the grievances with regard to how the local

prison staff applied PD 04.06.150.   Notably, Plaintiffs' claims would survive an exhaustion

challenge had they filed claims against the individual dentists or health-care staff at the prison or

had they alleged that PD 04.06.150 is unconstitutional on its face.   With regard to the former,

Plaintiffs would have properly exhausted their administrative remedies; with regard to the later,

PD 03.02.130 ¶F.1 exempts such a claim from the grievance process.   For these reasons, the Court

should dismiss Plaintiffs Woroniecki and Turners' claims against Defendant Washington.

### d.    Plaintiff Stephenson's Grievance and His Substantive Claims

It is undisputed that Plaintiff Stephenson did not complete a Step 3 grievance related to his

claims.   Instead, Plaintiff Stephenson's grievance was resolved at Step 2.   In his grievance,

Plaintiff Stephenson notes that his upper denture split in half sometime in June 2012.   Just over a

year later, after several prison transfers and various attempts to receive a new set of dentures,

dental impressions were made on July 17, 2013.   Having still not received his dentures by January

2, 2014, Plaintiff Stephenson filed his grievance.   (*See* docket no. 113-2 at 2.)   The grievance

was denied at Step 1, but at Step 2, the MDOC acknowledged that there was "an inadvertent delay

in processing of grievant's dentures" and noted that they would be completed "as swiftly as

possible."   (Docket no. 113-2 at 5.)   Thus, had Plaintiff Stephenson's instant claims been filed

against his dentist or the prison health-care staff, he would have exhausted his administrative

remedies under the PLRA because there was no further possibility of relief.   *See, e.g.*, *Ross v.

County of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004); *Abney v. McGinnis*, 380 F.3d 663, 669

(2d. Cir. 2004); *Dixon v. Page*, 291 F.3d 485, 490-91 (7th Cir. 2002).   Nevertheless, Plaintiff

Stephenson has failed to exhaust his administrative remedies against Defendant Washington for

the same procedural reasons as discussed with regard to Plaintiffs Woroniecki and Turner.

Moreover, Defendants contend that if Plaintiff Stephenson's issues were resolved, his

claims are now moot.   (Docket no. 116 at 26.)   The undersigned agrees.   Plaintiffs seek

prospective injunctive relief related to the application of PD 04.06.150.   Plaintiff Stephenson

ultimately received his dentures in June 2014.   Thus, injunctive relief on his behalf is no longer

appropriate.   Plaintiff Stephenson's claims against Defendant Heyns should be dismissed.

### e.      Plaintiff Johannes's Grievances and Claims

As discussed by Plaintiffs in their Response to Defendants' Motion, Plaintiff Johannes

submitted numerous briefs related to his treatment as provided by Defendant Sanders.   (*See*

19

docket no. 123 at 15-18.)   Ultimately, Plaintiffs argue, these grievances, and the clinical record, "state a clear case for his having received untimely care."   (*Id.* at 18.)   Even assuming this statement is true, Plaintiff Johannes's claims suffer from the same procedural shortcomings with regard to Defendant Washington as his co-Plaintiffs' claims.   That is, none of Plaintiff Johannes's grievances properly name Directory Heyns.

What differentiates Plaintiff Johannes's claims, though, is that he did name Defendant Sanders in his grievances.   To wit, he has exhausted his administrative remedies with regard to any claims against Defendant Sanders.   Nevertheless, for the reasons discussed, *supra*, his claims against Defendant Sanders are improper in that they claim an unconstitutional application of a policy that had not yet been enacted at the time Defendant Sanders treated Plaintiff Johannes. Had Plaintiff Johannes filed a claim against Defendant Sanders for deliberate indifference to his dental needs without relying on application of PD 04.06.150, his claim may be allowed to proceed, assuming, of course, that it was timely.[7]   Plaintiff Johannes's claims against Defendant Washington also fail for the same reason.   It would be inapposite to allow Plaintiff Johannes to proceed with a claim for an unconstitutional application of a policy directive that was not in effect at the time of his injury.   For these reasons, Plaintiff Johannes's claims against Defendant Washington should be dismissed.

### f.   Plaintiff Rogers's Claims

Plaintiff Rogers's grievances also suffer from the same procedural challenges as his co-Plaintiffs.   Additionally, the undersigned has already recommended dismissing Plaintiff

---

[7] Defendants also argue that Plaintiff Johannes's claims against Defendant Sanders are barred by the applicable statute of limitations.   But because the Court should dismiss Plaintiffs' claims on other grounds, it need not address this issue.

Rogers's claims.   (Docket no. 117.)   Defendants address Plaintiff Rogers in their Motion to Dismiss, but their Motion was filed on the same day the undersigned recommended granting their Motion to Dismiss Plaintiff Rogers.   Moreover, Plaintiffs have neither responded to Defendants' Motion with regard to Plaintiff Rogers nor have they objected to the December 11, 2015 Report and Recommendation.   Thus, for the reasons stated in the December 11, 2015 Report and Recommendation, the Court should dismiss Plaintiff Rogers's claims.

### E.    Conclusion

It is clear from the record before the Court that the dental care Plaintiffs received was less than optimal and that each of them may, individually or as a class, have suffered damages due to either the decisions of the dentists that treated them, the application of the policy directive at issue, or the content of the policy directive on its face.   Nevertheless, neither the existence of damages nor the need for a change in the dental care these prisoners receive absolves Plaintiffs from following the appropriate procedural guidelines discussed herein.   Therefore, the Court should grant Defendants' Motion for Summary Judgment [116], the outstanding motions in this matter should be denied as moot, and this matter should be dismissed in its entirety.

### III.    Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to

raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.   *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.   Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.   The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated:   January 19, 2016                         s/ Mona K. Majzoub
                                                  MONA K. MAJZOUB
                                                  UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served on counsel of record on this date.

Dated:   January 19, 2016                         s/ Lisa C. Bartlett
                                                  Case Manager


22