UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ROBERT JOHANNES,<br>MICHAEL WORONIECKI,<br>PHILLIP TURNER, and<br>ROGER STEPHENSON,<br>individually, and on behalf of all other<br>similarly situated prisoners,<br><br>      Plaintiffs,<br><br>v.<br><br>HEIDI WASHINGTON, Director of the<br>Michigan Department of Corrections, and<br>DALTON SANDERS,<br><br>      Defendants. | Case No. 14-11691<br>Honorable Laurie J. Michelson<br>Magistrate Judge Mona K. Majzoub |

**OPINION AND ORDER
ADOPTING IN PART REPORT AND RECOMMENDATION [132]**

Plaintiffs Robert Johannes, Michael Woroniecki, Phillip Turner, and Roger Stephenson, assert that the dental care they have received while in the custody of the Michigan Department of Corrections has been constitutionally inadequate. And they say they are not alone: each seeks to represent a class of prisoners who have also allegedly received constitutionally inadequate dental care. For this reason, Plaintiffs have sued the Director of the Michigan Department of Corrections, Heidi Washington. Also sued is Dr. Dalton Sanders, because he provided dental care to Johannes.

Following this Court's denial—without prejudice—of Plaintiffs' motion to certify the class, *see generally Johannes v. Washington*, No. 14-CV-11691, 2015 WL 5634446 (E.D. Mich. Sept. 25, 2015), Defendants filed a "post-discovery" motion for summary judgment (Dkt. 116). In the motion, Washington and Sanders raise numerous arguments for dismissing the named

plaintiffs' claims. All pretrial matters in this case have been referred to Magistrate Judge Mona K. Majzoub, and she recommends granting Defendants' motion and dismissing this case. (Dkt. 132, R. & R.) Both parties object. (Dkt. 139, Defs.' Objs.; Dkt. 141, Pls.' Objs.) For the reasons that follow, the Court does not entirely agree with the Magistrate Judge's analysis. Accordingly, the Court will ADOPT IN PART her report and recommendation.

## I.

### A.

As this Court reads the Amended Complaint, there are two sets of claims at issue in this case regarding prison dental care. In particular, the Amended Complaint has a section labeled "Factual Allegations" that describes the particular harm that the named plaintiffs have suffered. It also includes a section labeled "Class Allegations" that assert a number of systemic issues in the MDOC. The following is a summary of these two sets of allegations.

#### 1.

Johannes describes in detail his dental treatment from May 2009 through June 2013. As one example, Johannes describes Dr. Sanders' treatment of "tooth #31." In May 2009, Sanders "determined that there was no restoration of [tooth 31]." (Am. Compl. ¶ 28.) Sanders again examined tooth 31 in October 2009 but "determined more time is needed." (*Id.* ¶ 32.) In November 2009, Johannes underwent an x-ray and Sanders examined teeth 27, 28, and 31 "and determined more time is needed." (Am. Comp. ¶ 33.) In December 2009, Sanders extracted teeth 28 and 31. (*Id.* ¶ 35.) Johannes asserts that he suffered "numerous unnecessary teeth extractions," that he was not provided "reasonably prompt dental treatment for [his] pathological conditions," and that "defendants failed to provide remedial dental care or deliver, fashion, make dentures, partial dentures, bridges, and/or restorations or periodontal treatment." (*Id.* ¶¶ 54, 62, 64.)

Johannes asserts that without proper dentures and bridges, he lacks the ability to engage in "normal life activities," including eating. (*Id.* ¶ 59.)

Woroniecki's allegations center on a delay he experienced in receiving dentures. In particular, he asserts that he had all of his teeth pulled in November 2013 and was placed on a first-on-first-to-receive waitlist for dentures. (Am. Compl. ¶¶ 65–66.) In December 2013, however, Woroniecki was informed that due to a revision in an MDOC dental policy, he would not receive his dentures until June 2014, regardless of his position on the waitlist. (*See Id.* ¶¶ 68–69, 71–72.) Woroniecki asserts that because he was improperly removed from the waitlist, he experienced undue delay in receiving dentures. (*Id.* ¶ 70.) Although placed back on the denture waitlist in June 2014, as of the filing of the Amended Complaint in February 2015, Woroniecki still had not received his dentures. (*Id.* ¶¶ 75, 79.) Without dentures Woroniecki has suffered "prolonged pain" and an inability to eat food. (*Id.* ¶ 70.)

Turner asserts that in late 2013 his cell was subjected to a "shakedown" and that, after the shakedown, he could no longer find his dentures. (*See* Am. Compl. ¶¶ 82–84.) When Turner grieved the issue, he was told that per an MDOC policy he would not receive new dentures until December 2016. (*Id.* ¶ 87.) Turner claims that he has suffered "severe and prolonged pain while waiting for dentures." (*Id.* ¶ 91.)

Stephenson asserts that in June 2012 his denture plate "split in half," but an impression was not taken for new dentures until July 2013 and he did not receive his dentures until June 2014. (Am. Compl. ¶¶ 101, 106, 112.) Stephenson says he suffered "severe and prolonged pain while waiting for replacement dentures." (*Id.* ¶ 114.)

3

**2.**

Plaintiffs also assert that "[t]here are systemic deficiencies in how the defendants choose to deliver dental care, due to the reduction in the number of dentists hired, and the issuance of a modified policy directive requiring a minimum two years wait once you enter a prison to even be placed on a waiting list and requiring a prisoner to wait five years for replacement of dentures." (Am. Comp. ¶ 17.)

The Court reads the Amended Complaint as asserting the following five class claims.

*Class Claim One.* Throughout the MDOC, the MDOC's written policy of not providing "routine dental services" to prisoners until after 24 months of uninterrupted incarceration is being carried out in a manner that violates the Eighth Amendment. (*See* Am. Compl. ¶ 25.a.)

*Class Claim Two.* Throughout the MDOC, the written policy of not providing "removable prosthetics" (including dentures) more than once within a five-year period is being carried out in a manner that violates the Eighth Amendment. (*See* Am. Compl. ¶ 25.b.)

*Class Claim Three*. Throughout the MDOC, there is an unwritten practice of delaying the production of dentures, even after a prisoner has been approved for dentures, that violates the Eighth Amendment. (*See* Am. Compl. ¶ 25.c.)

*Class Claim Four*. Throughout the MDOC, there is an unwritten practice of extracting instead of repairing teeth that violates the Eighth Amendment. (*See* Am. Compl. ¶ 25.d.)

*Class Claim Five*. Throughout the MDOC, there is an unwritten practice of refusing or delaying treatment for broken teeth that violates the Eighth Amendment. (*See* Am. Compl. ¶ 25.e.)[1]

---

[1] In their motion for class certification, Plaintiffs sought to certify a subclass of prisoners who were subjected to the MDOC's written policy of not providing routine dental services to

**3.**

In November 2015, Defendants Washington and Sanders moved for summary judgment on Plaintiffs Johannes', Woroniecki's, Turner's, and Stephenson's claims. (*See generally* Dkt. 116, Mot. Summ. J.)

Both Washington and Sanders argued the defense of non-exhaustion. (*See* Mot. Summ. J. at 6–12.) Washington asserted that none of Johannes, Woroniecki, Turner, or Stephenson properly exhausted their claims against her because they did not name her (or her predecessor) in any of their grievances as required by the MDOC's grievance policy directive. (*Id.* at 9.) Sanders similarly asserted that Woroniecki's, Turner's, and Stephenson's grievances (but not Johannes') failed to name him. (*See id.*) Additionally, both Washington and Sanders argued that Woroniecki, Turner, and Stephenson did not complete the grievance process before this action commenced, and so those three plaintiffs' claims are unexhausted for that alternative reason. (Mot. Summ. J. at 5, 9–12.)

Defendants also made a number of arguments unrelated to the issue of exhaustion. Washington and Sanders argued that Johannes' claims, to the extent they arose before April 28, 2011, are barred by the applicable statute of limitations. (Mot. Summ. J. at 13–14.) Defendants also argued the merits. Washington claimed she was not personally involved in Plaintiffs' dental care. (*Id.* at 25.) Sanders similarly argued that he never treated Woroniecki, Turner, or Stephenson and only treated Johannes before the dental policy challenged in this case, PD 04.06.150, took effect. (*Id.* at 26.) Defendants also argued that Woroniecki, Turner, Stephenson, and Johannes received adequate dental care such that their Eighth Amendment rights were not violated. (*Id.* at 27–42.)

---

prisoners who may be released within a year. But this is not one of the subclasses proposed in the Amended Complaint, the document responsible for defining the claims in this lawsuit.

**4.**

Regarding Defendant Sanders, the Magistrate Judge recommends dismissing Woroniecki's, Turner's, and Stephenson's claims against the dentist because he never provided those three plaintiffs with any dental care. (Dkt. 132, R. &. R. at 12.) Although Sanders did treat Johannes, the Magistrate Judge agreed with Sanders' argument that the dentist did not treat Johannes after the policy directive challenged in this case took effect and thus, could not have applied that directive in an unconstitutional manner. (R. & R. at 12–13.)

Regarding Defendant Washington, the Magistrate Judge recommends dismissal of Plaintiffs' claims against the Director primarily on exhaustion grounds. In particular, the Magistrate Judge agreed with Washington that none of Woroniecki's, Turner's, Stephenson's, or Johannes' grievances named her (or former-MDOC Director Heyns), and thus, those three plaintiffs did not properly exhaust their claims against Washington. (R. & R. at 18.) Additionally, the Magistrate Judge recommends dismissing Johannes' claims against Washington because the policy directive challenged in this case became effective after the alleged deficient dental treatment Johannes received. (R. & R. at 20.)

The Magistrate Judge alternatively recommends dismissing Stephenson's claims as moot because he has received dentures but seeks in this case prospective relief regarding the timely provision of dentures. (R. & R. at 19.)

Because the Magistrate Judge recommends dismissal of all of Plaintiffs' claims on the foregoing grounds, she did not address Defendants' other summary-judgment arguments, including most of Defendants' merits-based arguments.

Both sides object.

6

**5.**

As the Magistrate Judge recommends ruling in their favor, Washington and Sanders have no issue with the Magistrate Judge's findings; instead, they object that the Magistrate Judge disposed of their motion without making additional findings. Defendants object to the Magistrate Judge not addressing their argument that Woroniecki's, Turner's, and Stephenson's claims are unexhausted because they did not complete the grievance process before Johannes commenced this action. (Dkt. 139, Defs.' Objs. at 18.) Sanders also objects to the Magistrate Judge not addressing his argument that Johannes failed to exhaust the claims against him. (Defs.' Objs. at 8–11.)

Plaintiffs object to the Magistrate Judge's finding that they were required to name the Director in their grievances and assert that the Magistrate Judge erred in construing Woroniecki's, Turner's, and Stephenson's grievances as limited to the conduct at their correctional facilities as opposed to the MDOC's dental policies. (Dkt. 141, Pls.' Objs. at 1–11, 13–15.) They also object to the Magistrate Judge's conclusion that Stephenson's claims are moot because he received his dentures. (*Id.* at 12.) As for the Magistrate Judge's recommendation to dismiss Johannes' claims against Sanders on the basis that Sanders treated Johannes before the policy directive at issue in this case took effect, Johannes objects that his claims in this lawsuit are not based solely on that policy directive. (*Id.* at 15–17.)

Like Defendants, Plaintiffs additionally label as "objections" two arguments that do not pertain to any finding that the Magistrate Judge made in her Report. In particular, Plaintiffs urge the Court to rule on Defendants' statute-of-limitations defense to Johannes' claims arising before April 28, 2011 and to find that the MDOC Director is a proper defendant in this case. (Pls.' Objs. at 17–28.)

## II.

"A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

## III.

## A.

Because it goes to the Court's subject-matter jurisdiction over Stephenson's claim, *see Gottfried v. Med. Planning Servs., Inc.*, 280 F.3d 684, 691 (6th Cir. 2002), the Court first addresses the Magistrate Judge's recommendation that Stephenson's Eighth Amendment claim be dismissed as moot (*see* R. & R. at 19). The Court accepts this recommendation.

As summarized above, Stephenson's claim centers on the allegation that he "suffered severe and prolonged pain" while waiting for dentures. (Am. Compl. ¶¶ 113, 114.) Stephenson asks the Court to issue an injunction that would ensure that no MDOC prisoners will experience similar delays in the future. (*See* Am. Compl. at 31 & ¶ 25.c.) But, as stated in the Amended Complaint, Stephenson received his dentures in June 2014, and so he does not need this relief. Further, Stephenson seeks no damages. Thus, his claim is moot. *See Gottfried*, 280 F.3d at 691 ("A case is moot when . . . the parties lack a legally cognizable interest in the outcome.").

Stephenson resists this conclusion by arguing that "he is likely to be deprived of his dentures again as a result of prison staff misconduct, which will then subject him to further pain and suffering." (Pls.' Objs. at 12.) But pure speculation, especially one based on a government official doing something that the law prohibits, does not save a claim from mootness. *See Honig v. Doe*, 484 U.S. 305, 320 (1988) ("Our cases reveal that, for purposes of assessing the likelihood that state authorities will reinflict a given injury, we generally have been unwilling to assume

8

that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury." (citing cases)).

Stephenson also asserts that he "has been going through problems having the dentures adjusted to fit" and "may still need an injunction." (Pls.' Objs. at 12.) Even assuming that Stephenson is having problems with the fit of his dentures, that alone does not state an Eighth Amendment violation—the allegation says nothing about what is being done to fix the fit issues. Moreover, the injunctive relief Stephenson sought in the Amended Complaint was "that denture replacements be completed within 4 months of the first impression taken." (*See* Am. Compl. at 32; *see also id.* at ¶ 25.c.) He did not seek an injunction requiring adjustments to dentures until they fit.

Accordingly, the Court overrules Stephenson's objection to the Magistrate Judge's finding that his claim is moot.

Before leaving this issue, it is worth noting that Plaintiffs have not merely alleged that Defendants violated *Stephenson*'s Eighth Amendment rights but that others are experiencing or will experience similar unconstitutional delays in their receipt of dentures. The Court does not now address whether this class claim—or, more precisely, claim of the subclass that Stephenson seeks to represent (*see* Am. Compl. ¶ 25.c)—is moot. The issue has proven thorny in the past, *see Dozier v. Haveman*, No. 2:14-CV-12455, 2014 WL 5483008, at *9 (E.D. Mich. Oct. 29, 2014) (Michelson, J.), and so the Court would benefit from briefing from the parties. Moreover, the issue may resolve itself, if another prisoner seeks to represent the subclass that Stephenson seeks to represent. *See Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir. 2006) ("[C]ourts . . . disregard the jurisdictional void that is created when the named plaintiffs' claims are dismissed and, shortly afterwards, surrogates step forward to replace the named plaintiffs.").

9

**B.**

The Court turns next to the Magistrate Judge's recommendation to dismiss Plaintiffs' claims against Sanders and Plaintiffs' objections to this recommendation. (*See* R. & R. at 12–13; Pls.' Objs. at 15.)

As an initial matter, the Court accepts the Magistrate Judge's recommendation to dismiss Woroniecki's and Turner's claims against Sanders. (R. & R. at 12.) Plaintiffs do not object to this recommendation (*see generally* Pls.' Objs.), and, as the Magistrate Judge stated, it is undisputed that Woroniecki and Turner "had no contact with Defendant Sanders and that Defendant Sanders had no oversight regarding their dental care" (R. & R. at 12). Accordingly, Woroniecki's and Turner's claims against Sanders will be dismissed. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985) ("[T]he failure to object may constitute a procedural default waiving review even at the district court level."); *Garrison v. Equifax Info. Servs., LLC*, No. 10-13990, 2012 WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012) ("The Court is not obligated to review the portions of the report to which no objection was made." (citing *Thomas*, 474 U.S. at 149–52)).

As for Johannes' Eighth Amendment claim against Sanders, the Magistrate Judge reasoned that Plaintiffs' "claims in this matter arise from the allegedly unconstitutional application of PD 04.06.150." (R. & R. at 13.) This was problematic for Johannes, reasoned the Magistrate Judge, because Policy Directive 04.06.150 "did not take effect until September 30, 2013, more than six months after [Johannes] transferred away from ARF and away from Defendant Sanders's care." (*Id.*) It followed that "the care that Defendant Sanders provided to Plaintiff Johannes could not possibly have been provided under PD 04.06.150," and so "Johannes's claims against Defendant Sanders should be dismissed." (*Id.*)

Plaintiffs object that a "review of the Amended Complaint shows that Plaintiffs raised more than just the violation of the PD 04.06.150." (Pls.' Objs. at 15.)

The Court agrees. As summarized at the outset, there appear to be at least three class claims that do not rest on Policy Directive 04.06.150: that there is an unconstitutional preference for extracting teeth rather than repairing them, that there is unconstitutional delay in the provision of dentures after approval, and that there is an unconstitutional practice of delaying or denying treatment for broken teeth. (*See* Am. Compl. ¶ 25.) As such, the fact that Sanders only treated Johannes prior to the effective date of Policy Directive 04.06.150 does not justify dismissing Johannes' Eighth Amendment claim against Sanders.[2]

Because it relates to Johannes' claim against Sanders, the Court will address Defendants' objection that the Magistrate Judge did not opine on their argument that Johannes did not exhaust his claims. (*See* Dkt. 139, Defs.' Objs. at 8–11.) Defendants assert that Johannes did not properly exhaust his claims because, although he filed 13 grievances, the first was not appealed all the way through the grievance process, and the subsequent 12 were improperly-filed duplicates of the first. (*See* Dkt. 129, Defs.' Reply to Pls.' Resp. to Mot. Summ. J. at 6–8; Dkt. 139, Defs.' Objs. at 8–11.)

The Court finds that this argument is not properly before the Court because Defendants did not make it in their summary-judgment motion. Indeed, in their motion, Defendants suggested that Johannes *had* exhausted his claims against Sanders: "Plaintiffs, *with the limited*

---

[2] The Court notes that although it disagrees with the Magistrate Judge about the basis of Plaintiffs' claims, the error is attributable to Plaintiffs' who candidly acknowledge in their objections that their counsel "misstated that 'Plaintiffs' claims were based on PD 04.06.150 that was effective in October of 2013. R.123 [Pls.' Resp. to Mot. Summ. J. at] Pg ID 3259-70. This argument should have stated that Plaintiffs Woroneicki [*sic*] and Turner's claims challenge the as applied policy directive. It should have been more clear that both Plaintiffs Johannes and Stephenson were challenging the practices of MDOC that are applied to all the Plaintiffs, and potential class members, unrelated to the 2-year quarantine[.]" (Pls.' Objs. at 15.)

*exception of Plaintiff Johannes against one Defendant, Dr. Sanders*, did not properly exhaust their administrative remedies[.]" (Mot. Summ. J. ¶ 6 (emphasis added).) And in their summary-judgment reply brief, Defendants acknowledged that they did not make the argument that forms the basis of this objection: "Defendants apologize to the Court for not clearly identifying this aspect of Johannes' failure to exhaust as to Dr. Sanders in their initial brief, even though that failure is made apparent by the exhibit R. 61-17 itself." (Dkt. 129, Defs.' Reply to Resp. to Mot. for Summ. J. at 7.) Arguments raised for the first time in a reply brief are not procedurally proper because they do not permit the non-moving party to address them. *See Paul v. Henri–Line Mach. Tools, Inc.*, No. 10-10832, 2012 WL 6642494, at *6 (E.D. Mich. Dec. 20, 2012); *Martinez v. Comm'r of Soc. Sec.*, No. 09-13700, 2011 WL 1233479, at *2 n.1 (E.D. Mich. Mar. 30, 2011). And although Plaintiffs addressed the merits of this exhaustion argument in their response to Defendants' objections, they also correctly asserted that issues not presented to the Magistrate Judge are, generally, not properly before this Court. *See Mitchell v. Cnty. of Washtenaw*, No. 06-13160, 2009 WL 909581, at *4 (E.D. Mich. Mar. 31, 2009) (citing cases to demonstrate that "Courts generally will not consider arguments on review that were not raised before the magistrate judge").

And even if the Court were to consider Defendants' argument about Johannes' grievances, they have not shown that no reasonable jury could find that some of Johannes' grievances were not duplicative. Defendants simply point out that 12 of Johannes' grievances were rejected by grievance screeners as duplicative. (Defs.' Reply at 6–8; Defs.' Objs. at 8–12.) While this is true, the Court does not agree with Defendants' implication that whenever a grievance is rejected as duplicative, it is not properly exhausted as a matter of law. (*See* Defs.' Reply at 8.) If this were the case, a prisoner would be barred from filing suit even if the

grievance screener incorrectly rejects his grievance as duplicative. Thus, to carry their summary-judgment burden, Defendants must compare the issues grieved in the first grievance to those grieved in the 12 allegedly-duplicate grievances and show that every reasonable jury would think the rejections were proper. *See Johnson v. Corr. Med. Servs., Inc.*, No. 4:06-CV-137, 2008 WL 878767, at *5 (W.D. Mich. Mar. 3, 2008) (finding grievance not properly rejected as duplicative); *Bowers v. Burnett*, No. 1:08-CV-469, 2009 WL 7729553, at *9 (July 27, 2009) *report and recommendation adopted*, 2011 WL 1047343 (W.D. Mich. Mar. 18, 2011) (same). Defendants have not completed this task. Indeed, they have not even provided the Court with a copy of the first grievance. (*See generally* Dkt. 61-17.) Moreover, in responding to the rejection of the ARF-0661 grievance as duplicative, Johannes provided a plausible explanation as to why it raised a new issue. (*See* Dkt. 61-17 at Pg ID 1149.)

In sum, the Court accepts the Magistrate Judge's recommendation to dismiss Woroniecki's and Turner's claims against Sanders, but rejects the Magistrate Judge's recommendation to dismiss Johannes' claim against Sanders on the grounds that the claims in this case are solely based on an application of Policy Directive 04.06.150.

## C.

The Court next addresses Plaintiffs' objection to the Magistrate Judge's conclusion that, because Woroniecki, Turner, Stephenson, and Johannes failed to name Washington (or former-MDOC Director Heyns) in their grievances, they failed to properly exhaust their claims against her. The Court sustains in part this objection.

## 1.

Plaintiffs' objection begins by asserting that the Magistrate Judge erroneously relied on *Curry v. Scott*, 249 F.3d 493 (6th Cir. 2001). (Pls.' Objs. at 2–5.) Plaintiffs claim that the part of

*Curry* the Magistrate Judge relied on—that a prisoner must grieve the person he ultimately seeks to sue, 249 F.3d at 505—was overruled by the Supreme Court in *Jones v. Bock*, 549 U.S. 199 (2007). (Pls.' Objs. at 2–5.) Due to this error, Plaintiffs say, her recommendation "should be reversed and remanded for further proceedings." (Pls.' Objs. at 5.)

This objection does not warrant the relief sought. The viability of *Curry* does not change the fact that a Michigan prisoner is required to name in his grievance all those he believes were involved in the issue being grieved. It is true that in *Jones*, the Supreme Court held, contrary to then controlling Sixth Circuit authority, that nothing in the Prison Litigation Reform Act itself required prisoners to name in their grievances the defendants they would later sue: "The PLRA requires exhaustion of 'such administrative remedies as are available,' 42 U.S.C. § 1997e(a), but nothing in the statute imposes a 'name all defendants' requirement along the lines of the Sixth Circuit's judicially created rule." 549 U.S. at 217. But *Jones* also acknowledged that a prison's procedural rules might impose a naming requirement and that proper exhaustion requires compliance with those rules: "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." 549 U.S. at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). And the Michigan Department of Corrections grievance rules require a prisoner to include the "[d]ates, times, places, and *names* of all those involved in the issue being grieved" in his grievance. MDOC Policy Directive 03.02.130 ¶ R (July 2007) (emphasis added).

Accordingly, the Magistrate Judge's reliance on *Curry* was at most harmless error. And given that Plaintiffs did not name Washington in their grievances, that could have been the end of the matter.

14

**2.**

But Plaintiffs argue, as they did before the Magistrate Judge, that the right to enforce the name-all-involved requirement in this litigation has been waived. (Pls.' Objs. at 6.) In particular, Plaintiffs say that under *Reed-Bey v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010), "Defendant Heyns' (now Washington) agents waived the right to object to the failure to name in the grievance the prison staff ultimately sued, i.e., Director Heyns." (Pls.' Objs. at 6.)

In *Reed-Bey v. Pramstaller*, Reed-Bey suffered a shoulder injury that could not be resolved without surgery. 603 F.3d at 323. About a month after the injury, Reed-Bey "filed a prison grievance complaining about the lack of follow-up care for the injury." *Id.* But contrary to the MDOC's requirement to name all those involved, Reed-Bey "fail[ed] to name a single individual" in his initial grievance. *Id.* at 323–24. As such, when Reed-Bey later sued a host of defendants, they argued that the case should be dismissed for Reed-Bey's failure to properly exhaust his claims against them. *Id.* The Sixth Circuit was not persuaded. It found that the right to enforce the naming requirement had been forfeited: "Officials at the Department of Corrections, for reasons of their own, overlooked (or perhaps forgave) this procedural failing and chose to address Reed-Bey's grievance on the merits. . . . When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." *Id.* at 324–25. Accordingly, the Sixth Circuit held that "Reed-Bey properly exhausted his claim because he invoked one complete round of the Department's grievance procedures and received merits-based responses at each step." *Id.* at 326.

In their summary-judgment reply brief, Defendants argued that *Reed-Bey* was inapplicable because it "involved the head of medical services who could have been involved in authorizing medical treatment to [Reed-Bey]." (Dkt. 129, Defs.' Reply to Resp. to Mot. Summ.

J. at 5.) In contrast, said Defendants, Plaintiffs' references to "MCF dental," "dental staff," and "health care" in their grievances could not "be understood to include the MDOC Director who has no treatment relationship with the Plaintiffs, and under the dental services policy, all dental treatment decisions are left to the on-site treating dentist." (*Id.*)

The Magistrate Judge seemed to agree with this argument. She concluded that *Reed-Bey* was not controlling because "the prison processed [Plaintiffs'] grievances as an alleged misapplication of [the dental policy directive] *by the prison medi[c]al department*." (R. & R. at 18.) The Magistrate Judge thus apparently read *Reed-Bey*'s forfeiture rule as applying only to those defendants who grievance responders thought the grievance implicated:

> Put plainly, Plaintiffs Woroniecki and Turner have effectively exhausted their administrative remedies under the PLRA against the prison dentist or the prison health-care staff for an unconstitutional application of PD 04.06.150. But Defendant Washington (standing in the shoes of Director Heyns) is not a proper party to this "as-applied" action because (1) Director Heyns had no role in Plaintiffs' care; and (2) the grievances did not give Director Heyns 'a fair opportunity' to address the issue on the merits. To the contrary, because Director Heyns was not named in the grievances, it is clear from the grievance responses that prison officials addressed the grievances with regard to how the local prison staff applied PD 04.06.150.

(R. & R. at 18.) Elsewhere in her Report, the Magistrate Judge provided that this reasoning also applied to Stephenson's and Johannes' grievances. (R. & R. at 19–20.)

Plaintiffs object to this reasoning on two grounds. Although their first argument is less than clear, it appears that their position is that, under *Reed-Bey*, once prison officials decide not to reject a prisoner's grievance for failure to comply with the name-all-involved requirement, and instead address the merits of his grievance, *no one* later named in a lawsuit may argue that he failed to comply with the naming requirement. (*See* Pls.' Objs. at 5, 7–8; *see also* Dkt. 123, Pls.' Resp. to Mot. Summ. J. at 24.) Plaintiffs also assert that the Magistrate Judge "made a critical

16

error when claiming that the grievances filed by Plaintiffs Woroniecki, Turner and Stephenson were actually directed at the local dentists and not the Defendant Director[.]" (Pls.' Objs. at 9.)

The Court largely agrees with Plaintiffs' reading of *Reed-Bey*. But before explaining why, the Court briefly addresses a threshold argument: Defendants argue that *Reed-Bey* is wholly inapplicable because the MDOC's grievance policy did not include the requirement that prisoners name all those involved at the time Reed-Bey filed his grievance. (*See* Defs.' Resp. to Pls.' Objs. at 6 (arguing that naming requirement was added after the Supreme Court's 2007 decision in *Jones v. Bock*).) This argument is wrong; *Reed-Bey* itself makes that plain. *Reed-Bey v. Pramstaller*, No. 06-10934, 2008 WL 2157063, at *2 (E.D. Mich. May 21, 2008) (quoting name-all-involved requirement from *2003* version of the MDOC's grievance policy directive); *Reed-Bey*, 603 F.3d at 324 ("Under the Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance. R.42-6 ¶ T.").

So the issue is the scope of *Reed-Bey*'s forfeiture rule. The Court does not believe that *Reed-Bey*'s forfeiture rule should be read to apply only to those whom the grievance fairly implicates. As an initial matter, nothing in *Reed-Bey* explicitly limits its forfeiture ruling in this way. Additionally, such a reading of *Reed-Bey* improperly conflates two related concepts.

The first is that courts will find the naming requirement *satisfied* when the prisoner provides a good-enough description of the officer he seeks to grieve such that grievance responders, in exercising reasonable diligence, can identify the officer even if unnamed. *See Calhoun v. Hill*, No. 07-11613, 2008 WL 4277171, at *3 (E.D. Mich. Sept. 17, 2008) (noting that a court "may excuse a prisoner's failure to identify by name a particular defendant in a grievance when it is obvious from the facts alleged in the grievance that the defendant was

17

involved"). Indeed, as noted, Defendants attempt to distinguish *Reed-Bey* by arguing that references to "MFC Dental" (and the like) could not be "understood to include the MDOC Director who has no treatment relationship with the Plaintiffs[.]" But *Reed-Bey* did not address the question of whether there was enough information in the grievance for prison officials to have identified the defendants later sued—the issue was whether the defendants could object to Reed-Bey's failure to name all involved given that grievance screeners had the chance to do so but did not.

In their summary-judgment reply brief, Defendants suggested that *McQueen v. Woods*, No. 14-1314, slip op. (6th Cir. Sept. 14, 2014), supports a reading of *Reed-Bey* that limits forfeiture to those fairly implicated in the grievance. But *McQueen* is readily reconcilable with the Court's broader reading of *Reed-Bey*'s forfeiture rule. (Never mind that *McQueen* is a non-binding, unpublished *order* that does not even cite *Reed-Bey*.) In *McQueen*, the prisoner specifically named one officer in his grievance but then later sued other officers who he had not named in his grievance. Acknowledging the MDOC's name-all-involved requirement (by citing *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011)), the Sixth Circuit found that McQueen had not properly exhausted his claims against the defendants whom he did not name in his grievance. But this does not mean that *Reed-Bey*'s waiver rule is limited to those fairly implicated in the grievance. A grievance screener reviewing McQueen's grievance would have no reason to reject it for failure to name all those involved—he would instead reasonably assume that McQueen's issue was with the one named officer. In other words, there was no apparent procedural defect in McQueen's grievance such that it could be fairly said that the screener "overlooked (or perhaps forgave)," *Reed-Bey*, 603 F.3d at 324, the procedural failing.

The second concept that Defendants seem to conflate with *Reed-Bey*'s forfeiture rule is that a grievance fails to exhaust a claim against the defendant when it does not give prison officials fair notice of the issue that later forms the basis of the lawsuit against that defendant. Indeed, in responding to Plaintiffs' objection to the Magistrate Judge's interpretation of *Reed-Bey*, Defendants argue that, in their grievances, Woroniecki, Turner, and Stephenson "were challenging their treatment by the local dental staff and the local staff's explanation of the basis for their treatment decisions." (Dkt. 153, Defs.' Resp. to Pls.' Objs. at 8; *see also id.* at 9.) The Court agrees that Plaintiffs' grievances must have provided MDOC officials with a fair opportunity to redress the problems that are the basis of this lawsuit. *See Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued. . . . But, at the same time, the grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and for many types of problems this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem."). But this is a fundamental exhaustion requirement that exists regardless of whether the MDOC's grievance policy requires prisoners to name all those involved in the issue being grieved. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) ("Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."). In other words, a defendant in a lawsuit may be precluded under *Reed-Bey* from raising a procedural defect in the grievance, but nonetheless assert that the grievance did not exhaust claims against her because the issue grieved is not the issue for which she has been sued.

In short, the Court does not understand *Reed-Bey*'s forfeiture rule to apply only to those the grievance fairly implicates. Instead *Reed-Bey* set forth a simple rule: if those charged by the MDOC to screen grievances overlook or forgive a procedural defect and process a grievance on its merits, MDOC officials cannot be heard to complain about that defect in later litigation. *See Hollins v. Curtin*, No. 1:13-CV-008, 2015 WL 1458944, at *11 (Feb. 24, 2015) ("As the Sixth Circuit has made clear, if prison officials decline to enforce their own procedural rules regarding the proper filing of prison grievances, and instead address a grievance on the merits, prison officials cannot later seek to enforce, in a judicial proceeding, the procedural rule in question." (citing *Reed-Bey*, 603 F.3d at 325–26)) *report and recommendation adopted*, 2015 WL 1458944 (W.D. Mich. Mar. 30, 2015). But the Court agrees with Defendants to the extent they maintain that a prisoner's "grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit," *Johnson*, 385 F.3d at 522.

Before applying this law to Woroniecki's, Turner's, and Johannes' grievances, one more point of law is required. Defendants did not cite the summary-judgment standard in their motion and the Magistrate Judge recited the standard that applies when the *non*-moving party bears the burden of proof at trial. (*See* R. & R. at 6–7.) But the failure to exhaust is an affirmative defense, so the *moving* party bears the burden of proof at trial. And on summary judgment this typically means that the defendant has the burden of convincing the court that no reasonable jury could find that the plaintiff exhausted his claims. *Surles v. Andison*, 678 F.3d 452 (6th Cir. 2012).

Here, though, there is an additional wrinkle. Plaintiffs do not claim that they named Washington in their grievances such that they complied with the MDOC's name-all-involved requirement. They instead claim that, under *Reed-Bey*, the right to enforce that procedural defect

has been forfeited. So Plaintiffs must show that a reasonable jury could find that grievance screeners "overlooked" or "forgave" the failure to name all those involved. *Cf. Campbell v. Grand Trunk W. R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001) ("Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run. If the defendant meets this requirement then the burden shifts to the plaintiff to establish an exception to the statute of limitations.").

With the foregoing law established, the Court applies it to the grievances at issue in this case.

As to Woroniecki, the Court finds that *Reed-Bey* precludes Washington from asserting non-exhaustion on the basis that she was not named in his grievance. In his grievance, Woroniecki complained that it was not fair for him to be removed from a first-on-first-to-receive-dentures list simply because of a policy revision implementing a two-year-post-intake wait for routine dental care. (*See* Dkt. 61-9 at Pg ID 917.) Two aspects of his grievance made the failure to name all those involved apparent to the grievance screener. First was Woroniecki's statement that he attempted to resolve his issue with "H[e]alth Care" and that he was told by "Dental" that under the new policy he would not receive dentures until June 2014. (*Id.*) These generic references do not name anyone. Second is the issue Woroniecki grieved: he complained that the revised policy should not apply to those already on the waitlist for dentures. Unless one makes the questionable assumption that only those at Woroniecki's correctional facility thought the revised policy worked this way, the issue Woroniecki raised implicates people not encompassed by "H[e]alth Care" and "Dental." In other words, the combination of Woroniecki's failure to include an individual's name in his grievance along with the fact that the groups the grievance referenced were likely not the parties at fault, gave the grievance screener more than

fair notice that Woroniecki had not "name[d] . . . all those involved in the issue being grieved." At a minimum, a reasonable jury could think that the grievance had an apparent naming defect. Thus, the fact that the screener overlooked or forgave that defect precludes Washington from complaining about it now. *See Reed-Bey*, 603 F.3d at 324–26.

But does the issue that Woroniecki grieved form the basis for his claim against Washington? (Arguably the Court should not answer this question as the focus of Washington's exhaustion argument was that Plaintiffs failed to name her in their grievances. (*See* Mot. Summ. J. at 9; Defs.' Reply to Resp. to Mot. Summ. J. at 5.) But because Defendants in their objections argue that Woroniecki's, Turner's, and Stephenson's grievances involved only local as opposed to MDOC-wide issues, the Court reaches the issue.)  The Court believes the answer is yes. The Amended Complaint asserts that "[a]t the time of the implementation of the changes in the dental policy, Woroniecki was on a waiting list so the dental impression could be taken, but he was removed from the waiting list due to a change in policy" and that "[t]his change in policy by Defendant Heyns" has delayed Woroniecki's receipt of dentures. (Am. Compl. ¶¶ 69–70.) And, as explained, Woroniecki's grievance implicates an MDOC-wide policy. As this was plausibly implemented or enforced by the Director of the MDOC, the Court finds that Woroniecki's grievance gave prison officials a reasonable opportunity to address his claim against Washington. *See Johnson*, 385 F.3d at 522.[3]

Next are Johannes' grievances. Unfortunately, they are many and no party has set them out in detail. Fortunately, the analysis is straightforward as to all but one of them. According to a Step III Grievance Report submitted by Defendants, Johannes took 16 grievances through the

---

[3] A separate question is whether the issue Woroniecki (or the other plaintiffs) grieved exhausts the five class claims (or whether the class claims can be exhausted by some other means), but this question has certainly not been raised or briefed by the parties and so the Court need not address it.

final step of the grievance process. (Dkt. 61-17 at Pg ID 1087–91.) One involved back pain (Dkt. 61-17 at 1095), so it did not exhaust Johannes' claims against Washington as alleged in this lawsuit, *see Johnson*, 385 F.3d at 522. Another apparently involved a simple request for a tooth extraction (*see* Dkt. 141-5 at Pg ID 4243), and so it too did not give prison officials fair notice of any claims in this lawsuit against Washington, *see Johnson*, 385 F.3d at 522. Two involved issues Johannes was having 2008, but his allegations in this case begin in May 2009. (*Compare* Dkt. 61-7 at Pg ID 1091, *with* Am. Compl. ¶ 28.) And eleven more all clearly name Sanders (or, in one, a few additional dental professionals) and raise issues involving only Sanders (or those professionals). (*See* Dkt. 61-17 at Pg ID 1125, 1120, 1134, 1129, 1140, 1144, 1106, 1110, 1102, 1113, 1116.) As such, the grievance screener had no apparent reason to reject these 11 grievances for failure to name all involved. Instead, like the situation in *McQueen*, the screener would have reasonably thought Johannes had named all those involved. Thus, the screener did not overlook or forgive a naming defect in these 11 grievances, and *Reed-Bey* does not apply to them.

This leaves one grievance. In ARF-0661, Johannes grieved, "Dr. Dalton Sanders failed to provide services pursuant to the policy directives *and the policy directives themselves are illegal pursuant to Michigan and/or Federal law*." (Dkt. 61-17 at Pg ID 1148 (emphasis added).) This is similar to Woroniecki's grievance: it raises an MDOC-wide issue that could prompt a grievance screener to reject the grievance for failure to name the person (or persons) involved with that broad issue. But there is an important distinction: elsewhere in the grievance Johannes complained of "the policy directives that *the correctional facilities administration* has set forth[.]" (*Id.* (emphasis added).) In other words, a grievance screener would reasonably think Johannes named the entity responsible for the challenged policy. Add to this that the grievance

23

specifically names Sanders, and the Court believes that no reasonable jury could think that the ARF-0661 grievance had an apparent naming defect. As such, *Reed-Bey* does not preclude Washington from asserting that she was not named. And she was not named in this grievance, so it too does not properly exhaust Johannes' claims in this lawsuit against the MDOC Director.

As for Turner, the Court skips the *Reed-Bey* analysis: his grievance simply did not provide fair notice of any claim against Washington. Turner grieved, "The prisoner's denture was lost during a shake down. MCF Dental has refused replacement of device stating prisoner must wait for two more years." (Dkt. 61-10 at Pg ID 925.) Although the basis of the wait was the MDOC's one-denture-every-five-years rule (a rule presumably promulgated or enforced by the Director of the MDOC), Turner ultimately did not claim that this rule was, as a general matter, unfair. The grievance respondent determined that Turner did not qualify for an exception to the five-year rule because there was no proof that MDOC staff caused the dentures to go missing, and, in appealing this, Turner claimed that there was no way for him to prove that prison staff were at fault. (*See* Dkt. 61-10 at Pg ID 923.) A dispute over whether a shakedown led to missing dentures does not implicate the Director of the MDOC. As such, the Court finds that Turner's grievance did not provide fair notice of any claim against Washington and that his claim against her is unexhausted for that reason. *See Johnson*, 385 F.3d at 522.

In sum, Washington is precluded under *Reed-Bey* from arguing that Woroniecki did not name her in his grievance and that his claims against her are unexhausted for that reason. As to Johannes' grievances, however, *Reed-Bey* does not bar Washington from asserting she was not named, and so the Court finds Johannes has not properly exhausted his claims against Washington. Turner's grievance did not give prison officials fair notice of any claim against Washington, and so his claims against her will also be dismissed as unexhausted. (As with

24

Stephenson, the Court does not opine on the viability of the class or subclasses Johannes and Turner sought to represent.)

**D.**

Because the Court has found that Washington cannot complain that Woroniecki did not name her in his grievance, it will consider Defendants' objection that the Magistrate Judge did not address their exhaustion argument based on timing. (Defs.' Objs. at 1–6.) In particular, Defendants assert that Woroniecki (and Turner and Stephenson) did not exhaust their claims because they did not complete the grievance process before Johannes filed this lawsuit. (*See id.*)

This argument is not persuasive. The relevant question is not whether Woroniecki completed the grievance process before *Johannes* sued in federal court, but whether Woroniecki completed the grievance process before *Woroniecki* sued in federal court. After all, the "point of the PLRA exhaustion requirement is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Reed-Bey*, 603 F.3d at 324. Because Woroniecki waited to become a plaintiff in this case until after he gave the MDOC a complete opportunity to remedy his grievance, each of these aims of PLRA exhaustion was fulfilled. A number of courts agree with this analysis. *See Mathis v. GEO Grp., Inc.*, No. 2:08-CT-21-D, 2011 WL 2899135, at *5 (E.D.N.C. July 18, 2011) ("Each plaintiff exhausted certain administrative remedies before joining the action, but after other inmates originally filed the action. Courts facing similar procedural postures have allowed the 'new' inmate's claims to proceed so long as the original inmates had exhausted their claims before filing the action and the newly added inmates exhausted their 'new' claims before being added." (citing cases)).

25

Defendants suggest that a number of courts disagree. But the cases Defendants cite are not on point because none addressed the situation where prisoners joined a lawsuit only after they completed the grievance process. *Cf. Utley v. Campbell*, 84 F. App'x 627, 629 (6th Cir. 2003) (holding that prisoner was not permitted to add claims to his lawsuit that he did not exhaust until after he filed suit); *Lee v. Birkett*, No. 09-10723, 2009 WL 3465210, at *1 (Oct. 23, 2009) (noting that some cases have held that a "plaintiff may not amend his complaint to bring claims that were not exhausted prior to the initiation of the present lawsuit") *objections overruled*, 2009 WL 3806262 (E.D. Mich. Nov. 12, 2009); *Jordan v. Caruso*, No. 2:08-CV-261, 2010 WL 3220143, at *12 (W.D. Mich. Aug. 10, 2010) (finding that prisoner was required to complete grievance process prior to filing his suit as opposed to prior to filing his amended complaint).

Defendants also simply state, with no developed argument or citation to case law, that, under Rule 15(c), Woroniecki's, Turner's, and Stephenson's claims relate back to the date Johannes filed the original complaint. (Defs.' Objs. at 3.) As a general matter, the Court does not address conclusory arguments. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."). And that general rule applies with considerable force in this case for two reasons. First, the primary purpose of the relation-back doctrine is to allow a plaintiff to avoid a statute-of-limitations bar, *see* Charles Alan Wright *et al.*, 6A Federal Practice & Procedure § 1496 (3d ed.)—Defendants have not cited any case applying the doctrine to hold that plaintiffs added to a lawsuit must exhaust their administrative remedies prior to the filing of the original complaint. Second, the Sixth Circuit has stressed that the text of Rule 15(c) allows relation back for certain added claims and certain added defendants, but says nothing about

26

added plaintiffs. *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010); *see also In re Kent Holland Die Casting & Plating, Inc.*, 928 F.2d 1448, 1449 (6th Cir. 1991) ("[T]he precedent of this circuit clearly holds that 'an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations.'"). As such, Defendants' mere citation to Rule 15(c) does not carry the day.

Accordingly, the Court is not persuaded by Defendants' argument that Woroniecki did not properly exhaust because he completed the grievance process only after Johannes filed this case.

## E.

Remaining are Plaintiffs' two objections to the Magistrate Judge *not* ruling on two issues. In particular, Plaintiffs ask the Court to rule on Defendants' contention that any of Johannes' claims arising before April 28, 2011 are barred by the applicable statute of limitations and to hold that Washington is a proper defendant in this litigation.

The reason Plaintiffs ask the Court to reach these issues—even though the Magistrate Judge did not—is to hasten this litigation. As to the issue of whether Washington is a proper defendant, Plaintiffs say: "If this Court does not resolve this issue now, the Magistrate Judge will have to issue another Report based on Defendants already filed Motion for Summary Judgment after remand, and one of the parties will again file Objections. Before discovery is undertaken again in this case another 4-8 months will pass. During that time period, Plaintiffs and the proposed class members will continue to suffer pain, teeth will unnecessarily be extracted, and restorable teeth will be become un-restorable." (Pls.' Objs. at 21.) Plaintiffs urge the Court to rule on the statute-of-limitations issue for a similar reason. (Pls.' Objs. at 20 n.12.)

27

The Court declines to resolve these two issues at this time. It is doubtful that addressing these issues will substantially advance the litigation given the host of outstanding motions. Indeed, Plaintiffs have filed a "Motion for Guidance on Outstanding Motions" asking this Court to rule on yet another of Defendants' summary-judgment arguments and *six* other pending motions. (*See generally* Dkt. 143.)

On the other hand, Plaintiffs are entitled to have their case decided expeditiously (with allowances for the complex nature of the case). As such, the Court will schedule an immediate hearing and status conference to resolve Plaintiffs' Motion for Guidance. And because resolving that motion requires this Court to rule on motions now pending before the Magistrate Judge, the Court, for the time being at least, will vacate the order of reference.

## IV.

For the reasons given, the Court SUSTAINS IN PART and OVERRULES IN PART Plaintiffs' Objections (Dkt. 141), OVERRULES Defendants' Objections (Dkt. 139), and ADOPTS IN PART the Report and Recommendation (Dkt. 132). In particular, Stephenson's claims against Sanders and Washington are DISMISSED AS MOOT, Woroniecki's and Turner's claims against Sanders are DISMISSED WITH PREJUDICE, and Johannes' and Turner's claims against Washington are DISMISSED WITHOUT PREJUDICE. The remaining claims of the Amended Complaint remain.

The Court VACATES the order of reference to the Magistrate Judge (Dkt. 15) only to resolve Plaintiffs' Motion for Guidance. The parties are to appear for a hearing and status conference on that motion (and all related motions and issues) on April 14, 2016 at 9:30 a.m.

SO ORDERED.


Dated: March 31, 2016                    s/Laurie J. Michelson
                                         Hon. Laurie J. Michelson
                                         United States District Court Judge


CERTIFICATE OF SERVICE


The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 31, 2016


                                         s/Johnetta M. Curry-Williams
                                         Acting Case Manager to
                                         Honorable Laurie J. Michelson