UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOEY DEARDUFF,
MOSSES KIRSCHKE,
JAMES McRAE,
ANTHONY RICHARDSON,
BRYANT SLONE,
DARRYL J. SMITH,
TINA STOLL, and
STANLEY WILLIAMS,

    Plaintiffs,

v.

HEIDI WASHINGTON,

    Defendant.

Case No. 14-11691
Honorable Laurie J. Michelson
Magistrate Judge Mona K. Majzoub

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT [177]

Plaintiffs allege that the dental care provided by the Michigan Department of Corrections is so deficient that their incarceration amounts to cruel and unusual punishment prohibited by the Eighth Amendment. For instance, Plaintiffs challenge MDOC's written policy of denying inmates routine dental care (a term defined by the policy) during their first two years of incarceration. Plaintiffs also allege that after completing two years of incarceration, and thus eligible for routine dental care, they are placed on long wait lists for dental treatment. And, say Plaintiffs, MDOC has a policy or practice of not providing timely periodontal diagnosis and treatment. Plaintiffs also say they are not alone: they seek to represent several large classes of prisoners in MDOC's custody (which, collectively, encompass most or perhaps all of the Department's 43,000 inmates).

Defendant Heidi Washington, the Director of MDOC, has filed an oddly-timed motion to dismiss or for summary judgment. (R. 177.) The motion only seeks partial dismissal, so even if granted, the case will proceed. Further, Plaintiffs have not even finalized their class claims (despite this Court's repeated urging to do so) and, although the situation was somewhat different when Washington filed her motion, the parties are now in the midst of discovery related to class certification. Further still, our District's local rules contemplate that a party will usually file only one motion for summary judgment. *See* E.D. Mich. LR 7.1(b)(2) ("A party must obtain leave of court to file more than one motion for summary judgment."). As the motion has not been withdrawn, the Court will decide it.

Washington seeks dismissal of or judgment on all claims brought by James Taylor, Jesse Knowlton, Khalil Kizy, Reginald Pea, and Bryan Slone. (*See* R. 177.) She also seeks summary judgment on all but one of Joey Dearduff's claims. Since the motion was filed, the parties have agreed to dismiss Taylor, Knowlton, Kizy, and Pea. (R. 183, 184, 207, 208.) Thus, what remains of Washington's motion is her argument that Slone did not exhaust administrative remedies for any of his claims before filing suit and that Dearduff only exhausted administrative remedies as to one of his claims before filing suit. (*See* R. 177, PID 4967, 4969, 4976–77.)

Under the Prison Litigation Reform Act, a prisoner cannot bring a claim to federal court "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017). To exhaust available remedies for a claim, a prisoner must complete the grievance process set by the Michigan Department of Corrections before filing the claim in court. *See Jones v. Bock*, 549 U.S. 199, 218 (2007); *Mattox*, 851 F.3d at 590. This (typically) means obtaining a decision at "Step III," the third and last step of MDOC's grievance process. (*See* R. 177, PID 4996.) The failure to exhaust is an

affirmative defense, so, on summary judgment, Washington must convince the Court that, even accepting Dearduff and Slone's version of the facts, no reasonable jury could find that they exhausted their administrative remedies. *See Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012).

The Court starts with Washington's claim that Dearduff failed to exhaust, then turns to her like claim as to Slone. As will be explained, some of Dearduff's and Slone's claims will be dismissed as unexhausted but others will remain in the case.

**I.**

When a defendant asserts that a plaintiff has not exhausted his administrative remedies for the claims he has brought to court, identifying those claims is a good place to start. Washington believes that Dearduff has asserted three claims in this case: that, in violation of the Eighth Amendment, MDOC denied him (1) dental care based on the two-year rule, (2) partial dentures (both during and after the two-year period), and (3) adequate periodontal treatment. (*See* R. 177, PID 4969.) The Court proceeds—for the moment—on the assumption that Dearduff has only brought these three claims to court.

Washington says Dearduff has only exhausted remedies for one of these three claims: the claim that he was wrongly denied partial dentures. (R. 177, PID 4969.) According to her, "Dearduff did not file a grievance regarding either his claim of denial of care during the two-year waiting period[] or his claim of lack of treatment for periodontal disease." (R. 177, PID 4977.)

As to the latter assertion, Dearduff concedes that he did not file a grievance regarding the lack of periodontal treatment. (R. 182, PID 5180.) But, Dearduff argues, he was "not able to exhaust [his] administrative remedies due to Defendant's deliberate actions to hinder and misinform [him] as to [his] dental conditions." (R. 182, PID 5170.) In support of this argument,

Dearduff submits his own affidavit. (R. 182, PID 5180.) There, he avers that he was only "recently" informed that, at his intake exam, he had been diagnosed with periodontal disease. (R. 182, PID 5180.) Dearduff adds: "if I had been informed of the periodontal disease and failure to treat, I would have filed a grievance." (R. 182, PID 5181.)

It is not clear how Dearduff's argument works. If his point is that MDOC personnel concealed the diagnosis until it was too late for him to comply with the grievance process, it does not account for the fact that MDOC's grievance policy directive permits a prisoner to file a grievance after he learns of the wrong: "Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days *after becoming aware of a grievable issue*, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." (R. 177, PID 4993 (emphasis added).)

Or perhaps Dearduff's point is that the wrong has been concealed so long, there are now no longer any administrative remedies "available" for him to exhaust. *See* 42 U.S.C. § 1997e(a). But he has not developed that line of argument and there is an obvious rebuttal: he can grieve to get treatment for his periodontal disease. *Cf. White v. Bukowski*, 800 F.3d 392, 395 (7th Cir. 2015) (indicating, where baby's birth was first indication to detainee that she had been given inadequate medical care during her pregnancy, but jail could not provide compensation for the baby's birth defects, that there were no "available" administrative remedies to exhaust). Indeed, Dearduff seeks no damages in this lawsuit, only for better dental care in the future.

Maybe Dearduff's point is simply that he could not file a grievance before filing this lawsuit because he did not learn of his periodontal disease until after he became a plaintiff in this case. But Dearduff did not become a plaintiff in this suit until the filing of the Third Amended

Complaint. And in that complaint, Plaintiffs plead, "at the initial dental examination, Dearduff was diagnosed with 'early moderate periodontal disease' but was denied treatment until 12/10/15." (R. 168, PID 4829.) Thus, Dearduff knew of his periodontal disease before Plaintiffs filed the Third Amended Complaint. Otherwise, what "evidentiary support" or "likely" evidentiary support did he have to make this allegation? *See* Fed. R. Civ. P. 11. So even if dental staff hid the diagnosis necessary for Dearduff to grieve until, in his words, "recently," "recently" was still before he decided to become a party to this suit.

In short, Dearduff's argument that MDOC somehow thwarted his ability to exhaust his administrative remedies before filing suit is unpersuasive.

Washington's assertion that Dearduff did not exhaust administrative remedies for his claim based on the two-year rule presents a closer call. In support of her assertion, Washington primarily relies on two pieces of evidence: a grievance report and a grievance that Dearduff pursued through Step III, i.e., an exhausted grievance. (*See* R. 177, PID 4969, 5050–55.) As for the exhausted grievance, it does appear, as Washington implies, unrelated to the two-year rule. (*See* R. 177, PID 4969, 5054.) And the report, titled "MDOC Prisoner Step III Grievance Report[:] May 2009 to Present," lists only this grievance. (R. 177, PID 5050.) Although Washington offers no further explanation of this report, she has provided the Court with the grievance policy directive; it states, "Each grievance received at Step III, including those which may be rejected, shall be logged on a computerized grievance tracking system." (R. 177, PID 4996.) Taking all of this together then, it appears that the Grievance Report shows all grievances that Dearduff has appealed to the final step of the grievance process (from May 2009 to present), it lists only one grievance, and that one grievance is not related to the two-year rule.

The Court would have preferred Washington to have explicitly said this—via an affidavit explaining how the grievance report was generated—rather than leaving it for the Court to infer. As this Court said in a prior case: "A supporting affidavit does more than authenticate the [grievance report]: it is critical evidence that the [r]eport includes every one of [the prisoner's] Step III grievances received by the Grievance and Appeals Section in Lansing. Thus in some cases, a [grievance report], standing alone, will not be evidence of non-exhaustion that no reasonable jury would be free to disbelieve." *Ward v. Luckey*, No. 12-CV-14875, 2013 WL 5595350, at *5 (Oct. 11, 2013) (Michelson, M.J.) (internal quotation marks omitted), *report and recommendation adopted by*, 2013 WL 5595350 (E.D. Mich. June 18, 2014).

Even so, the Court finds summary judgment on Dearduff's challenge to the two-year rule proper. Washington's brief suggests that the Grievance Report shows all of Dearduff's Step III grievances. (*See* R. 177, PID 4969.) Counsel for Plaintiffs is experienced in prisoner civil-rights litigation. Yet in responding to Washington's brief, Plaintiffs make no suggestion that the Grievance Report is under-inclusive or really make any argument directed to Dearduff's exhaustion of his claim based on the two-year rule. (*See generally* R. 182.) Given that the grievance policy directive says all Step III grievances are logged in a database, that the Grievance Report is a query of that database, that the Grievance Report lists only one grievance, that the listed grievance appears unrelated to the two-year rule, the Court narrowly concludes that no reasonable jury would find that Dearduff exhausted his claim that he was denied necessary dental care during his first two years in MDOC's custody. *See Townsel v. Raupp*, No. 13-CV-10163, 2013 WL 6842474, at *5 (Nov. 27, 2013) (Michelson, M.J.) ("[Plaintiff] . . . does not contest [Defendant's] implication that the [Grievance] Report shows every one of her Step III grievances received by the Grievance and Appeals Section between May 2009 and the date of

the Report, February 5, 2013. Accordingly, the Court believes that, on this record, no reasonable jury would have good reason to second guess [Defendant's] implication."), *report and recommendation adopted by*, 2013 WL 6842474 (E.D. Mich. Dec. 27, 2013).

Before turning to Slone's claims, the Court returns to the assumption it made earlier: that Washington correctly identified Dearduff's claims raised in the Third Amended Complaint. While this Complaint is not a model of clarity, it appears that Dearduff has one claim Washington did not identify. Plaintiffs have challenged the long wait lists for dental care in MDOC's prisons. And, although pled in another section of the complaint, Dearduff alleged, "No partial denture was provided during the two-year quarantine and [I] was then placed on a waiting list. [I] still ha[ve] not received partial dentures." (R. 168, PID 4835.) The Court thus finds that Dearduff has brought four claims in all: MDOC violated the Eighth Amendment by (1) denying necessary dental care during the first two years of incarceration, (2) denying periodontal treatment, (3) denying partial dentures, and (4) maintaining long wait lists for dental care.

As explained, Washington has shown that the first two claims are unexhausted. And, as noted, Washington agrees that the third claim is exhausted. (*See* R. 177, PID 4969.) As for the fourth, because Washington did not identify the claim, she has not argued that it is unexhausted. So Dearduff's claims based on periodontal treatment and the two-year rule will be dismissed, but his claims based on the denial of dentures and the long wait lists will survive.

**II.**

Turning to Slone, the Court again begins the exhaustion analysis by identifying the asserted claims. Slone has raised two: that he was denied necessary dental care during his first two years of incarceration and that he has not been given adequate treatment for periodontal disease. (*See* R. 168, PID 4827, 4830, 4834.) (One allegation pertaining to Slone appears in a

7

section of the Third Amended Complaint about long wait lists, but that allegation is just that Slone's fractured tooth was not repaired because of the two-year rule. (*See* R. 168, PID 4830.) So the Court does not find that Slone has pled a waitlist claim.)

Taking the periodontal-treatment claim first, the Court concludes that no reasonable jury could find it exhausted. Washington makes the same argument regarding Slone's periodontal-treatment claim as she did for Dearduff's. (*See* R. 185, PID 5188.) And Slone responds in almost exactly the same way as Dearduff: that dental staff never told him that he had been diagnosed with periodontal disease and so it was not possible for him to grieve the issue. (*See* R. 182, PID 5175.) The Court's analysis likewise tracks. Slone has not shown that there is no relief a grievance could provide. And the Third Amended Complaint, which added Slone as a plaintiff, states, "Slone was diagnosed with moderate to advanced periodontal disease and an appropriate treatment plan was not created." (R. 168, PID 4834.) Thus, like Dearduff, Slone knew (or otherwise lacked a good-faith basis for pleading) that he had periodontal disease before he became a plaintiff in this suit. His argument that MDOC kept him from grieving inadequate treatment for periodontal disease before filing suit is thus unpersuasive and his periodontal claim will be dismissed as unexhausted.

The Court reaches a different conclusion as to Slone's claim that he was denied needed dental care during his first two years in MDOC's custody.

First, Slone arguably submitted a grievance pertaining to the two-year rule. He avers that when he was at the Muskegon Correctional Facility (MCF), he submitted a grievance "about dental staff not pulling my tooth." (R. 182, PID 5174.) Although this statement does not by itself indicate that he grieved the two-year rule, it does when coupled with another fact and the allegations of the Third Amended Complaint. The fact: Slone was at MCF from April 25, 2013,

and May 15, 2014, a time period that covers February 2014. (R. 185, PID 5211.) The allegations: Slone pleads that during February 2014, he was suffering from a broken tooth but was denied permanent restoration due to the two-year rule. (R. 168, PID 4862.) Taking all of this, a reasonable jury could find that Slone submitted a grievance about the two-year rule.

So the question becomes whether Slone exhausted that grievance. Slone admits that he did not, but he asserts that he could not. In an affidavit, Slone says that when he submitted the grievance, "Ms. Simmons, the grievance coordinator, returned that entire grievance to me." (R. 182, PID 5174.) Slone further avers: "Ms. Simmons attached a note to the grievance stating, 'You can not grieve a policy.' I sought a second step grievance form but Ms. Simmons refused to provide me that second step grievance form." (R. 182, PID 5174.) If Slone's account is to be believed—i.e., that he tried to submit a grievance and it was rejected and he then tried to appeal to Step II but it was not permitted—his failure to exhaust his claim based on the two-year rule would be excused. After all, a prisoner need only exhaust "administrative remedies as are *available*." 42 U.S.C. § 1997e(a) (emphasis added); *see also Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015) ("A prisoner's lack of compliance may be excused if the administrative remedies are not available, but this court has required a prisoner to make 'affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable.'" (quoting *Napier v. Laurel Cnty.*, 636 F.3d 218, 223 (6th Cir. 2011)).

Washington argues that Simmons' account is not to be believed, or, in her words, is "demonstrably not true." (R. 185, PID 5191.) In support, Washington submits an affidavit from Simmons. (R. 185, PID 5211–12.) Simmons avers that MCF maintains a grievance database (apparently this is a separate database from the Step III database discussed above), and that "[i]f Mr. Slone had filed a grievance concerning dental care during his stay at MCF that was rejected

9

for any reason or returned, that grievance would have been recorded by me in the MCF grievance database." (R. 185, PID 5212.) Only one grievance appears on the MCF database printout, and it is not related to dental care. (*See* R. 185, PID 5199, 5212.) (And, unlike the unaccompanied Step III grievance report, Simmons avers that she "searched the [MCF] database for any grievances filed by Mr. Slone" and that the search returned "one Step I grievance." (R. 185, PID 5122.)) Simmons also avers, "I have never denied prisoner Slone a Step II grievance form." (R. 185, PID 5211.)

Although Washington, via Simmons' affidavit and the MCF grievance database report, has produced very strong evidence that Slone did not exhaust a grievance relating to dental care while at MCF, the evidence is not so indisputable that every jury would be compelled to accept it. *Cf. Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). The database is updated by a human, and humans make mistakes. And in this case, the human responsible for logging rejections in the database is the human that Slone says would not take his grievance or give him a Step II form. A reasonable jury, crediting Slone's account, could infer that MCF database was accidentally (or purposefully) not updated to record the rejection. In other words, "[w]hat this case poses is a classic situation for submission to a factfinding jury that can . . . decide whose version should be accepted and hence which side should prevail." *McKinney v. Datakom, Inc.*, No. 01 C 817, 2001 WL 1558282, at *2 (N.D. Ill. Dec. 6, 2001); *see also Russell v. Bd. of Trustees of Univ. of Illinois at Chicago*, 243 F.3d 336, 340 (7th Cir. 2001) ("[S]ummary judgment is a singularly inappropriate time to resolve a 'he

said, she said' kind of dispute."). Accordingly, Washington has not shown that every reasonable jury would find that Slone failed to exhaust a claim based on the two-year rule.

**III.**

In sum, no reasonable jury could find that Dearduff exhausted administrative remedies for his claims based on the two-year rule or periodontal treatment. Those claims are DISMISSED WITHOUT PREJUDICE. But Dearduff has, by Washington's acknowledgement, exhausted his claim based on the denial of partial dentures. As for his claim of being placed on a long waitlist for dental care, Washington has not sought summary judgment on that claim.

As for Slone, no reasonable jury could find that he exhausted administrative remedies for his claim based on periodontal treatment. That claim is DISMISSED WITHOUT PREJUDICE. But a reasonable jury could find he exhausted his claim of inadequate dental care during the first two years of his incarceration.

Washington's motion to dismiss or, in the alternative, for summary judgment (R. 177) is thus GRANTED IN PART and DENIED IN PART.

The Clerk of Court is ORDERED to amend the case caption to match that of this opinion and order. Plaintiff Michael Woroniecki is deemed DISMISSED because he was not listed a plaintiff in the Third Amended Complaint.

Finally, the Court again urges the parties to work together to crystalize the class claims so that they can be articulated succinctly and finally. The Court has given ample guidance on this issue. (*See* R. 186, PID 5324 n.1; R. 191, PID 5368.) Finalizing the class claims will not only focus discovery and dictate how a motion for class certification will be briefed and decided, but also help identify the necessary class representatives. The Court again notes that a class *claim* is

not the same as defining a *class*. (*See* R. 191, PID 5368.)

SO ORDERED.

Dated: September 12, 2017

s/Laurie J. Michelson
LAURIE J. MICHELSON
U.S. DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 12, 2017.

s/Keisha Jackson
Case Manager