UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOEY DEARDUFF, NICHOLAS
BAILEY, MELVIN BROWNES,
TIMOTHY BROWNELL, TIMOTHY
FLESSNER, JAMES GUNNELS,
LEON MEANS, JOHN PORTER,
ANTHONY  RICHARDSON, CAROL
ROMAN, BRYAN SLONE and TINA
STOLL, on behalf of themselves and all
other similarly situated,

        Plaintiffs,

vs.

HEDI WASHINGTON, Director,
Michigan Department of Corrections,
and JONG CHOI, Dental Regional
Director, they are sue in their official
capacities,

        Defendants.

_____/

Case No. 14-11691-LJM-MKM
Hon. Laurie J. Michelson
Maj. Judge Mona Majzoub

**FOURTH AMENDED CLASS ACTION COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF**

**PARTIES AND FACTS**

1.    Plaintiff **JOEY DEARDUFF**, 732738 (hereafter **Dearduff**) is/was at

all times relevant a prisoner confined with the Michigan Department of Corrections

(hereafter MDOC) who sought dental care that was denied or delayed in violation

of the Eighth Amendment. In December 2013, **Dearduff** requested dental

treatment including partial dentures ("partials") due to the pain that he was suffering, but was denied partials and other treatment deemed to be routine because he failed to meet the policy of being confined at least 24-months. In June 2015 when his 24-months wait was completed, Dearduff requested a dental examination so he could receive partial dentures due to the pain he suffered. He was informed that he was "placed on a list." Dearduff has continued to suffer pain and is unable to masticate food, eat hard foods or chew due to the loss of teeth extracted by agents of the Defendant and their refusal to provide partials and timely routine treatment.

2.      Plaintiff **NICHOLAS BAILEY, 970872** (hereafter **Bailey**) is/was at all times relevant a prisoner confined with the MDOC who sought dental care that was denied or delayed in violation of the Eighth Amendment.[1] Upon his imprisonment in October 2016, **Bailey** wrote dental that he needed dentures because he had no teeth and could not eat properly. He was denied dentures because he had not been confined for 24-months.

3.      Plaintiff **TIMOTHY BROWNELL, 656313** (hereafter **Brownell**), is/was at all times relevant a prisoner confined with the MDOC who sought dental care that was denied or delayed in violation of the Eighth Amendment. Starting in

---

[1] Bailey had filed in the Western District of Michigan. This case was transferred to the Eastern District of Michigan and I believed was to be consolidated with this matter. It has not yet been consolidated.

January 2017, **Brownell** brought to the attention of the dental that he had a bad toothache and he had not received a cleaning for approximately 16 or 17 months. He was placed on the routine wait list and was informed that he would be called out when it was his turn. Over the next 6 to 7 months, Brownell submitted almost weekly kites informing dental that he was in pain, part of a tooth filling broke off, and more of that filling broke off. He saw the dentist in May 2017 and was informed that his condition had deteriorated such that he now needed root canal, but the MDOC does not provide such. Brownell was told that the only thing that could be done was extraction of the tooth.

4.      Plaintiff **MELVIN BROWNES**, 172387 (hereafter **Brownes**), is/was at all times relevant a prisoner confined with the MDOC who sought dental care that was denied or delayed in violation of the Eighth Amendment. In March 2016, **Brownes** begin his incarceration with MDOC.  Once he arrived at the first prison, he sought a routine dental exam, so he could receive a treatment plan and appropriate treatment. He was informed he could not receive routine dental care, including cleaning, until he had been imprisoned for 24-months. At the intake dental examination, Brownes was diagnosed with moderate periodontal disease ("perio") and heavy calculus and he was denied appropriate treatment because he had not been imprisoned for at least 24-months. This failure to treat allowed his periodontal disease to become worst and created other dental issues.

5. Plaintiff **TIMOTHY FLESSNER,** 703698 (hereafter **Flessner**), is/was at all times relevant a prisoner confined with the MDOC who sought dental care that was denied or delayed in violation of the Eighth Amendment. In August 2016, **Flessner** was confined with MDOC and requested dental care. He sought the repair of two teeth by dental staff. It was determined that one tooth was salvageable but due to Flessner not having completed the 24-months imprisonment, no work could be done on that salvageable tooth. As a result of the 19-month delay in providing dental care, tooth #29 deteriorated such that it was not salvageable. Further, on April 14, 2017, Flessner was informed that when his 24-months were up in two months he could kite to have the tooth repaired. If he kited in two-months, Flessner would then have been placed on a waiting list for cleaning and then another waiting list for the actual dental care needed. The grievance responder told Flessner that an outside dentist could repair these teeth if he could pay for that care.

6. Plaintiff **JAMES GUNNELS**, 186011 (hereafter **Gunnels**), is/was at all times relevant a prisoner confined with the MDOC who sought dental care that was denied or delayed in violation of the Eighth Amendment. In October 2016, **Gunnels** entered the prison system and he sought dentures because he had no teeth. He was denied any dental services as to his request for dentures because he had not yet been imprisoned for 24-months. Gunnels informed dental staff that he

was in great pain and suffering, which resulted from his inability to masticate food. He was told to kite back on or after October 22, 2018.

7.     Plaintiff **LEON MEANS, 131310** (hereafter **Means**), is/was at all times relevant a prisoner confined with the MDOC who sought dental care that was denied or delayed in violation of the Eighth Amendment. In July 2015, **Means** arrived at the MDOC edentulous and promptly requested care because he was in pain and his gums were torn from trauma resulting from chewing. He was told that he had to complete 24-months of imprisonment, and he could then submit a kite for dental care. While at Saginaw Prison in 2015, he again requested dentures and a mechanical soft diet but was again told to wait to complete 24-months imprisonment to received these services.

8.     Plaintiff **JOHN PORTER**, 154033 (hereafter **Porter**), is/was at all times relevant a prisoner confined with the MDOC who sought dental care that was denied or delayed in violation of the Eighth Amendment. In May 2017, prison staff broke **Porter's** upper and lower dentures. Porter sought to have these replaced but dental refused to replace based on the dental policy that dentures can only be replaced every five years and he had received those dentures in November 2014. After he received the dentures and up to them being broken by prison staff, Porter had four additional teeth removed, which would have prevented the broken dentures from being repaired due to poor occlusion. The dentist stated that the

dentures were denied not because Porter's partial edentulism did not constitute a serious medical need but because of dental policy that limited new dentures to every five years.

9.    Plaintiff **KENNETH REEVES, 717138** (hereafter **Reeves**), is/was at all times relevant a prisoner confined with the MDOC who sought dental care that was denied or delayed in violation of the Eighth Amendment. In January 2017, **Reeves** was incarcerated. At the intake examination it was determined that he had early periodontal disease and treatment of this disease will not be provided until after a dental cleaning.  Reeves sought a dental cleaning but was told that he can kite in January 2019 for such care after he had completed the 24-months imprisonment.

10.    Plaintiff **ANTHONY RICHARDSON,** 235980 (hereafter **Richardson**), is/was at all times relevant a prisoner confined with the MDOC who sought dental care that was denied or delayed in violation of the Eighth Amendment. In February 2014, **Richardson** was diagnosed with moderate periodontal disease. He sought treatment but none was provided. In February 2016, Richardson asked for treatment for pain in his teeth and requested periodontal treatment but was denied. On or about June 9, 2016, Richardson requested treatment for pain in his upper teeth. The Step-two grievance response states that Richardson "request 'treatment for periodontal disease (and) cavity filling – no

extraction.'" This grievance response goes on to state the only treatment offered Richardson by the dentist was extraction. The dentist stated, "grievant has been diagnosed with periodontitis of the affect teeth (molars #1 & 2). Extraction of the teeth has been recommendation by the dentist." Richardson suffered pain in his teeth and gums and in the area of his molars and abscesses in his gums. When engaged in flossing, Richardson's gums would bleed. Over time, if periodontal disease is not treated, the bone that supports the teeth may deteriorate and the prisoner is subjected to further dental issues. Defendant has a policy and/or practice of not providing care to those with periodontal diseases. Based on the nature of periodontal disease, it is common knowledge among dentists that periodontal disease should be treated timely or it may progress and cause other dental issues.

11.    Plaintiff **CARL ROMAN**, 250050 (hereafter **Roman**), is/was at all times relevant a prisoner confined with the MDOC who sought dental care that was denied or delayed in violation of the Eighth Amendment. In January 2017, **Roman** was incarcerated with the MDOC. Dental staff determined that he had early moderate periodontal disease. Roman sought dental care, including a cleaning to deal with the diagnosis of early periodontal disease. Due to his not being imprisoned for at least 24-months at the time of his request, MDOC refused to provide any dental care deemed to be routine. Roman was told to kite after

1/19/2019 to receive dental care.  Due to Roman not being imprisoned for 24-months when he sought a dental cleaning, no exam was provided to him by the dentist, no treatment plan was treated, and he wan not provided treatment for his early periodontal disease.

12.    Plaintiff **BRYAN SLONE**, 296250 (hereafter **Slone**) is/was at all time relevant a prisoner confined with the MDOC who sought dental care that was denied or delayed in violation of the Eighth Amendment. In February 2014, **Slone** sought dental care for a broken tooth that was painful but was denied permanent restoration due to the 24-months imprisonment wait policy. Due to Defendants' policy,  the repair of a fractured tooth is considered routine care, and thus, Slone had to suffer and endure tooth pain for at least the 24-months wait, or agree to extraction of the restorable fractured tooth.  Such a policy subjects prisoners to the risk of preventable pain as well as tooth morbidity and tooth mortality.  On the other hand, prisoners who refuse the extraction must endure tooth pain until they emerge from quarantine – waiting for as much as 24-months. During the 24-months wait, a restorable tooth may become unrestorable.

13.    Plaintiff **TINA STOLL**, 875525 (hereafter **Stoll**) is/was at all time relevant a prisoner confined with the MDOC who sought dental care that was denied or delayed in violation of the Eighth Amendment. During her first 24-months of confinement, **Stoll** had at least 20 teeth extracted but was denied

dentures because she had not been imprisoned for at least 24-months. The initial Intake Exam was inadequate because it did not produce a treatment plan or dental probing. Even though Stoll had requested a teeth-cleaning exam and was placed on a waiting list on August 22, 2013, Stoll did not receive the cleaning for more than 2 ½ years later on February 29, 2016. Stoll informed dental staff that while eating food her gums would bleed; she would swallow food whole and experience vomiting and other digestive problems every time she ate. She was subjected to unreasonable delay in the production of dentures that caused pain and other discomforts. She was also subjected to an untimely treatment plan, which resulted in Stoll being subjected to a cycle of episodic care, i.e., frequent toothaches; and the dental staff did not offer her a mechanical soft diet.

14.   Defendant **HEIDI WASHINGTON** (hereafter Washington) is the Director of the Michigan Department of Correction and is sued in her official capacity. At all times relevant hereto, she has acted under color of state law. She is responsible for the operation of the State of Michigan prisons and directs its policies and procedures pertaining to the providing of dental care. Presently she has one Regional Dental Administrators who is responsible for enforcing her written and verbal policies and practices.

15.   Defendant **JONG CHOI** is the Chief Dental Officer for MDOC and is sued in his official capacity. At all times relevant hereto, he has acted under

color of state law. Also, at all times mentioned in this complaint, Defendant Choi was an agent of Defendant Washington and was acting within the course and scope of this agency, and all acts alleged to have been committed by Defendant Choi in the ensuring that the dental policy was implemented was committed on behalf of Defendant Washington.

## JURISDICTION

16.     This action arises under the United States Constitution and 42 U.S.C.. 1983. Jurisdiction is proper in this court pursuant to 28 U.S.C. 1331 and 1343(a)(3).

17.     This Court has jurisdiction over Plaintiffs' claims for declaratory and injunctive relief pursuant to 28 U.S.C. 2201and 2202.

18.     Pursuant to Fed.R.Civ.P. 23(b)(2), Plaintiffs seek class certification based on the method and manner that dental care is provided to those confined within the prison system today and in the future.

## VENUE

19.     Venue is proper in this Court pursuant to 28 U.C.C. 1391(b)(1) because Defendant resided in the Eastern District of Michigan; venue is also peroper pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Eastern District of Michigan.

## FACTUAL ALLEGATIONS

20.    Defendant Washington is the Director of MDOC and is responsible for ensuring that all prisoners receive dental care that does not subject the Plaintiffs, or the proposed class members, to pain in violation of the Eighth Amendment.

21.    Defendant Washington is responsible for operation of all prison dental facilities, which current house approximately 39,000 prisoners. One of the missions of the MDOC is to provide dental care on a professional manner like dental care provided in the communities.

22.    Defendant Choi presently is the Chief Dental Officer for the entire MDOC and is responsible for ensuring that the MDOC's Dental Protocol and Policy Directive 04.06.150 are implemented.

23.    There are approximately 8,000 prisoners who entered and/or are returned to prison as parole violators each year that are subjected to the 24-months wait, which prevents and prohibits routine dental care even if the request is for treatment of painful conditions. Routine dental care (per MDOC Policy Directive 04.06.150 [R.124-8]) includes all dental care (excluding urgent and emergent dental care), such as cleaning, examinations and treatment plans, periodontal screening and treatment, fillings, and dentures.

24.     Any prisoners that has a dental issue involving pain during this 24-months wait will be refused dental care, such as filling of a cavity, and will be required to wait for the completion of a 24-months imprisonment or will be offered extraction of the tooth even if that tooth is savagable.

25.     Plaintiffs and the Class members were denied routine dental care based on the single fact that they had not completed the 24-months imprisonment mandated by Policy Directive 04.06.150.

26.     Prior to October 2013, MDOC did not restrict the types of dental care provided to prisoners who entered the prison system.  There existed no restrictions that those who had not been imprisoned for less than 24-months could not receive routine dental care. The only restriction, if it could be called a restriction, was that MDOC did not employ sufficient medical staff that a wait list of approximately 8,000 prisoners had developed.

27.     In 2013, MDOC decided to restrict, or one could say narrow, the type of dental care that would be provided during the first 24-months of imprisonment. According to the new policy directive, for the first 24-months of imprisonment that prisoners could not receive care if it involved the providing of routine dental care. The policy said that care would only be provided to those with urgent needs. Based on this new policy, within months, this huge wait list of approximately 8,000 prisoners was reduced to around 2,000 prisoners.

28.     As part of the implementation of the new policy directive, Defendant and her agents did not define routine dental care during the first 24-months to include dental care to alleviate pain and to take steps to ensure that salvageable teeth were restored and/or preserved.

29.     Defendant Washington has created a policy that prisoners within the first 24-months of their imprisonment that have dental pain that require routine care to eliminate the pain will not receive dental services to fix or restore or eliminate the pain for those teeth, but are denied routine care to fix the teeth to ensure that they are useable, instead they are told to either agree to extraction of the teeth with pain, or continue to suffer pain during the remaining months of first 24-months of imprisonment.

30.     Defendants have established a practice that during intake there is a failure to provide periodontal screening and diagnosis and proper diagnostic x-rays, which if done in compliance with national dental standards, could prevent the periodontal disease going from "mild" or "average" to "moderate" and to "advanced" or "serious", which could result in the inability to correct or control the periodontal disease, as well as to prevent tooth loss.

31.     The periodontal classification made at the intake examination is inadequate and understates the amount and severity of prisoners' periodontal diseases because Panoramic x-rays that are used are not an acceptable diagnostic

tool for identifying and classifying periodontal disease. Moreover, since periodontal probing (an accepted professional standard) is not documented, the severity and location of periodontal disease is inadequately characterized.

32.     The named Plaintiffs and the proposed class members are subjected to needless pain based on the first 24-months of imprisonment; the practice of classifying all dental procedures to eliminate pain as routine care during this 24-months wait; implementation of a policy of extraction for emergent dental issues during this 24-months wait, which forces the prisoners to choose between continuing pain or teeth extraction. The policy further forces an inmate to request either extraction of a healthy tooth that was restorable or wait with pain and hope the tooth remains restorable after the 24-months. Thus, such a 24-months wait leads to restorable teeth becoming unrestorable and thus, unnecessary loss of healthy teeth. At the end of the 24-months wait, prisoners are then placed on wait-lists that can result in not receiving dental care for 6-18 months before ever being seen for their routine dental needs. Plaintiffs and the proposed class members are bringing a facial challenge to the policy directive implemented in October of 2013.

33.     Due to the untimely care because no dental plan is made at intake and the 24-months wait imprisonment, a fractured tooth left untreated allows decay to enter the tooth and such decay may progress increasing tooth morbidity because the progressing untreated decay will cause a tooth once restorable to become

unrestorable, thereby forcing extraction and confirming the defendant's policy of favoring extraction over tooth restoration to save teeth.  Such a policy violates the Eighth Amendment as the policy causes unnecessary pain and unnecessary tooth loss thereby destroying the dentition.

34.    Defendants have a practice that once prisoners have completed the first 24-months of imprisonment, they can submit a dental kite to receive a dental cleaning and to determine what dental care is needed for routine dental issues that have been denied up to the last 24-months; the requesting prisoner is placed on a waiting list for "dental cleaning", which can then take 6-12 months to receive the cleaning. At the cleaning, the prisoner will then see the dentist who will create a treatment plan, i.e, fillings, which then results in the prisoner placement on another wait list for fillings, and can be on that wait list for 4-12 months.

35.    Once prisoners have completed the first 24-months of imprisonment, they can then wait up to 6-18 months to receive actual dental care. Due to the long wait lists these prisoners are deprived of timely dental care leading to unnecessary tooth pain, preventable progression of decay and/or tooth loss.

36.    Defendants have created a policy and/or practice that during the first 24-months of their imprisonment, prisoners who are in need of dentures due to loss of teeth or unrestorable teeth can have these unrestorable teeth pulled, but cannot receive dentures even though those prisoners are not able to chew hard and chewy

foods; the same policy does not allow old dentures that are broken or damaged, dentures lost by prison staff, and/or failure to provide dentures pursuant to extenuating circumstances such as being assaulted by another inmate with a lock-n-sock causing a broken jaw and loss of teeth, to be replaced during the first 24-months of imprisonment.  As a result of this policy and/or practice, Washington and Choi have failed to provide timely dentures, which failure adversely impacted Plaintiffs and the untimely dentures Class ability to masticate food, achieve proper nutrition, and be free from pain.

37.    Washington and Choi have failed to provide sufficient and/or timely dental care, such as dentists or other dental staff, which failure adversely impacted Plaintiffs and the four proposed Classes's ability to masticate food, achieve proper nutrition, and be free from pain and/or includes untimely treatment of tooth pain and decay permitting the decay to worsen to the point o requiring extraction or loss of teeth unnecessarily which could have been prevented by timely care.

## CLASS ACTION ALLEGATIONS

**A.    24-months No Routine Dental Care – Class 1**

38.    Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b), **Plaintiffs BAILEY, BROWNES, FLESSNER, GUNNELS, MEANS, REEVES, ROMAN, and SLONE** bring this action on behalf of themselves and a class of all persons who are now, or will in the future be, subjected to the dental

care policies and practices of Defendant Washington. Washington is aware that the policy of denying MDOC prisoners routine care during their first 24 months of incarceration has no clinical basis and exposes them to a substantial risk of serious harm, including exposure to unnecessary tooth pain, decay, and unnecessary loss of teeth; yet she chooses not to alter the policy.

### (1) Fed.R.Civ.P. 23(a)(1); Impracticability of Joinder

39.    The 24 months no routine dental care (quarantine) Class is so numerous that joinder of all class members is impracticable. There are approximately 16,000 prisoners confined with the MODC who have entered the prison system within the last 24 months.  Every 12 months there are approximately 8,000 new potential class members: prisoners who are newly admitted to the MDOC or parole violators sentenced / returned to serve more time.

40.    At the end of the 24 months imprisonment, thousands of prisoners become eligible to receive routine dental care; however, they must then request a dental cleaning and/or dental exam, which results in their being placed on a waiting list for that cleaning and/or dental exam. Based on the dental treatment plans created for each prisoner, they are then placed on other wait lists for treatment. Such wait lists are long due to insufficient staffing. Due to the long wait lists, these prisoners are deprived of timely dental care leading to unnecessary

tooth pain, preventable progression of decay and/or tooth loss. The practical effect of these delays is to make the quarantine substantially longer than 24 months.

41.    These prisoners who are subjected to 24-months denial of routine dental care are identifiable using records maintained in the ordinary course of business by the MDOC. All prisoners who are incarcerated less than 24 months are class members.

### (2) Fed.R.Civ.P. 23(a)(2): Commonality

42.    There are questions of law and facts common to those prisoners who are defined as class members who have been imprisoned with the MDOC less than 24 months.

> a. Whether Washington's failed to maintain, supervise and operate a dental system that provides minimally adequate dental care, which did not pose a substantial risk of serious harm to those confined for less than 24-months and needing routine care.

> b.  Whether Washington was deliberately indifferent to the serious dental needs of class members, and to the risk posed by the failure to use sufficient x-rays to diagnose caries and bone loss and document periodontal probing to screen for and diagnose periodontal disease, and to prepare a treatment plan and provide treatment for the conditions identified within the first 24 months of imprisonment.

43.    Because the intake exam is incomplete and below accepted professional standards, all prisoners are subject to the risk of serious harm from

lack of untimely diagnosis of dental disease and creation of appropriate treatment plans.

44.     Failure to provide periodontal screening and diagnosis (i.e., the PSR) and proper diagnostic x-rays at intake can result in the periodontal disease going from "mild" or "average" to "moderate" and to "advanced" or "serious", which can result in the inability to correct or control the periodontal disease, as well as preventable tooth loss.

45.     The periodontal classification made at the intake examination is inadequate and understates the amount and severity of a prisoner's periodontal disease because the Panoramic x-ray that is used is not an acceptable diagnostic tool for identifying and classifying periodontal disease. Moreover, since periodontal probing (an accepted professional standard) is not documented, the severity and location of periodontal disease is inadequately characterized.

46.     Routine oral examinations (Service Codes 00120 and 00150), while using bite-wing x-rays, fail to document periodontal probing (an accepted professional standard) and thus periodontal disease is under diagnosed. Consequently, the resulting treatment plans for addressing periodontal disease are inadequate.

47.     Even when moderate or advanced periodontal disease is identified, appropriate non-surgical treatment (i.e., scaling and root planing – which MDOC

calls "perio scale" (Service Codes 0433, 0434, and 0439)) is not scheduled, planned, or is untimely performed.

48.    These individuals who are subjected to inadequate periodontal screening and inadequate x-rays are identifiable using records maintained in the ordinary course of business by MDOC.

49.    Washington is expected to raise common defenses to these claims, including denying that her actions violated the law.

### (3) Fed.R.Civ.P. 23(a)(3): Typicality

50.    The claims of the 24-month denial of routine care Plaintiffs are typical of those of the 24-month denial of routine care Class, as their claims arise from the same policies, practice, and course of conduct, and their claims are based on the same theory of law as the Class claims.

### 51.    (4) Fed.R.Civ.P. 23(a)(4): Adequacy of Representation

52.    Each of the 24 months no routine care Class Plaintiffs will fairly and adequately represent the interests of the 24 months no routine care Class and will diligently serve as class representatives. Their interests are co-extensive with those of the 24 months no routine care Class, and they are represented by counsel experienced in class litigation and in litigation involving the rights of prisoners. Putative Class Counsel possesses the experience and resources necessary to fairly and adequately represent the Class.

### (5) Fed.R.Civ.P. 23(b)

53.     This action is maintainable as a class action pursuant to Fed.R.Civ.P. 23(b)(1) because the number of class members is approximately 16,000, and the prosecution of separate actions by individuals would create a risk of inconsistent and varying adjudications, which in turn would establish incompatible standards of conduct for Defendants. Additionally, the prosecution of separate actions by individuals could result in adjudications with response to individual class members that, as a practical matter, would substantially impair the ability of other members to protect their interests.

54.     This action is also maintainable as a class action pursuant to Fed.R.Civ.P. 23(b)(2) because Washington's policies, practices, actions, and omissions that form the basis of the claims of the 24 months no routine care Class are common to and apply generally to all members of the class. The 24-months no routine care's policy and practices are centrally promulgated, disseminated, and enforced from the headquarters of Defendants Washington and Choi. The injunctive and declaratory relief sought is appropriate and will apply as a whole to all members of the 24 months no routine care class.

**B.     Periodontal Evaluation and Treatment – Class II**

55.     Washington and Choi are aware that the MDOC has a practice of not providing appropriate periodontal diagnosis and treatment and both Washington and Choi are aware that this practice exposes prisoners to a substantial risk of serious harm, yet they choose not to alter the practice.

56.     Pursuant to Fed.R.Civ.P. 23(a) and 23(b), **PLAINTIFFS BROWNES, FLESSNER, RICHARDSON, REEVES, ROMAN, and SLONE** bring this action on behalf of themselves and all other persons who are now, or will in the future be diagnosed with periodontal disease and not be provided appropriate treatment.

### (1)     Fed.R.Civ.P. 23(a)(1); Impracticability of Joinder

57.     The Dental Class is so numerous that joinder of all class members is impracticable. Presently there are approximately 39,000 prisoners imprisoned with the MDOC.

58.     Failure to provide periodontal treatment can result in the periodontal disease going from "mild" or "average" to "serious, which can result in the inability to correct or control the periodontal disease.  MDOC has a practice of not prescribing and performing appropriate periodontal treatment, such as root planing and scaling, even when periodontal disease is diagnosed, prisoners are subject to risk of preventable progression of periodontal disease, with attendant loss to teeth and gratuitous pain

59.     These individuals who are subjected to no periodontal treatment are identifiable using records maintained in the ordinary course of business by MDOC.

### (2)     Fed.R.Civ.P. 23(a)(2): Commonality

60.     There are questions of law and facts common to those prisoners who are defined as members who have not been provided with periodontal treatment.

     a. Whether Defendants failed to operate a dental system that provided minimally adequate dental care, which did not pose a substantial risk of serious harm by failing to provide periodontal treatment.

     b. Whether Defendants were deliberately indifferent to the serious dental needs of class members, and to the risk posed by the failure to provide periodontal treatment.

61.     Washington and Choi are expected to raise common defenses to these claims, including denying that their actions violated the law.

### (3)     Fed.R.Civ.P. 23(a)(3): Typicality

62.     The claims of those not provided periodontal treatment Plaintiffs are typical of those not provided periodontal treatment, as their claims arise from the same policy, practice, and course of conduct, and their claims are based on the same theory of law as the Class claims.

### (4)     Fed.R.Civ.P. 23(a)(4): Adequacy of Representation

63.     Each of the periodontal treatment Class Plaintiffs will fairly and adequately represent the interests of the periodontal treatment Class and will diligently serve as a class representative. Their interests are co-extensive with

those of the periodontal treatment Class, and they are represented by counsel experienced in class litigation and in litigation involving the rights of prisoners. Putative Class Counsel possesses the experience and resources necessary to fairly and adequately represent the Class.

### (5)    Fed.R.Civ.P. 23(b)

64.    This action is maintainable as a class action pursuant to Fed.R.Civ.P. 23(b)(1) because the number of class members is approximately 39,000 and the prosecution of separate actions by individuals would create a risk of inconsistent and varying adjudications, which in turn would establish incompatible standards of conduct for Defendant. Additionally, the prosecution of separate actions by individuals could result in adjudications with response to individual class members that, as a practical matter, would substantially impair the ability of other members to protect their interests.

65.    This action is also maintainable as a class action pursuant to Fed.R.Civ.P. 23(b)(2) because Washington's policy, practice, action, and omission that are implemented and enforced by Defendant Choi form the basis of the claims of the periodontal treatment Class that are common to and apply generally to all members of the class. The periodontal treatment's policy and practice are centrally promulgated, disseminated, and enforced from the headquarters of Defendants

Washington and Choi. The injunctive and declaratory relief sought is appropriate and will apply as a whole to all members of the 24-months class.

## C.    Dentures – Class III

66.    Washington and Choi are aware that MDOC has a practice of not timely providing dentures to prisoners who have unserviceable dentures or have pain and difficulty when eating, and both Defendants Washington and Choi are aware that this practice exposes prisoners to a substantial risk of serious harm, including loss of occlusion, inability to eat hard foods and/or chew hard foods; yet they choose not to alter the unconstitutional practice.

67.    Pursuant to Fed.R.Civ.P. 23(a) and 23(b), **PLAINTIFFS DEARDUFF, BAILEY, GUNNELS, MEANS, PORTER, and STOLL** bring this action on behalf of themselves and all other persons who are now, or will in the future will need dentures and are not timely provided.

### (1) Fed.R.Civ.P. 23(a)(1); Impracticability of Joinder

68.    The Dental Class is so numerous that joinder of all class members is impracticable. Presently there are approximately 39,000 prisoners imprisoned with MDOC.

69.    Plaintiffs have requested dentures due to loss of teeth, inability to chew hard and chewy foods, old dentures being broken or damaged, dentures lost

by prison staff, and failure to provide dentures pursuant to extenuating circumstances such as being assaulted by another inmate with a lock-n-sock causing a broken jaw and loss of teeth.

70.    Washington and Choi have failed to provide timely dentures, which failure adversely impacted Plaintiffs and the untimely dentures Class ability to masticate food, achieve proper nutrition, and be free from pain.

71.    These individuals who are subjected to untimely dentures are identifiable using records maintained in the ordinary course of business by MDOC.

### (2)    Fed.R.Civ.P. 23(a)(2): Commonality

72.    There are questions of law and facts common to those prisoners who are defined as members who have not been provided with timely dentures.

    a.    Whether Defendants failed to operate a dental system that provided minimally adequate dental care, which did not pose a substantial risk of serious harm by failing to provide timely dentures.

    b.    Whether Defendants were deliberately indifferent to the serious dental needs of class members, and to the risk posed by the failure to provide timely dentures.

73.    Washington and Choi are expected to raise common defenses to these claims, including denying that their actions violated the law.

### (3)    Fed.R.Civ.P. 23(a)(3): Typicality

74.    The claims of those not provided timely dentures Plaintiffs are typical of those not provided timely dentures Class members, as their claims arise from the

same policy, practice, and course of conduct, and their claims are based on the same theory of law as the Class claims.

### (4)    Fed.R.Civ.P. 23(a)(4): Adequacy of Representation

75.    Each of the timely dentures Class Plaintiffs will fairly and adequately represent the interests of the timely dentures Class and will diligently serve as a class representative. Their interests are co-extensive with those of the timely dentures Class, and they are represented by counsel experienced in class litigation and in litigation involving the rights of prisoners. Putative Class Counsel possessess the experience and resources necessary to fairly and adequately represent the Class.

### (5)    Fed.R.Civ.P. 23(b)

76.    This action is maintainable as a class action pursuant to Fed.R.Civ.P. 23(b)(1) because the number of class members is approximately 1,000 and the prosecution of separate actions by individuals would create a risk of inconsistent and varying adjudications, which in turn would establish incompatible standards of conduct for Defendants. Additionally, the prosecution of separate actions by individuals could result in adjudications with response to individual class members that, as a practical matter, would substantially impair the ability of other members to protect their interests.

77.    This action is also maintainable as a class action pursuant to Fed.R.Civ.P. 23(b)(2) because Washington's policy, practice, action, and omission that are implemented and enforced by Defendant Choi form the basis of the claims of the timely dentures Class that are common to and apply generally to all members of the Class. The timely denture's policy and practice are centrally promulgated, disseminated, and enforced from the headquarters of Defendants Washington and Choi. The injunctive and declaratory relief sought is appropriate and will apply as a whole to all members of the 24-months class.

**D.    Waiting List – Class IV**

78.    Washington and Choi are aware that the MDOC has a practice of placing prisoners who have been incarcerated for more than 24 months and who complain of dental/tooth pain, inability to chew or eat hard foods due to lack of teeth or tooth pain, inability to sleep, bleeding gums or seek routine dental care, such as teeth cleanings nor seeking fillings for cavities, on long wait lists for this dental care, Washington and Choi are aware that this practice exposes prisoners to a substantial risk of serious harm, yet Washington and Choi chooses not to alter the practice.

79.    Pursuant to Fed.R.Civ.P. 23(a) and 23(b), **PLAINTIFFS DEARDUFF and BROWNELL** bring this action on behalf of themselves and all

other persons who are now, or will in the future need dentures and are not timely provided.

**(1) Fed.R.Civ.P. 23(a)(1); Impracticability of Joinder**

80.     The Dental Class is so numerous that joinder of all class members is impracticable. Presently there are approximately 23,000 prisoners imprisoned with MDOC who have served more than 24 months.

81.     At the end of the 24 months thousands of prisoners become eligible to receive routine dental care, except that those prisoners must then request a dental cleaning and/or dental exam, which results in their being placed on a waiting list for that cleaning and/or dental exam. Based on the dental treatment plans created for each prisoner at these cleanings, the prisoners are then placed on other wait lists for treatment. Such wait lists are long due to insufficient staffing. Due to the long wait lists, these prisoners are deprived of timely dental care leading to unnecessary tooth pain, unnecessary progression of decay and/or unnecessary tooth lost.

82.     Plaintiffs have requested dental care after meeting the 24-month requirement of imprisonment, and have initially been placed on a wait list for dental cleaning and/or evaluation by the dentist to create a dental plan, which can take up to sex-months or longer. Where the dental plan includes any type of dental care, such as fillings, teeth cleaning or dentures, prisoners are then placed on that

specific wait list, which then takes another six or more months of waiting for such dental care.

83.     Washington and Choi have failed to provide sufficient and/or timely dental care, such as dentists or other dental staff, which failure adversely impacted Plaintiffs and the wait lists Class's ability to masticate food, achieve proper nutrition, and be free from pain and/or includes untimely treatment of tooth pain and decay permitting the decay to worsen to the point o requiring extraction or loss of teeth unnecessarily which could have been prevented by timely care.

84.     These individuals who are subjected to placements on these wait lists are identifiable using records maintained in the ordinary course of business by the MDOC.

**(2)     Fed.R.Civ.P. 23(a)(2): Commonality**

85.     There are questions of law and facts common to those prisoners who are defined as members who have been placed on dental wait lists.

> a.  Whether Defendants failed to operate a dental system that provided minimally adequate dental care, which did not pose a substantial risk of serious harm by failing to provide sufficient dentists and other support staff.

> b.  Whether Defendants were deliberately indifferent to the serious dental needs of Plaintiffs and class members by the placement of prisoners on long wait lists subjecting them to untimely dental care resulting in unnecessary tooth loss, loss of tooth structure of the hard and soft tissues and/or tooth pain.

86.    Washington and Choi are expected to raise common defenses to these claims, including denying that their actions violated the law.

### (3)    Fed.R.Civ.P. 23(a)(3): Typicality

87.    The claims of those placed on long wait lists Plaintiffs are typical of those placed on long wait list, as their claims arise from the same policy, practice, and course of conduct, and their claims are based on the same theory of law as the Class claims.

### (4)    Fed.R.Civ.P. 23(a)(4): Adequacy of Representation

88.    Each of the wait lists Class Plaintiffs will fairly and adequately represent the interests of the wait lists Class and will diligently serve as a class representative. Their interests are co-extensive with those of the wait lists Class, and they are represented by counsel experienced in class litigation and in litigation involving the rights of prisoners. Putative Class Counsel possesses the experience and resources necessary to fairly and adequately represent the Class.

### (5)    Fed.R.Civ.P. 23(b)

89.    This action is maintainable as a class action pursuant to Fed.R.Civ.P. 23(b)(1) because the number of class members is approximately 23,000 and the prosecution of separate actions by individuals would create a risk of inconsistent and varying adjudications, which in turn would establish incompatible standards of conduct for Defendants. Additionally, the prosecution of separate actions by

individuals could result in adjudications with response to individual class members that, as a practical matter, would substantially impair the ability of other members to protect their interests.

90.   This action is also maintainable as a class action pursuant to Fed.R.Civ.P. 23(b)(2) because Washington's policy, practice, action, and omission that are implemented and enforced by Defendant Choi form the basis of the claims of the wait lists Class that are common to and apply generally to all members of the Class. The wait lists' policy and practice are centrally promulgated, disseminated, and enforced from the headquarters of Defendants Washington and Choi. The injunctive and declaratory relief sought is appropriate and will apply as a whole to all members of the 24-months class.

## EIGHTH AMENDMENT VIOLATION

91.   Plaintiffs allege and incorporate by reference all prior paragraphs.

92.   Dental health needs are serious medical necessities, because dental care is one of the most important needs of inmates to preserve and maintain general health, including the ability to eat and chew foods, and the ability to engage in a normal activity of eating, necessary for maintaining nutritional health, physical-health, and dental health. Normal eating and chewing are a basic bodily function to sustain life, and deprivation of the ability to eat and chew constitutes cruel and unusual punishment.

93.    Deliberate indifference to serious dental needs is evidenced by systemic deficiencies in dental care policies and practices in Michigan prisons that have produced longstanding instances of inadequate care. The MDOC's policies and practices "as-applied" to those not subjected to the 24-months wait constitute cruel and unusual punishment, thereby violating the Eighth Amendment of the United States Constitution when these serious dental needs of the Plaintiffs and proposed class members were/are not met.

94.    Defendants have created and engaged in systemic deficiencies in the delaying and denying needed dental care to the Plaintiffs and proposed class members, such that Defendants have demonstrated deliberate indifference to serious dental needs.

95.    The named Plaintiffs and the proposed class members are subjected to needless pain based on the 24-months wait; the practice of classifying all dental procedures to eliminate pain as routine care during the 24-months wait; implementation of a policy of extraction for emergent dental issues during the 24-months wait, which forces the prisoners to choose between continuing pain or having their teeth extracted.  The policy further forces an inmate to either request extraction of a healthy tooth that was restorable or wait with pain and hope the tooth remains restorable after the 24-months.  Thus, such a 24-months wait leads to restorable teeth becoming unrestorable and thus, unnecessary loss of healthy tooth.

At the end of the 24-months wait, prisoners are then placed on wait-lists that can result not receiving dental care for 6-months to over a year before even being seen for their emergent dental needs.  Plaintiffs and the proposed class members are bringing a facial challenge to the policy directive implemented in October of 2013.

96.    The implementation of the October 2013 policy directive on its face constitute cruel and unusual punishment, thereby violating the Eighth Amendment of the United States Constitution when these serious dental needs of the Plaintiffs, and proposed class members were/are not met during the first 24-months of imprisonment.

97.    Further, those prisoners who entered the system in need of dentures are denied such during this 24-months wait even though they are/may suffer pain and cannot properly chew food. Moreover, at the end of these 24-months wait these prisoners are then placed on new wait lists that can result in waiting for 6-months to over a year before even being seen for an evaluation of the need for dentures. These prisoners then may wait years before they are provided dentures.

98.    The named Plaintiffs and proposed class members are being subjected to needless pain and/or risk of unnecessary tooth loss based on Defendant's policy of not providing scaling and root planing for those prisoners diagnosed with early to moderate to advanced periodontal disease. Failure to accurately diagnose (no probing or x-rays at the intake examination), failure to establish a treatment plan

that includes scaling and root planing for prisoners with moderate to advanced periodontal disease, and the 24-months wait policy that delays even a prophy, combines to create a dental system where prisoners are placed at risk of harm, such as loss of tooth support (bone), loss of teeth, and pain (from periodontal abscesses). Further, after the expiration of the 24-months wait, prisoners are subjected to long new wait lists before any treatment is provided leading to further decay and/or tooth loss and progression of periodontal disease.  Defendant Washington's policy does not properly or adequately diagnose periodontal disease by failing to periodontally probe and measure pocket depths and chart such results and/or take proper diagnostic x-rays and/or Defendant's policy does not treat adequately periodontal disease even when it is identified.

## Relief

WHEREFORE, for the reasons stated above, this Court should:

A.      Accept jurisdiction of this matter;

B.      Certify this matter as a class action as to the four proposed classes;

C.      Declare that the rights of Plaintiffs and class members were violated by the actions of the Defendants;

D.      Find that the actions of the Defendants, as to the provision of dental care, subjected the Plaintiffs and the class members to a violation of their Eighth Amendment rights against cruel and unusual punishment;

E.    Issue an injunction against the Defendants to:

1. Require Defendant Washington to hire sufficient dental and clerical/administrative staff to ensure requirements of the Eighth Amendment are met to provide timely dental care and treatment, including timely treatment of tooth decay by timely diagnosis and restorative dental care and treatment, and accurate diagnosis of periodontal disease and to provide timely diagnosis and proper non-surgical periodontal treatment.

2. Require Defendant Washington to alter and amend policy to mandate a complete dental intake/initial examination to include a comprehensive treatment plan, diagnostic x-rays and require periodontal screening and recording (PSR) at a minimum, i.e., probe, measure and chart periodontal pocket depths to screen for periodontal disease; amend policy to reflect proper American Dental Association (ADA) periodontal disease staging based on periodontal pocket depths representing the current standard of dental care in screening for periodontal disease; and ensure Defendant's policy include timely appropriate non-surgical treatment for periodontal disease.

3. Eliminate the 24-months quarantine period in which prisoners are denied routine dental care and treatment during the first 24-months of confinement, routine dental care to include timely treatment for

restorable dental caries, timely non-surgical periodontal treatment, and timely delivery of complete and partial dentures.

4.  Require Defendant Washington to provide timely routine dental treatment for those who have served more than two years by hiring sufficient dental staff to provide timely dental care and reduce wait list dental care requests to a reasonable time to prevent needless physical pain and suffering, tooth pain, tooth sensitivity and unnecessary tooth loss irrespective of the two-year quarantine.

5.  Eliminate the denture policy prohibition that a prisoner who received denture(s)/partial(s) must wait five years before replacement or repair of denture(s)/partial(s) where the denture/partial fractures, breaks or requires a repair to ensure the denture/partial serves its purposes.

6.  Require timely denture/partial delivery to be completed within three months after the first impressions are taken, including delivery of denture/partial for the first time and replacements.

7.  Require timely denture/partial delivery to be completed within three months after the first impressions are taken, including delivery of denture/partial for the first time and replacements.

8.  Require Defendants to implement policies to mandate and enforce restoration of restorable teeth versus a policy favoring extraction of

restorable teeth to prevent needless tooth loss and properly document steps taken to determine whether restoration or extraction was needed based on tooth health, which includes proper diagnostic x-ray(s), exam and PSR.

9. Provide soft food diet for inmates that are unable to masticate food due to tooth loss/extraction while waiting for dentures to be fabricated.

10. Modify the Urgent Care definition to include all complaints of dental pain.

F.     To award attorneys' fees and costs; and

G.     To grant any other relief that is just and equitable.

Respectfully submitted,


/s/ Daniel E. Manville
Daniel E. Manville (P39731)
Director, Civil Rights Clinic
Co-Counsel for Plaintiff
Michigan State University College of Law
PO Box 1570
East Lansing, MI. 48826
517-432-6866 (office)
517-432-6990 (fax)
daniel.manville@law.msu.edu

Certificate of Service

I, Daniel E. Manville certify that on January 14, 2018, I filed the above document with the ECF system, which then sent it to Defendants' counsel.

/s Daniel E. Manville