UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELVIN BOWENS, et al.,

    Plaintiffs,

vs.                                           Case No. 14-cv-11691-LJM-MKM
                                            Hon. Laurie J. Michelson

HEIDI WASHINGTON, et al.,

    Defendants.

### REPLY TO DEFENDANTS' RESPONSE (ECF NO. 305) TO PLAINTIFFS' 54(b) MOTION (ECF No. 300)

**I.**     **Defendants' claim that the MDOC determination of "stable" and "unstable" moderate periodontal disease does not bear on the legal issues at stake in this case is contrary to this Court's Opinion**

A. *Contrary to Defendants' claim, the 54(b) motion is not premature because the deposition of Dentist Choi has not been taken.*

As discussed in Plaintiffs' motion, this Court applied a narrow definition of Class IIB based largely on Defendant Choi's creation of non-scientific categories called "'stable' and 'unstable' moderate periodontitis". (ECF No. 253, PageID.7288-89, 7308-10, and 7313-16). Plaintiffs will not reiterate what is contained in the 54(b) motion. That motion is not premature, in that, Defendant Choi provided responses to a subpoena duces tecum that requested documents to support the creation of this category of "stable moderate periodontitis". In response to the subpoena, Defendant Choi stated that such documents did not exist to support

1

his designation of "stable" and "unstable" periodontal disease. (ECF No. 300-1, PageID.7523-25.)

> B. *Contrary to Defendants' contention, MDOC does not engage in periodontal probing during Intake nor referral to the Stabilization Clinic for periodontal treatment* (ECF 305, PageID.7779-82).

In their Response, Defendants' claim that Dr. Maxwell refers prisoners diagnosed with periodontal disease to the Stabilization Clinic.[1] (ECF No. 305, PageID.7780-1.) This is contrary to the testimony of Dentist Maxwell that as an intake screening dentist she was trained "to not periodontally probe [during] intake screening [of] patient[s]." (**Exhibit** 2, Maxwell's Deposition, at 261:21-25.) She also testified that there is no "referral for root planing and scaling from intake to stabilization." (*Id*. at 93:9-11.) Moreover '[a]t intake screening the general dentist… does no periodontally probe." (*Id*., at 89:18-25.) Dr. Cooks, another intake screening dentist, testified that at intake "[w]e're not doing the diagnostics to show (inaudible) periodontal disease." (**Exhibit** 2, Cooks' Deposition, at 93:20-25, at 94:1-4.) Dr. Cooks testified based on the MDOC policies and procedures he has not been instructed, while doing intake, to refer a patient to stabilization clinic for periodontal disease. (*Id*., at 96:15-23.) Dr. Cooks further testified when the dentist is doing the intake screen, the dentist is not able to assess whether any type of periodontal disease

---

[1] Defendants failed to cite to one dental record where a prisoner with a periodontal diagnosis was referred to the stabilization clinic.

is stable or unstable, "a dentist cannot look into a patients' mouth and [determine] if they're stable or not periowise."[2] (Id., at 126:2-6; at 124:17-25, at 125:1-5.) It is likely that Defendants did not understand that the referral to the Stabilization Clinic that Dr. Maxwell was referring to was for debridement,[3] which is not a substitute for root planing and scaling.[4] (Id., at 92:1-12 (debridement is not sufficient treatment for "unstable or stable moderate periodontitis."; at 114:12-15.)

Dentist Smith worked intake from 2003-2010, and then worked intake after 2015 for approximately three months. (**Exhibit** 3, Smith's Deposition, at 56-57.) During this time, the only tools she had to do a dental examination was "the light, a mirror, and a computer, which would show the panel [panoral x-rays]." (Id. at 57:10-15, at 58:3-9.) She also testified that no other x-rays were taken at intake nor did she do any type of periodontal probing and/or charting. (Id., at 57:16-20.) She went on to state that prior to 2010 when working at intake she performed intake screening examinations. (Id., at 57:25 and 58:1-2.) Dentist Smith testified that when she was the dental director from 1986 to 2003, there was an intake

---

[2] Dr. Cooks testified that without the use of "bitewing x-rays and periodontal probing, [it] is more likely than not that the amount and severely of periodontal disease will be understated."[2] (Id. at 147:1-6.)
[3] Dr. Maxwell testified that if a patient at intake has unstable periodontal disease, "she will tell a patient she will refer" to the stabilization clinic for a debridement…." (**Exhibit** 2, at 63:3-9.)
[4] The following Dentists all agreed that debridement is not a substitute for treatment for root planing and scaling. See **Exhibit** 5, Cooks, at 92:1-5, at 93:2-4; **Exhibit** 4, Gillette, at 24:14-17; **Exhibit** 1, Minnich, at 79:14-17; **Exhibit** 6, Potts, at 65:7-15; **Exhibit** 3, Smith, 106:1-4.

examination and the same tools were then used as presently are used. (*Id*., at 71:17-25, at 72:1-6.) Dr. Smith testified that MDOC has never done periodontal probing[5] or periodontal recording.[6] She was not able to explain why MDOC does not list planing and scaling in any policies or procedure6:24.) This support Plaintiffs contention that Intake did not then, nor now, evaluate for periodontal disease pursuant to the standard of case by using bitewing x-rays and probing.

Dr. Cooks' name appears on the Choi memo but he does not recall ever receiving or seeing the memo. (**Exhibit** 5, at 127:5-13.) He testified he does not think he ever attended any presentations nor was provided any written materials regarding periodontal disease mentioned in the Choi memo. (*Id*., at 129:19-23.) He further testified he does not characterize periodontal disease during intake as stable or unstable, but rather, classifies periodontal status as normal, early, moderate or advanced.[7] (*Id*., at 130:16-19.)

Defendants' claim that the motion must fail because the issue before the Court is "whether MDOC provides a treatment plan for moderate or advanced periodontal disease and not whether MDOC using the terms "stable" or "unstable." (ECF No.

---

[5] Dentist Gillette testified that he does not chart probing. (Exhibit 5, at 106.)
[6] This is contrary to Dentist Maxwell's claim that root planning and scaling are referred to the Stabilization Clinic. (ECF No. 305, PageID7781.)
[7] Dr. Potts testified he could not define unstable moderate periodontal disease and testified he does not use those terms. (**Exhibit** 5, at 85:16-21)

4

305, PageID.7782.) Choi's memorandum created two new categories of periodontal disease that are not recognized scientifically or within the dental profession.[8] In Choi's memorandum, he claims that unstable periodontal disease is to be treated at the stabilization clinic. According to Dr. Cooks, *supra*, during intake, a determination cannot be made if periodontal disease is stable or unstable. Further, he has never been instructed to refer periodontal designated patients to the Stabilization Clinic, *supra*. Consequently, prisoners diagnosed with periodontal disease will not receive treatment for at least two or more years for that disease. When periodontal disease is not treated and allowed to progress,[9] there is a strong likelihood that it will progress to the next level and can result in the permanent loss of bone in the jaw.[10] [11] (ECF No. 300-8, PageID.7574.)

---

[8] ECF No. 300-8, Shulman's Report, at PageID. 7576, at 7576 and note 67.

[9] A dentist is unable to determine the rate of progression of any patient's periodontal status without the use of periodontal measurement and recording, (PSR), intra-oral x-rays, and a baseline and follow up comparison to the baseline. (*See* **Exhibit** 1, Minnich's Deposition, at 103-104, 121; **Exhibi**t 2, Maxwell, at 120, 123-125, 239; **Exhibit** 4, Gillette, at 44.) The baseline periodontal status and follow up comparison are generated using periodontal probing and charting in combination with intra-oral x-ray. (*Id.*)

[10] Dr. Minnich testified that if there is no treatment of periodontal disease for two years, it can worsen overly time and result in bone loss that will not regrow. (**Exhibit** 1, at 107-08.) If periodontal disease once diagnosed is not treated for two years, there is "a substantial risk of harm for worsening periodontal disease." *(Id.*, at 123-4.) Dr. Smith testified that in private practice there is no definition of "unstable" periodontal disease and that in "private practice all perio would be treated." (**Exhibit** 3, Smith, at 222.) Dr. Potts testified that it would violate the standard of care not to provide a prophy to a patient with early periodontal disease. (**Exhibit** 6, Potts, at 107-08.)

[11] *See also* ECF No. 305, PageID.7782, note 62 ("Absent other periodontal procedures, disease may progress to the point that alveolar bone and periodontal ligament are lost, resulting in the formation of periodontal pockets (Figure 1 *supra*).).

5

This Court then used Choi's memo creating the "stable" and "unstable" periodontal categories to state that if the dentists are making individual decisions whether to treat periodontitis "[t]hat individualized inquiry precludes claim aggregation." (ECF No. 253, PageID.7309.) However, as discussed above MDOC has a policy or practice of not diagnosing and treating periodontal disease during intake and there is no support factual or scientific support for Choi's creation of "stable" and "unstable" periodontal categories.

## II.     Contrary to Defendants' claim, Plaintiffs have provided a legal and factual basis for changing the definition of Class IIB.

Defendants have provided no factual or legal basis why this Court should not redefine the Class IIB definition. (ECF No. 305, PageID.7782-7787.) In fact, this Court has the authority to alter or amend the class certification order as circumstances change. Federal Rule of Civil Procedure 23(c)(1)(C) states that "[a]n order that grants or denies class certification may be altered or amended before final judgment." The Sixth Circuit has recognized that from this rule stems a "continuing obligation to ensure that the class certification requirements are met," and a district court must "alter or amend the certification order as circumstances change and the parties' litigation strategies evolve." *Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) (citing *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1214 (6th Cir. 1997)).

6

In their motion, Plaintiffs explained the factual basis why it was requesting a change to the definition of Class IIB. (ECF No. 300, PageID.7514-7518.) At the time of this Court's ruling on the class certification motion, Plaintiffs were still engaged in discovery and, most importantly, it had not yet received 100 dental records of class members for review. In support of this motion, Plaintiffs attached a condensed Expert's Report from Expert Shulman informing this Court of the additional discovery obtained and how it now supported a change to the definition of IIB so that all prisoners who were processed through intake and were not being diagnosed as to periodontal disease and not being referred to the Stabilization Clinic for such care, *see* discussion in Argument I, *supra*. Further, through the report of Expert Shulman, this Court is presented with 23 additional records to support this request for redefining Class IIB.

Contrary to Defendants' argument, Plaintiffs have presented new evidence in support of the motion. (ECF No. 300, PageID.7514-7518.) Further, a failure to grant this motion would create a manifest injustice on the class, in that, they could not obtain a fair ruling on the claim that dental care is not provided by the MDOC to those prisoners in intake who have moderate to severe periodontal disease and are not diagnosed or treated at that time.. As discussed above, the law allows this Court to amend its earlier class order.

Defendants also invoke the standard as to motion for reconsideration. (ECF No. 305, PageID.7784-5.) However, "courts have held that the 'usual reluctance to entertain motions for reconsideration simply does not apply in the class certification context ... because of the special procedural role played by a district court in supervising the maintenance of a class action." *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 651-52 (CD. Cal. 2000); *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 593 n. 6 (E.D. Cal. 1999) ("Because the court has the power to alter or amend the previous class certification order under Rule 23(c)(1), the court need not consider whether 'reconsideration' is also warranted under Fed. R. Civ. P. 60(b) ....")). Plaintiffs have not filed a motion for reconsideration.

## III. Contrary to Defendants' claim, Plaintiff Richardson qualified as a class representative.

Defendants cite to the standard that must be met for the granting of a 54(b) motion. (ECF No. 305, PageID.7787-89.) As discussed in Argument II, this Court retains the authority to "alter or amend the certification order as circumstances change and the parties' litigation strategies evolve." *Randleman v. Fid. Nat. Title Ins. Co., supra*. The report of Expert Shulman as it relates to Prisoner Richardson is that he has never received proper treatment for periodontal disease even though he was diagnosed with such as early as 2012 and reaffirmed in 2015. Based upon his dental records, as of today, Richardson has not received treatment for periodontal disease

that he was designated as having. He meets the definition of a class representative for Class IIB (ECF No. 253, PageID.7307-10.)

WHEREFORE, for the reasons stated in the motion and this reply, the Court should provide the relief requested by the Plaintiffs.

Respectfully submitted,

/s/ Daniel E. Manville (P39731)
Director, Civil Rights Clinic
Co-Counsel for Plaintiffs
Michigan State University College of Law
648 N. Shaw Lane
East Lansing, MI 48824
(517) 432-6866
Daniel.manville@law.msu.cdu

## CERTIFICATE OF SERVICE

I declare under penalty of perjury that this document was filed on November 5, 2020, by ECF with the Court and sent to Defendants' counsel on .

/s/ Daniel Manville
Daniel.manville

9