UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MELVIN BOWNES,<br>TIMOTHY BROWNELL,<br>JAMES GUNNELS, and<br>ANTHONY RICHARDSON,<br>*on behalf of themselves and those*<br>*similarly situated*,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>HEIDI WASHINGTON and<br>JONG CHOI,<br><br>　　　　Defendants. | Case No. 14-cv-11691<br>Honorable Laurie J. Michelson |

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION SEEKING PARTIAL RELIEF FROM THE COURT'S CLASS CERTIFICATION ORDER [302]

In this case, thousands of prisoners claim that the Michigan Department of Corrections provides them with constitutionally inadequate dental care. Over two years ago, the Court certified several classes of prisoners, with each class challenging a different aspect of the MDOC's dental care. *See generally Dearduff v. Washington*, 330 F.R.D. 452 (E.D. Mich. 2019). One certified class, Class IIA, challenges the tools the MDOC uses to diagnose periodontal disease. Another certified class, Class IIB, challenges the adequacy of MDOC's treatment of periodontal disease. In seeking class certification, Plaintiffs wanted the Court to certify a class of all prisoners in the MDOC's custody—over 37,000 prisoners—and claimed that this Court could productively adjudicate each of their Eighth Amendment claims at once. But, for

reasons explained in detail, the Court declined Plaintiffs' request and limited both Class IIA and Class IIB to a subset of MDOC prisoners. *See Dearduff*, 330 F.R.D. at 468–73.

After additional discovery, Plaintiffs now ask the Court to reconsider its prior ruling and expand Class IIA and Class IIB to include all prisoners in the MDOC's custody. For the reasons that follow, the Court will deny Plaintiffs' request to expand Class IIA but grant in part Plaintiffs' request to expand Class IIB.

## I.

### A.

To better appreciate Plaintiffs' request to expand the two previously certified classes, it helps to know a bit about periodontal disease, how it is diagnosed, and how it is treated.

"Periodontal disease is an inflammatory disease of the supporting tissues of the teeth," including the gums and periodontal ligament. (ECF No. 302-8, PageID.7699.) The disease is progressive; the rate of progression depends on several factors, including age, diabetes, and tobacco use. (ECF No. 302-8, PageID.7706.) Under one classification system, a person can have healthy gums, gingivitis, early periodontitis, moderate periodontitis, or advanced periodontitis. (*See* ECF No. 302-8, PageID.7716 (equating Periodontal Screening and Recording scores with "gingivitis," "early," "moderate," and "advanced"); *cf*. ECF No. 302-8, PageID.7705 (using "Stage" and "Grade" to classify disease).) On the less severe end of the spectrum are people with healthy gums and gingivitis. Gingivitis "is a reversible inflammation of the soft

2

tissue that does not result in the loss of periodontal structures." (ECF No. 302-8, PageID.7701.) As periodontal disease progresses, the supporting tissues of the tooth begin to separate from the tooth forming pockets between the tooth and gums:



(ECF No. 302-8, PageID.7699.) Calculus (hardened plaque) and bacteria can collect inside these pockets, and the bone surrounding the teeth can erode. (*See* ECF No. 302-8, PageID.7706.) If allowed to progress, periodontitis can result in tooth loos or an abscess. (ECF No. 302-8, PageID.7718.) The severity of periodontal disease can vary throughout the mouth; the structures supporting one or two teeth might be suffering from say, advanced periodontitis, but the structures supporting other teeth are only affected by gingivitis. (*See* ECF No. 302-8, PageID.7702 (describing method of dividing the mouth into six parts and measuring periodontal health in each part); ECF No. 302-8, PageID.7719 (indicating that periodontal treatment can be provided for a single "quadrant" of the mouth); ECF No. 315-9, PageID.7970 (indicating that dentist should specify areas of mouth requiring periodontal treatment).) Periodontitis is common: approximately 45% of adults over age of 30 have some level of periodontitis. (ECF No. 302-8, PageID.7698.) But "the prevalence of moderate to

severe periodontal disease in correctional populations is higher than in the free population." (ECF No. 302-8, PageID.7701.)

Plaintiffs and one of their opinion witnesses, Jay Schulman, DMD, assert that intraoral x-rays and periodontal probing are necessary to accurately diagnose periodontal disease. Schulman says that extraoral images from a panoramic x-ray lack the detail necessary to "diagnose caries [i.e., tooth decay] or document periodontal bone loss"; in contrast, *intraoral* x-rays "provide a considerable amount of information about the periodontium that cannot be obtained by any other non-invasive means." (ECF No. 302-8, PageID.7703.) The second diagnostic tool, periodontal probing, involves measuring pocket depth using a probe. (ECF No. 302-8, PageID.7699–7700.) Probing not only helps determine the severity of periodontitis for a particular area of the mouth, but also helps determine varying severity throughout the mouth. (*See* ECF No. 302-8, PageID.7702.) Charting the pocket-depth measurements permits periodontal disease to be monitored over time. (ECF No. 302-8, PageID.7700.)

The treatment for periodontal disease depends on its severity. For gingivitis, which is on the low end of the severity spectrum, instruction on proper oral hygiene and a prophylaxis is often adequate treatment. (*See* ECF No. 302-8, PageID.7711.) A prophylaxis or "prophy" is a dental cleaning and, according to Schulman, is distinct from a "scaling and root planing," which is a more involved procedure usually requiring local anesthesia. (ECF No. 302-8, PageID.7719.) Schulman states that scaling and root planing "is an appropriate treatment when there is loss of

attachment [between periodontal tissues and the tooth] in early, moderate or advanced periodontitis." (ECF No. 315-11, PageID.8020; *see also* ECF No. 302-8, PageID.7711.) Scaling includes scraping the tooth above and below the gum line (inside the pockets) to remove calculus and bacteria. (*See* ECF No. 302-8, PageID.7719–7720.) Root planing includes smoothing the root to give the soft tissues a better chance of reattaching to the tooth. (*See id.*) According to Plaintiffs, in addition to scaling and root planing, follow-up treatment may be necessary to effectively treat periodontitis. (*See* ECF No. 315-9, PageID.8012.)

**B.**

In 2019, this Court certified two classes relating to periodontal disease. *See Dearduff v. Washington*, 330 F.R.D. 452, 460, 468–473 (E.D. Mich. 2019).

One class, Class IIA, claimed that the tools the Michigan Department of Corrections used to diagnose periodontal disease were inadequate. *See id.* at 460. When a prisoner enters into the MDOC system, an intake dental exam is performed. During this intake exam, dentists use a prisoner's oral health history, a visual examination, and panoramic, i.e., extraoral, x-rays to determine the stage of a prisoner's periodontal disease. (*See* ECF No. 302-8, PageID.7712; ECF No. 242-8, PageID.6527.) At later exams, the MDOC may take intraoral x-rays. (ECF No. 315-9, PageID.7979.) Prisoners in Class IIA claimed (and still claim) that intraoral x-rays and periodontal probing are necessary to accurately diagnose periodontal disease. *See Dearduff*, 330 F.R.D. at 460; (ECF No. 315-9, PageID.7970). Class IIA claimed (and still claims) that without intraoral x-rays and periodontal probing, they are at risk of

having their periodontal disease underdiagnosed. *See Dearduff*, 330 F.R.D. at 460; (ECF No. 315-9, PageID.7970). For instance, say Plaintiffs, without intraoral x-rays and periodontal probing, an MDOC dentist might diagnose a prisoner with early periodontitis when, in fact, the prisoner has moderate periodontitis. This underdiagnosis leads to the lack of proper treatment which, in turn, leads to serious harm under the Eighth Amendment, those in Class IIA argued. *See Dearduff*, 330 F.R.D. at 460. In this Court's class-certification opinion, Class IIA was defined as "[a]ll prisoners incarcerated in an MDOC correctional facility who have caries that have reached the dentin or have early (or worse) periodontitis." *Id.* (Dentin is bony tissue of the tooth beneath the enamel.)

The Court also certified Class IIB, which claimed that the MDOC did not adequately treat periodontal disease. *Dearduff*, 330 F.R.D. at 461. Plaintiffs wanted this treatment class to include all prisoners in the MDOC's custody. *See id.* at 459–61. Although the MDOC had (and still has) a systemwide policy of not providing periodontal services to a prisoner in his or her first two years in prison, *see* Michigan Department of Corrections, Policy Directive 04.06.150 (May 2018), https://perma.cc/S3Z8-SN4E, the Court found that there was an exception to this policy for prisoners with more severe periodontitis, *see Dearduff*, 330 F.R.D. at 468. In making that finding, the Court relied on a memorandum from MDOC Dental Director Jong Choi and a proffer from Defendants indicating that prisoners with "unstable" moderate periodontitis and advanced periodontitis were receiving necessary periodontal treatment. Because Class IIB claimed that the MDOC was

providing constitutionally inadequate periodontal treatment, the Court excluded prisoners with unstable moderate periodontitis and advanced periodontitis from Class IIB. *See Dearduff*, 330 F.R.D. at 461.

**C.**

Plaintiffs have now filed a motion pursuant to Federal Rule of Civil Procedure 54(b) asking this Court to reconsider how it defined Class IIA and Class IIB.

Regarding Class IIA, Plaintiffs argue that all prisoners, including those with healthy gums and gingivitis, need intraoral x-rays and periodontal probing for proper diagnoses of their periodontal health. (ECF No. 315, PageID.7917–7918.) So, argue Plaintiffs, Class IIA should be expanded to include those with healthy gums and gingivitis, i.e., Class IIA should include all MDOC prisoners. (*See id.*)

Regarding Class IIB, Plaintiffs argue that dental science does not support a distinction between "stable" and "unstable" moderate periodontitis and so the Court was wrong to define Class IIB using the term "stable." (ECF No. 302, PageID.7646–7652; ECF No. 315, PageID.7909–7917.) Plaintiffs also claim that evidence collected after this Court issued its class-certification opinion shows that prisoners with periodontitis (including those with moderate or advanced periodontitis) are not being provided scaling and root planing, a necessary treatment. (ECF No. 315, PageID.7922.) So Plaintiff would like the Court to expand Class IIB to include all MDOC prisoners. (*Id.*)

Plaintiffs also ask this Court to find that Anthony Richardson, a named plaintiff who represents Class IIA, can also represent Class IIB. (ECF No. 315, PageID.7926.)

## II.

Often, not a whole lot needs to be said about the legal standard governing a motion. But motions pursuant to Rule 54(b) asking a Court to reconsider a ruling under Rule 23 are not garden variety. So the Court will say a bit more about the standard governing Plaintiffs' request for relief.

In substance, Plaintiffs ask this Court to reconsider an order that did not end the case. Typically, that is the office of Eastern District of Michigan Local Rule 7.1(h). But that rule gives the parties at most 14 days to file a motion for reconsideration, and, here, Plaintiffs have sought reconsideration far beyond that timeframe (more on this in a moment). Presumably for this reason, Plaintiffs have invoked Federal Rule of Civil Procedure 54(b).

Rule 54(b) also allows the Court to revise non-final orders. In states in relevant part, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment[.]" Fed. R. Civ. P. 54(b). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). For

convenience, the Court will refer to these as the "traditional justifications for Rule 54(b) relief."

According to Defendants, Plaintiffs "have not offered any new evidence that would support this Court reconsidering its opinion and order." (ECF No. 324, PageID.8231.) But Plaintiffs say, "At the time of this Court's ruling on the class certification motion, Plaintiffs were still engaged in discovery and, most importantly, it had not yet received 100 dental records of class members for review." (ECF No. 307, PageID.7810.)

At the outset, the Court does question the timing of Plaintiffs' motion and the manner in which they collected evidence to support it. Even setting aside the fact that Plaintiffs filed this case seven years ago, this Court issued its class-certification opinion over two years ago, in February 2019. Yet Plaintiffs' current Rule 54(b) motion was not filed until September 2020—18 months after that opinion issued. And even then, Plaintiffs' motion was not supported in the way it is now. In June 2021— two years after this Court's certification opinion—Plaintiffs filed a supplement to their Rule 54(b) motion that included significant, additional evidence supporting expansion of Class IIA and Class IIB. (ECF No. 315.)

In this vein, the Court is compelled to comment on the briefing associated with Plaintiffs' motion to expand Class IIA and Class IIB. The initial motion was 19 pages (ECF No. 302) and then Plaintiffs filed an eight-page reply brief (ECF No. 307). Plaintiffs supplemental brief (filed over eight months after their motion) is another 27 pages. Not only does 27 pages exceed the page limits in the Local Rules, the

supplemental brief contains many redundant statements. Moreover, Plaintiffs now seek leave to file a nine-page reply to Defendants' response to their supplemental brief (which would bring Plaintiffs' total briefing on three limited issues to 63 pages). (ECF No. 315.) Not only that, Plaintiffs' request to file a reply has spawned briefing about briefing. (*See* ECF Nos. 328, 329.) The Court urges all parties to think carefully about their arguments and to distill them down to their essential points. Although the Court would be justified in denying Plaintiffs' request to file a reply, because its content does not alter the Court's decision, the motion is granted.

Having addressed the briefing, the Court returns to the proper legal standard. Plaintiffs ask this Court to expand two previously certified classes and to make Richardson a class representative of one class. Because modifying class definitions is almost the entirety of the relief Plaintiffs seek, the Court does not believe that Plaintiffs must satisfy the traditional justifications for Rule 54(b) relief. As the Sixth Circuit has explained, "district courts have broad discretion to modify class definitions, so the district court's multiple amendments merely showed that the court took seriously its obligation to make appropriate adjustments to the class definition as the litigation progressed." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). In fact, Rule 23(c)(1)(C), rather than Rule 54(b), is the preferred vehicle for Plaintiffs' motion: "An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C); *see also Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983) ("Under Rule 23 the district court is charged with the duty of monitoring its class decisions in

10

light of the evidentiary development of the case. The district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts.").

Accordingly, the Court will assess Plaintiffs' request for expansion of Class IIA and Class IIB under Rule 23(c)(1)(C). But given that this case is now seven years old, and that Plaintiffs had plenty of opportunity to collect evidence for their proposed classes, the Court will not consider any further motions by Plaintiffs to alter the scope of the classes or alter the legal claims that each class pursues.

## III.

The Court starts with Plaintiffs' request to expand Class IIA, then addresses Plaintiffs' like request for Class IIB.

## A.

Before examining the specifics of Plaintiffs' request to expand Class IIA, the Court clarifies the scope of Class IIA as currently defined. In stating that Class IIA consisted of all prisoners "who have caries that have reached the dentin or have early (or worse) periodontitis," the Court perhaps left the scope of Class IIA susceptible to two interpretations. One is that Class IIA only includes prisoners that MDOC dentists—without intraoral x-rays or periodontal probing—have diagnosed as having early, moderate, or advanced periodontitis (or caries that have reached the dentin). The other interpretation is that the class includes all prisoners who—accurately diagnosed—have early, moderate, or advanced periodontitis (or caries that have reached the dentin). The Court now makes clear that this second interpretation of

11

Class IIA is the proper one. And to the extent that the Court's clarification raises a question about which prisoners are in Class IIA (after all, the claim is that the MDOC often underdiagnoses periodontal disease), the Court notes that all the certified classes in this case are of the Rule 23(b)(2) variety, and there is no ascertainably requirement associated with Rule 23(b)(2) classes. *See Cole v. City of Memphis*, 839 F.3d 530, 540, 542 (6th Cir. 2016) ("Because the focus in a (b)(2) class is more heavily placed on the nature of the remedy sought, and because a remedy obtained by one member will naturally affect the others, the identities of individual class members are less critical in a (b)(2) action than in a (b)(3) action." (internal quotation marks omitted)).

With that clarification, the Court turns to Plaintiffs' request to expand Class IIA. The members of Class IIA claim that to accurately diagnose periodontal disease, the MDOC needs to use intraoral x-rays and periodontal probing. But, according to Plaintiffs, it is not just prisoners with early, moderate, or advanced periodontitis that require intraoral x-rays and periodontal probing—it is all prisoners. Plaintiffs assert, "Dentists use periodontal probing and charting to screen all patients, whether healthy or periodontally involved to establish a baseline measurement for future recordings and to confirm health status." (ECF No. 315, PageID.7918.) "Thus," say Plaintiffs "all patients should be probed and charted, not just early or worse periodontal patients, to prevent progression of further disease and keep an accurate reliable record of any possible disease progression over time and to

determine presence or absence of disease common to all." (*Id.*) So Plaintiffs propose that this Court expand Class IIA to include all prisoners.

Plaintiffs' argument focuses heavily on what they believe is necessary healthcare (intraoral x-rays and probing). But Plaintiffs do not focus enough on what is necessary for class certification. Rather than asking what people need for good dental health, the more pertinent question right now is whether the legal claims of a class consisting of every MDOC prisoner—over 37,000 people with varying periodontal health—can be productively litigated at once.

Rule 23 helps answer that question. Although commonality and typicality under Rule 23 do not require that all class members have *identical* legal claims, they do require that the overwhelming majority of class members' legal claims be similar in material ways. In particular, class members' "claims must depend upon a common contention . . . [that is] capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). In other words, the Court must be able to "resolve an issue that is central to the validity of each one of the [class members'] claims in one stroke." *Id.*; *see also Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) ("What we are looking for is a common issue the resolution of which will advance the litigation.").

Here, if Class IIA were expanded to include prisoners with healthy gums, the Court would not be able to resolve an issue that substantially advances the claims of all (or, at least, an overwhelming majority of) class members "in one stroke." To succeed on an Eighth Amendment claim, a prisoner must show that a prison

healthcare provider was "deliberately indifferent" to his or her "serious medical need[.]" *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018). And deliberate indifference means that the MDOC policymaker "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk by failing to take reasonable measures to abate it." *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (internal quotation marks omitted). For prisoners with healthy gums, whom Plaintiffs wish to include in Class IIA, the lack of intraoral x-rays and probing does not deprive them of immediately needed treatment. But prisoners with early periodontitis, who are also members of Class IIA, have an immediate need for treatment (e.g., scaling and root planing). So the failure to use intraoral x-rays and probing affects these two groups of prisoners quite differently: those with healthy gums want the two diagnostic tools to establish an accurate baseline of periodontal health; but those with early periodontitis would like the two diagnostic tools so they can be accurately diagnosed for immediate treatment. So the "medical need" is materially different. Moreover, it is likely that the MDOC policymaker's subjective appreciation of the risk of harm to the two groups of prisoners is different. Thus, the Court is not persuaded that analyzing the Eighth Amendment claim of a prisoner with healthy gums will materially advance the resolution of an Eighth Amendment claim brought by a prisoner with early periodontitis, or vice versa.

Next consider Plaintiffs' proposal to expand Class IIA to include prisoners with gingivitis. True, if Plaintiffs' are correct that intraoral x-rays and probing are

14

necessary to accurately diagnose periodontal disease, then prisoners with gingivitis and prisoners with periodontitis are both at risk of underdiagnosis. But gingivitis may not be a "serious medical need" in the Eighth Amendment sense whereas periodontitis may be. And even if both conditions satisfy the objective element of an Eighth Amendment claim, consider the subjective element. MDOC Dental Director Choi and MDOC Director Washington may appreciate that a prisoner with periodontitis has a serious need for treatment while they may not appreciate that a prisoner with gingivitis has a serious need for treatment. Or more succinctly: it may well be that MDOC policymakers perceive the harm from underdiagnosed gingivitis as much less severe than the harm from underdiagnosed periodontitis.

The Court repeatedly used "may" in the prior paragraph. And it is true that the Court has only identified *potential* differences in the Eighth Amendment claims brought by those with gingivitis and those with periodontitis. But it is "the party seeking class certification"—not the Court—"that bears the burden of affirmatively demonstrating compliance with Rule 23." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466–67 (6th Cir. 2017) (internal quotation marks and alterations omitted). Yet, in their three principal briefs (spanning 54 pages), Plaintiffs make no attempt to address Rule 23's requirements or *Wal-Mart*. (*See generally* ECF No. 302, 307, 315.) True, the phrase "one stroke" makes an appearance in Plaintiffs' fourth brief (which they needed leave to file). But even then the discussion is both cursory and not on point. (*See* ECF No. 325-1, PageID.8279.) Plaintiffs simply assert that the Court can craft a *remedy* that cures the harm in "one

15

stroke." (*Id.*) But that is not what Rule 23 commonality demands: it must be that an issue shared among the claims of the thousands of prisoners in Class IIA can be resolved at once. *See Wal-Mart*, 564 U.S. at 350.

In short, Plaintiffs have not persuaded the Court that if Class IIA were to include all prisoners, the Court would be able to "resolve an issue that is central to the validity of each one of the [members'] claims in one stroke." *See Wal-Mart*, 564 U.S. at 350. Accordingly, Plaintiffs' motion, insofar as it asks the Court to expand Class IIA, will be denied.

## B.

Plaintiffs also ask the Court to expand Class IIB to include all MDOC prisoners.

### 1.

To fully appreciate Plaintiffs' request, some additional background is necessary.

As noted, the Court previously defined Class IIB as follows: "All prisoners incarcerated in an MDOC correctional facility with healthy gums, gingivitis, early periodontitis, and stable moderate periodontitis." *Dearduff v. Washington*, 330 F.R.D. 452, 472 (E.D. Mich. 2019). The Court did not include prisoners with more severe periodontitis—i.e., "unstable" moderate periodontitis or advanced periodontitis—in Class IIB. The Court excluded these prisoners from the class because Defendants indicated that MDOC was providing them with periodontal treatment, and the members of Class IIB claimed that the MDOC was *not* providing prisoners

16

periodontal treatment (or, at least, not providing adequate periodontal treatment). *Id.* at 469.

The Court's determination that the MDOC provided those with unstable moderate periodontitis and advanced periodontitis with treatment was based on a memorandum drafted by MDOC Dental Director Jong Choi and a proffer Defendants made in their brief opposing class certification. Choi's memo stated that because periodontitis progressed slowly, "there is no harm done by not specifically treating, beyond self-care, early stage periodontal conditions during the first two years of incarceration." (ECF No. 246-6, PageID.7050.) "Similarly," Choi continued, "moderate periodontitis, if *stable* with self-care, will not require intervening dental care in the first two years of incarceration to prevent the condition from becoming advanced." (*Id.* (emphasis added).) But, said Choi, "*unstable* moderate periodontal condition should be identified for stabilization care sufficient to attempt to change the condition from unstable to stable." (*Id.* (emphasis added).) As for advanced periodontitis, Choi's memo stated that these prisoners had "experienced too much bone loss to save the affected tooth or teeth," and so extraction was recommended to prevent infection. (*Id.*) In addition to Choi's memo, in opposing class certification, Defendants made the following proffer in their brief: "Within the range of identifiable stages of periodontitis, as determined by degree of bone loss, *those with moderate stage periodontitis whose condition is unstable will receive stabilization referral for periodontal treatment, as appropriate, including debridement and/or root planing*

17

*and scaling, with follow up sufficient to stabilize the condition.*" (ECF No. 246, PageID.6977 (emphasis added).)

Given Choi's memo and the proffer by Defendants' counsel, the Court was "not persuaded that the MDOC has a policy or systemwide practice of not providing appropriate treatment for those with moderate or advanced periodontal disease." *Dearduff*, 330 F.R.D. at 469. So the Court excluded prisoners with unstable moderate periodontitis or advanced periodontitis from Class IIB. But the Court added, "[s]hould Plaintiffs prove that Defendants' claim about the provision of root planing and scaling (with follow-up care) is not accurate, the Court will revisit this issue." *Id.*

## 2.

Plaintiffs now ask the Court to revisit this issue.

But one of Plaintiffs' arguments places too much weight on the Court's word choice and does not address the Court's more fundamental point. Plaintiffs spend a lot of pages attempting to prove that the distinction between "unstable" and "stable" moderate periodontitis is untenable. (ECF No. 302, PageID.7646–7652; ECF No. 315, PageID.7909–7917.) But even if Choi was wrong about the stability of moderate periodontitis (and thus the Court was wrong to use the word "stable" to define Class IIB), the more fundamental question is whether MDOC adequately treats prisoners with more severe cases of periodontitis. If so, then these prisoners should not be part of Class IIB. After all, Class IIB claims that MDOC inadequately treats periodontal disease. (And so much so, that it is an Eighth Amendment violation.)

18

Apart from attacking the "stable" and "unstable" distinction, Plaintiffs ask the Court to expand Class IIB based on evidence discovered after class certification. They argue that this evidence shows that, contrary to Choi's memo and Defendants' proffer, MDOC prisoners with periodontitis do not receive scaling or root planing and therefore they still need that relief. (*See* ECF No. 315, PageID.7919–7922.) After the Court's certification opinion, it appears that Schulman (one of Plaintiffs' opinion witnesses) randomly selected and reviewed the dental charts of 100 prisoners who were on a wait list for a filling. (*See* ECF No. 315-9, PageID.7989.) (The Court says "it appears" that Shulman randomly selected 100 dental charts because his description of his selection methodology is not clear to the Court. (ECF No. 302-8, PageID.7721.)) Schulman's review of the 100 dental charts revealed that 61 of the prisoners had been diagnosed with early, moderate, or advanced periodontal disease. (ECF No. 315-11, PageID.8020.) And, based on notations in the charts, Schulman concluded that MDOC dentists only ever prescribed these 61 prisoners a prophy, i.e., a cleaning. (*Id.*) So based on the dental charts, it would seem that the MDOC does not provide prisoners with early, moderate, or advanced periodontitis with a scaling and root planing. And this would be contrary to Choi's memo and Defendants' proffer at class certification.

But the dental charts do not tell the whole story; other evidence suggests that some prisoners receive a scaling and root planing even if their dental charts only state "prophy." For one, Dental Director Choi indicated that the terms "prophy" and "root planing and scaling" were, at least at one point during his tenure at MDOC,

19

"interchangeably used." (ECF No. 315-5, PageID.7951.) And Dalton Sanders, an MDOC dentist, testified that "root planing and scaling is part of adult prophylaxis if needed." (ECF No. 315-9, PageID.7986.) Similarly, Gloria Smith, another MDOC dentist, indicated that if she ordered a cleaning known as a "debridement," her hygienist would know that includes root planing and scaling. (ECF No. 307-4, PageID.7828.) Indeed, one MDOC hygienist testified that "a prophylaxis is a debridement, a scaling and root planing, and a rubber cup polish," and another MDOC hygienist testified that she provides "scaling and root planing, if it's necessary." (ECF No. 315-9, PageID.7986.) Thus, the absence of a notation for scaling and root planing on the dental charts Shulman reviewed does not conclusively establish that the MDOC does not provide prisoners with periodontitis with scaling and root planing. Indeed, Schulman opines that "the [MDOC] dentist prescribes 'prophy' and the dental hygienist decides whether to perform a periodontal scaling or scaling and root planing sua sponte." (ECF No. 315-9, PageID.7970.)

Granting that some prisoners who are prescribed a "prophy" nonetheless receive the necessary scaling and root planing, the Court is persuaded, for purposes of class certification, that there are a substantial number of prisoners who have early, moderate, or advanced periodontitis and who are not receiving scaling and root planing. To start, the MDOC undoubtedly employs more hygienists than the few who have testified that they provide scaling and root planing when a dentist orders a prophy. So the hygienists' testimony does not establish that the MDOC *consistently* provides scaling and root planing to prisoners with periodontitis. Second, Schulman

says that anesthesia is generally used to perform scaling and root planing, yet, "none of the randomly selected records [he] reviewed had documented codes [for anesthesia] in conjunction with a prophylaxis." (ECF No. 315-9, PageID.7985; *but see* ECF No. 315-9, PageID.8011 (noting that anesthesia was "rarely" documented).) As such, Schulman says it "strains credulity" that the notation of a "prophy" on the dental charts could be referring to a scaling and root planing. (ECF No. 315-9, PageID.7985.) Third, there is evidence that under Michigan law, dentists must prescribe scaling and root planing before a hygienist can provide that treatment. Dental Director Choi acknowledged that it would violate Michigan law for a hygienist to perform root planing and scaling when a dentist only orders a prophy. (ECF No. 315-5, PageID.7952.) And another of Plaintiffs' opinion witnesses, Stephen Harrel, DDS, testified that a "dentist needs to make the diagnosis and then treatment plan for root planing and scaling" and that "hygienists should not do that on their own." (ECF No. 315-10, PageID.8017.) If a hygienist cannot lawfully provide scaling and root planing until a dentist orders that procedure, that would suggest that MDOC hygienists do not consistently perform a scaling and root planing when a dentist orders a prophy.

To sum up so far, Plaintiffs have shown that the MDOC has a systemwide practice of only prescribing a "prophy" for prisoners with early, moderate, or advanced periodontitis. And while some MDOC hygienists perform a scaling and root planing when only a prophy is ordered, the Court is not now persuaded that is consistently the case. Accordingly—for purposes of class certification—the Court finds that a significant number of MDOC prisoners with early, moderate, or advanced

periodontitis are not receiving necessary scaling and root planing and necessary follow-up care.

**3.**

The Court will accommodate this new finding by redefining Class IIB and creating a new class for prisoners not receiving scaling and root planing. Class IIB will be redefined as follows: "All prisoners incarcerated in an MDOC correctional facility with healthy gums or gingivitis." And the new class, Class IIC, will be defined as follows: "All prisoners incarcerated in an MDOC correctional facility with early, moderate, or advanced periodontitis who have not received all necessary scaling and root planing and follow-up treatment."

Both these classes satisfy Rule 23's requirements for certification. Start with reconstituted Class IIB. This class has shrunk, and so the diversity in dental health among members of Class IIB is now less than before. It follows that the Eighth Amendment claims of those in Class IIB are now more similar than before: there is less diversity in both the type of harm and risk of harm from inadequate periodontal treatment. So, with one exception, the analysis this Court provided in its class-certification opinion suffices to show that reconstituted Class IIB meets Rule 23's demands. *See Dearduff*, 330 F.R.D. at 469–70.

The one exception: Rule 23(a)(4)'s requirement that "the representative parties will fairly and adequately protect the interests of the class." The Court previously found that Melvin Bownes could represent Class IIB. *See Dearduff*, 330 F.R.D. at 470. Although the Court does not have updated dental records for Bownes, Bownes'

periodontal disease appears to be more severe than gingivitis. (*See* ECF No. 315-9, PageID.8007.) But, as redefined, Class IIB consists of those prisoners with healthy gums and gingivitis. So Bownes might not be a proper representative of redefined Class IIB. *Zehentbauer Fam. Land, LP v. Chesapeake Expl., L.L.C.*, 935 F.3d 496, 503 (6th Cir. 2019) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." (internal quotation marks omitted)).

Fortunately for Plaintiffs, another named plaintiff in this case, Anthony Richardson, can also represent redefined Class IIB. Although the Court also does not have recent dental records for Richardson, as of April 2019, Richardson was diagnosed with "generalized gingivitis." (ECF No. 315-9, PageID.8006.) True, on earlier occasions, Richardson, like Bownes, was diagnosed with more severe periodontal disease. But as this Court currently understands periodontal disease, it may be possible to have gingivitis in one area of the mouth and periodontitis in another. (*See* ECF No. 315-2, PageID.7931 (MDOC dentist indicating that periodontal disease can be "localized" to a particular area of the mouth); ECF No. 315-9, PageID.7972 ("Periodontal lesions may be generalized or localized in a quadrant or tooth."); ECF No. 315-9, PageID.7970 (indicating that a treatment plan should specify the areas of the mouth requiring scaling and root planing).) Indeed, it may be that gingivitis, broadly defined as "inflammation of the soft tissue" (ECF No. 302-8, PageID.7701), is present around an area of the mouth with periodontitis. Accordingly,

on the record now before the Court, Richardson is an adequate representative for Class IIB.

Class IIC also meets Rule 23's requirements. Each prisoner in Class IIC asserts the same medical need—scaling and root planing and follow-up care—and each faces a similar risk of similar harm if they are not provided that treatment. True, the summary-judgment or trial record might show that those with say, advanced periodontitis have a "serious medical need" under the Eighth Amendment while those with say, early periodontitis do not. Or the proofs might ultimately show that Dental Director Choi and Director Washington appreciate that prisoners with advanced periodontitis are at substantial risk of harm without scaling and root planing but do not have that same appreciation for prisoners with early periodontitis. So it is possible that the Eighth Amendment claims of those in Class IIC will not all rise and fall together. But Schulman has opined that even those with early periodontitis should receive a scaling and root planing (ECF No. 315-9, PageID.7972) and it appears that by early periodontitis, there is already some bone loss (ECF No. 315-9, PageID.7983). So, for now, the Court believes that those in Class IIC face similar enough risk of similar enough harm that at least one central issue underlying all of their Eighth Amendment claims can be resolved in "one stroke."

As for class representatives, Richardson will also adequately represent Class IIC. It is true that in 2012 and 2014, Richardson received scaling (and possibly root planing) for his periodontal disease. (ECF No. 315-9, PageID.8006.) But in October 2018, Richardson still had moderate periodontitis and it is not at all clear that he

continued to receive scaling and root planing. (*See id.*) (As noted above, it is not necessarily inconsistent that Richardson has both periodontitis and gingivitis.) Thus, absent further information, the Court believes Richardson can represent Class IIC.

* * *

In sum, Plaintiffs have persuaded the Court at this stage of the litigation that a substantial number of prisoners with early, moderate, or advanced periodontitis do not receive scaling and root planing and the associated follow-up care. So the Court has created Class IIC to allow these prisoners to pursue class-wide relief.

## C.

Plaintiffs also ask the Court to make Richardson a representative of formerly defined Class IIB. This request is moot in light of the Court deeming Richardson a representative of redefined Class IIB and new Class IIC.

## IV.

For the foregoing reasons, Plaintiffs' motion for partial relief from the Court's certification order (ECF No. 302) is GRANTED IN PART and DENIED IN PART. Below is an updated chart summarizing the certified classes. The parties should note the Court's articulation of the legal claims of Class IIA, Class IIB, and Class IIC.

SO ORDERED.

Dated: August 20, 2021

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

| Class | Definition | Legal Claim | Representative (if certified) |
|---|---|---|---|
| Proposed Class I (Not Certified) | All prisoners who have less than 24 months of uninterrupted incarceration within an MDOC correctional facility starting from the prisoner's first day at the reception center | Each class member claims that the MDOC's requirement that he or she be incarcerated for two years before becoming eligible for routine dental care exposes him or her to a substantial risk of serious harm of which Defendants are aware | |
| Class IIA | All prisoners incarcerated in an MDOC correctional facility who have caries that have reached the dentin or have early (or worse) periodontitis | Each class member claims that he or she has a serious medical need (caries that have reached the dentin or early, moderate, or advanced periodontitis), and that MDOC's policy of not using intraoral x-rays and periodontal probing amounts to deliberate indifference to his or her serious medical need. | Melvin Bownes and Anthony Richardson |
| Class IIB | All prisoners incarcerated in an MDOC correctional facility with healthy gums or gingivitis | Each class member claims that he or she has a serious medical need (e.g., a baseline measurement or gingivitis), and that MDOC's policy of treating that serious medical need (e.g., not obtaining a baseline measurement and not providing a prophylaxis until two years in prison) amounts to deliberate indifference. | Melvin Bownes and Anthony Richardson |

| Class | Definition | Legal Claim | Representative (if certified) |
|---|---|---|---|
| Class IIC | All prisoners incarcerated in an MDOC correctional facility with early, moderate, or advanced periodontitis who have not received all necessary scaling and root planing and follow-up treatment | Each class member claims that he or she has a serious medical need (periodontitis), and that MDOC's policy of not providing treatment (scaling and root planing and follow-up treatment) amounts to deliberate indifference. | Anthony Richardson |
| Class III | All prisoners incarcerated in an MDOC correctional facility who have requested dentures and who satisfy the criteria for dentures in Sections 15 and 16 of Chapter VI of the MDOC's Dental Services Manual[1] | Each class member claims that the time it takes for the MDOC to provide dentures exposes him or her to serious harm or, at least, a substantial risk of serious harm, of which Defendants are aware | James Gunnels |
| Proposed Class IVA (Not Certified) | All prisoners on the Routine Dental Appointment List | Each class member claims that the time it takes the MDOC to provide him or her with routine care (e.g., five months) exposes him or her to a substantial risk of serious harm | |
| Class IVB | All prisoners that the MDOC has identified as waiting for urgent dental services | Each class member claims that the time it takes the MDOC to provide him or her with urgent care (e.g., three days) causes him or her serious harm or, at least, exposes him or her to a substantial risk of serious harm | Timothy Brownell |

[1] As noted in the class certification opinion, *Dearduff v. Washington*, 330 F.R.D. 452, 474 n.3 (E.D. Mich. 2019), this class may be subject to redefinition or sub-classing.