UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELVIN BOWNES,
TIMOTHY BROWNELL,
JAMES GUNNELS, and
ANTHONY RICHARDSON,
*on behalf of themselves and those similarly situated*,

Plaintiffs,

v.

HEIDI WASHINGTON and
JONG CHOI,

Defendants.

Case No. 14-cv-11691
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION IN LIMINE TO STRIKE JOHNSTON'S OPINION TESTIMONY [318]**

Melvin Bownes, Anthony Richardson, and two other named plaintiffs allege that the dental care they receive as inmates in the Michigan Department of Corrections is so inadequate that it violates the Eighth Amendment. And they say they are not alone: they filed this suit on behalf of themselves and the over 30,000 prisoners in the MDOC. Plaintiffs do not seek damages, they only seek a declaration and prospective, injunctive relief—i.e., moving forward, Plaintiffs want the MDOC to provide dental care that comports with the Constitution. The two defendants in this matter are MDOC Director Heidi Washington and MDOC Dental Director Jong Choi.

Some time ago, the Court certified several classes under Federal Rule of Civil Procedure 23. *See generally Dearduff v. Washington*, 330 F.R.D. 452, 475 (E.D. Mich.

2019) (certifying classes); *Bownes v. Washington*, No. 14-CV-11691, 2021 WL 3700867 (E.D. Mich. Aug. 20, 2021) (modifying Class II). Three of these classes, represented by Bownes or Richardson (or both), relate to how the MDOC diagnoses and treats periodontal disease. *See Bownes*, 2021 WL 3700867, at *11. Periodontitis is a progressive disease that attacks the tissues supporting the teeth. *See id.* at *1. Plaintiffs say that because MDOC dental staff do not conduct periodontal probing (a measure of tooth-gum separation), Defendants cannot accurately diagnose periodontitis. *See id.* at *11. And, according to Plaintiffs, inaccurate diagnoses subject them to a substantial risk of serious harm. Plaintiffs also assert that even when a prisoner is properly diagnosed, MDOC dental staff do not regularly provide scaling and root planing, or other care to treat periodontal disease, which also subjects them to a substantial risk of serious harm. *See id.*

In opposing these Eighth Amendment claims, Defendants intend to offer testimony from an opinion witness, Jeffrey Johnston. Johnston holds a doctorate in dental surgery and master's degree in periodontology. (ECF No. 318-3, PageID.8083.)

Plaintiffs ask this Court to "not allow Expert Johnston to testify in this matter." (ECF No. 318, PageID.8075.) During his deposition, Johnston testified that he had no training on how dental care should be provided across a prison or a correctional system. (ECF No. 323-1, PageID.8223.) In fact, he candidly stated, "I'm not qualified to set policy and understand all the vicissitudes and challenges that the penal system has in trying to deliver that care." (ECF No. 318-4, PageID.8106.) He also admitted that he was not familiar with the National Commission on Correctional

2

Health Care or the American Correctional Association. (ECF No. 323-1, PageID.8223.) Further, in preparing his expert report and for his deposition, Johnston spent only 19 hours—total. (ECF No. 318, PageID.8066.) And while Johnston reviewed the expert report of Plaintiffs' two opinion witnesses, Jay Shulman, DMD and Stephen Harrel, DDS, and reviewed both the MDOC Dental Services Policy Directive and the MDOC Dental Services Manual (ECF No. 318-4, PageID.8098; ECF No. 318-3, PageID.8090), he did not review any of the transcripts of the MDOC dentists and hygienists who were deposed in this case (ECF No. 318-4, PageID.8101). And Johnston only reviewed the dental records of two prisoners: Bownes and Richardson. (ECF No. 318-4, PageID.8105.) Based on these asserted deficiencies in Johnston's education, experience, and preparation, Plaintiffs ask the Court to exclude Johnston from testifying in this case.

Federal Rule of Evidence 702 governs the admission of opinion testimony. Essentially, the rule sets out three requirements: (1) "the witness must be qualified by 'knowledge, skill, experience, training, or education,'" (2) "the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue,'" and (3) "the testimony must be reliable." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting Fed. R. Evid. 702). And in assessing reliability, a court should consider (a) "whether the testimony is based upon 'sufficient facts or data,'" (b) "whether the testimony is the 'product of reliable principles and methods,'" and (c) "whether the expert 'has applied the principles and methods reliably to the facts of the case.'" *Id.* (quoting Fed. R. Evid. 702). Here, it

3

appears that Plaintiffs' primary bases for excluding Johnston's testimony is that he lacks "knowledge, skill, experience, training, or education" in correctional dentistry and that his opinions are not based on "sufficient facts or data."

In this Court's view, plenty of Johnston's conclusions and opinions are within his knowledge and experience and are based on sufficient data. In addition to being a doctor of dental surgery and holding a master's in periodontology, Johnston is board certified in periodontontolgy and dental implant surgery. (ECF No. 318-3, PageID.8082.) He ran a periodontics practice for 28 years. (*Id.* at PageID.8083.) He is now the Chief Science Officer for Delta Dental of Michigan, Ohio, and Indiana. (*Id.*) And for the past 30 years, Johnston has served as an adjunct professor in the department of periodontology at a major university. (*Id.*) Based on this knowledge and experience, the Court fails to see why Johnston could not opine that "Dr. Shulman's statement that a periodontal evaluation should include a comprehensive periodontal charting is not accurate." (ECF No. 318-3, PageID.8084.) Or to take another example, why would Johnston not be competent to testify that "[p]robe depths have not been shown to be a reliable indicator of disease progression"? (ECF No. 318-3, PageID.8085.) Or, as a third example, Johnston's opinion that neither periodontal screening and recording nor clinical attachment level is "considered the standard of care" is within his knowledge and experience. (*Id.*)

Despite that these and others of Johnston's opinions appear to be squarely within his knowledge and experience, Plaintiffs make a wholesale attack on Johnston's testimony. In their opening brief they state, "the report and testimony of

4

Dr. Johnston should be stricken and he should be disqualified as an expert witness." (ECF No. 318, PageID.8065.) And if there were any doubt, Plaintiffs say in their reply brief that "this Court should grant the motion to preclude the testimony in any form of Expert Johnston." (ECF No. 318, PageID.8065.) To the extent that Plaintiffs seek wholesale exclusion of Johnston's testimony from this case, their motion is denied. As just explained, many of Johnston's opinions are well within his expertise.

Moreover, it is not even clear to the Court that it needs to give a thumbs up or down on Johnston's testimony until trial (or, perhaps, even after trial). As noted, Plaintiffs only seek declaratory and forward-looking injunctive relief. (*See* ECF No. 236, PageID.6297–6298.) As such, if there is a trial, it would be a bench trial. *See Leary v. Daeschner*, 349 F.3d 888, 910 (6th Cir. 2003) ("[B]ecause Plaintiffs' original complaint involved only claims that were equitable in nature, Plaintiffs were not entitled to a jury trial."); *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1088 (11th Cir. 2016) ("[A] right to a jury trial does not exist for suits seeking only injunctive relief, which is purely equitable in nature."). And because this case will be tried before a judge, "the usual concerns regarding unreliable expert testimony reaching a jury" are not present. *Att'y Gen. of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009); *see also Rogers v. Air Line Pilots Ass'n, Int'l*, 988 F.2d 607, 612 (5th Cir. 1993); *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 635 (6th Cir. 2000) (Gilman, J., dissenting) ("[D]istrict courts conducting bench trials have substantial flexibility in admitting proffered expert testimony at the front end, and then deciding for themselves during the course of trial whether the evidence

5

meets the requirements of *Kumho Tire Co.* and *Daubert* and deserves to be credited."). Presumably then, the Court can wait to hear Johnston's testimony at trial and accord it the proper weight then or even defer that decision until after trial when drafting its findings of fact and conclusions of law.

That said, the Court understands why Plaintiffs have filed their motion. In their expert disclosures, Defendants stated, "Dr. Johnston will provide expert testimony regarding the periodontal treatment provided to prisoners confined in the Michigan Department of Corrections." (ECF No. 318-2, PageID.8079.) But, as Johnston himself admitted, he has no expertise in how, on a systemwide level, dental care should be administered to prisoners. Further, during a telephone conference with the Court, Plaintiffs indicated that a ruling on whether Johnston will be allowed to offer his opinions will aid in briefing motions for summary judgment.

As such, the Court will offer some guidance. The Court has read all of Johnston's expert report. Unlike the more common expert report, Johnston does not clearly differentiate his opinions from statements that are merely building blocks for his opinions. Arguably, his only "opinion" appears in the "Summary" section of his report. On the other hand, there are statements throughout his report (including the three examples discussed above) that read like opinions. Assuming that Defendants intend to offer Johnston's opinions aside from those in the "Summary" section of his report, the Court finds two of them troubling. And a third opinion, which appears in the "Summary" section, will likely require that Johnston further explain the basis for the opinion and its scope before it is accorded significant weight.

6

*One*. In his report, Johnston has reproduced a table titled "History of stabilization referrals." (ECF No. 318-3, PageID.8088.) The table shows the number of prisoners referred to the MDOC's dental stabilization clinic each month, and of those, how many received a dental debridement (a deep cleaning of sorts). Johnston states, "The table . . . demonstrates that care is provided to inmates according to MDOC policy." (ECF No. 318-3, PageID.8088.)

Without further qualification or justification, Johnston will not be permitted to offer this opinion (again, assuming it is an opinion Johnston intends to offer as opposed to merely a statement supporting his ultimate opinion). Johnston admits he did not prepare the table and simply received it from Defendants' counsel. (ECF No. 318-4, PageID.8101.) And it is impossible to infer from a table that shows only the number of prisoners referred to the stabilization clinic that "care is provided to inmates according to MDOC policy"—there are dozens of MDOC dental policies, many of which have nothing to do with the stabilization clinic or debridement. True, one MDOC policy is to refer prisoners who are found to have urgent dental needs during their intake exam to the stabilization clinic. (ECF No. 246-5, PageID.7024, 7026.) But even if Johnston's statement is limited to that policy, the Court fails to see how Johnston can infer compliance with the policy from the table. Although the table shows that dozens of prisoners are referred to the stabilization clinic each month (ECF No. 318-3, PageID.8088), the table does not show how many prisoners were diagnosed with urgent needs during their intake exam. In other words, the table does not indicate how many prisoners should have been referred to the stabilization clinic

7

as compared to how many were in fact referred. As such, even limited to the stabilization policy, Johnston's opinion of compliance is questionable.

*Two*. In his report, Johnston also states, "The assertion that the policies and practices constitute deliberate indifference to serious medical needs [is] not supported by the evidence." (ECF No. 318-3, PageID.8088.) But to which of the dozens of dental policies does Johnston refer? And what evidence? This opinion (again assuming it is an opinion) is conclusory and absent some qualification of the statement or additional justification for it, the Court is not likely to accord the opinion much, if any, weight.

*Three*. In the "Summary" section of his report, Johnston opines, "My review of the MDOC policies and the records of [Richardson and Bownes] compel me to disagree with the assertion that MDOC is willfully neglecting the dental and general health of inmates by deliberately withholding care." (ECF No. 318-3, PageID.8092.)

As an initial matter, it is unclear why Johnston would be opining on "general health" issues. And Johnston's review of only Richardson's and Bownes' dental records is not "sufficient facts or data," Fed. R. Evid. 702(b), to opine that "MDOC"—the entire correctional system—is not "willfully neglecting the dental . . . health of inmates by deliberately withholding care." But that is precisely the issue in this case: the question is whether, on a systemic level, prisoners receive constitutionally adequate dental care. Indeed, some of the certified classes, including the classes relating to periodontal disease, consist of thousands, if not tens-of-thousands, of prisoners. A review of two of the named plaintiffs' dental records is hardly a basis to say anything about the MDOC dental care as a whole.

8

But what about the other materials Johnston reviewed? The Dental Services Policy Directive and the Dental Services Manual that Johnston reviewed, coupled with his expertise and opinions about the proper ways to diagnose, manage, and treat periodontal disease, do provide a stronger basis for Johnston to opine that the MDOC is not deliberately withholding care. In fact, to the extent that Johnston means that, in his opinion, the *written* policies regarding periodontal disease diagnosis and treatment do not show willful neglect or deliberate withholding of dental care, the opinion has an adequate factual basis (the Policy Directive and Manual coupled with Johnston's education and experience).

To the extent, though, that Johnston opines that *in practice*, MDOC is not deliberately withholding care, the Court will likely discount his opinion unless Johnston can either qualify the opinion or provide additional justification for it. True, Johnston read Shulman's report, and Shulman's report summarizes the dental records of around 35 prisoners. But these summaries are very brief, and some even suggest untimely care (which, of course, would not support Johnston's opinion). (*See e.g.*, ECF No. 302-8, PageID.7727 (indicating that Clay had moderate periodontal disease at intake but was not given a cleaning until three years later); ECF No. 302-8, PageID.7728 (indicating that Gates had moderate periodontal disease at intake but was not given a cleaning until three-and-a-half years later).) Further, aside from Richardson and Bownes, Johnston did not review any of the dental records of the prisoners in Shulman's report. Nor did he review the transcripts of the depositions of

9

MDOC dentists or hygienists. So the summary section of his report will need some clarification as to all that went into the conclusion.

* * *

In sum, because Plaintiffs seek to exclude Johnston's report and testimony in their entirety, Plaintiffs' motion in limine (ECF No. 318) is DENIED.

SO ORDERED.

Dated: March 25, 2022

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
